No. 22-10077

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

U.S. NAVY SEALS 1-26; U.S. NAVY SPECIAL WARFARE COMBATANT CRAFT CREWMEN 1-5; U.S. NAVY EXPLOSIVE ORDNANCE DISPOSAL TECHNICIAN 1; U.S. NAVY DIVERS 1-3,

Plaintiffs-Appellees,

v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United States of America; LLOYD AUSTIN, SECRETARY, U.S. DEPARTMENT OF DEFENSE, individually and in his official capacity as United States Secretary of Defense; UNITED STATES DEPARTMENT OF DEFENSE; CARLOS DEL TORO, individually and in his official capacity as United States Secretary of the Navy,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of Texas

## BRIEF FOR APPELLANTS

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

CHAD E. MEACHAM
  *United States Attorney*

MARLEIGH D. DOVER
CHARLES W. SCARBOROUGH
LOWELL V. STURGILL JR.
SARAH CARROLL
CASEN B. ROSS
SARAH J. CLARK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7511*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4027*

# CERTIFICATE OF INTERESTED PERSONS

*U.S. Navy SEALs 1-26, et al. v. Joseph R. Biden, Jr., et al.*, No. 22-10077

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs:**

U.S. Navy SEALs 1-26
U.S. Navy Special Warfare Combatant Craft Crewmen 1-5
U.S. Navy Explosive Ordnance Disposal Technician 1
U.S. Navy Divers 1-3

**Defendants:**

Joseph R. Biden, Jr., in his official capacity as President of the United States of
    America
Lloyd Austin, Secretary, U.S. Department of Defense, individually and in his official
    capacity as United States Secretary of Defense
United States Department of Defense
Carlos Del Toro, individually and in his official capacity as United States Secretary of
    the Navy

**Counsel:**

For defendants:

Zachary Anthony Avallone
Brian M. Boynton
Andrew Evan Carmichael
Sarah Carroll
Sarah J. Clark
Marleigh D. Dover
Courtney Danielle Enlow

Sarah E. Harrington
Chad E. Meacham
Amy Elizabeth Powell
Stuart Justin Robinson
Casen B. Ross
Charles W. Scarborough
Lowell V. Sturgill Jr.
U.S. Department of Justice

For plaintiffs:

Michael Berry
Justin E. Butterfield
Roger Lucian Byron
First Liberty Institute
David J. Hacker
Heather Gebelin Hacker
Hacker Stephens, L.L.P.
Jeffrey Carl Mateer
Jordan E. Pratt
Holly Mischelle Randall
Danielle A. Runyan
Hiram Stanley Sasser, III
Kelly J. Shackelford
Andrew Bowman Stevens

/s/ *Sarah Carroll*
Sarah Carroll
Counsel for Defendants-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

The government respectfully requests oral argument. The preliminary injunction wrongly substitutes the district court's views for the expert judgments of high-level military officers about whether members of the Naval Special Warfare community, all of whom must be deployable for special-operations missions on short notice, must be vaccinated against COVID-19. The preliminary injunction threatens to impair the Navy's ability to defend the Nation, and oral argument is therefore appropriate and should assist the Court in reviewing the injunction.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

STATEMENT OF JURISDICTION ..............................................................3

STATEMENT OF THE ISSUES.....................................................................3

STATEMENT OF THE CASE ........................................................................3

    A.    The Naval Special Warfare Community........................................3

    B.    The Navy's COVID-19 Vaccination Requirement .....................5

    C.    Procedural History........................................................................11

        1.    Complaint...........................................................................11

        2.    Preliminary Injunction Motion and Order.......................11

        3.    Motions for a Partial Stay Pending Appeal .....................13

        4.    Further Proceedings in District Court.............................14

SUMMARY OF ARGUMENT.....................................................................15

STANDARD OF REVIEW ...........................................................................18

ARGUMENT ..................................................................................................19

I.    The Preliminary Injunction Should Be Vacated Because Plaintiffs
    Failed to Demonstrate a Substantial Likelihood of Success on the
    Merits ......................................................................................................19

    A.    Plaintiffs' Claims Are Not Justiciable ........................................19

        1.    Plaintiffs Have Not Exhausted Their Intra-Service
            Remedies............................................................................21

2.      The District Court Also Lacked Authority to Review
        Military Judgments Relating to Deployments, Assignments,
        and Other Operational Duties ..........................................................26

B.      Plaintiffs Failed to Demonstrate a Substantial Likelihood of
        Success on the Merits of Their Claims .........................................................33

        1.      Plaintiffs' RFRA Claims Lack Merit.................................................33

                a.      Requiring Plaintiffs to Be Vaccinated Against
                        COVID-19 Furthers Compelling Military Interests ...........34

                b.      Requiring Plaintiffs to Be Vaccinated Against
                        COVID-19 Is the Least Restrictive Means Necessary
                        to Further the Military's Compelling Interests ...................40

                c.      The District Court's Reasons for Concluding that
                        the Navy Has Violated RFRA Do Not Withstand
                        Scrutiny ...............................................................................41

        2.      Plaintiffs' Free Exercise Clause Claims Lack Merit .......................46

        3.      The Preliminary Injunction Is Not Appropriate Relief.................48

II.     Plaintiffs Also Failed to Show Irreparable Injury or that the Balance
        of Harms and the Public Interest Favor Preliminary Relief ...............................49

A.      Plaintiffs Failed to Demonstrate Irreparable Injury ...................................49

B.      The Balance of Equities and the Public Interest Weigh
        Against Preliminary Relief ...........................................................................51

CONCLUSION .................................................................................................54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                                **Page(s)**

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
   878 F.2d 806 (5th Cir. 1989) ......................................................................... 19

*Anderson v. Jackson*,
   556 F.3d 351 (5th Cir. 2009) ......................................................................... 18

*Antonellis v. United States*,
   723 F.3d 1328 (Fed. Cir. 2013) ..................................................................... 28

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ....................................................................................... 48

*Austin v. U.S. Navy SEALs 1-26*,
   No. 21A477, slip op. (U.S. Mar. 25, 2022).......................................1, 14, 16, 17, 24, 25,
                                                 27, 29, 36, 40, 43, 48

*Bynum v. FMC Corp.*,
   770 F.2d 556 (5th Cir. 1985) ......................................................................... 27

*Chacon v. Granata*,
   515 F.2d 922 (5th Cir. 1975) ......................................................................... 49

*Chappell v. Wallace*,
   462 U.S. 296 (1983) ................................................................................. 16, 29

*Chilcott v. Orr*,
   747 F.2d 29 (1st Cir. 1984) ........................................................................... 53

*Church v. Biden*,
   No. 21-2815, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ............................. 29-30, 53

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ....................................................................................... 46

*Coburn v. McHugh*,
   679 F.3d 924 (D.C. Cir. 2012) ...................................................................... 22

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC*,
   710 F.3d 579 (5th Cir. 2013) ......................................................................... 49

*Doe v. Rumsfeld*,
   297 F. Supp. 2d 119 (D.D.C. 2003) ............................................................. 30

*Doe v. San Diego Unified Sch. Dist.*,
　19 F.4th 1173 (9th Cir. 2021) ........................................... 40, 43, 44, 46, 47-48

*Does 1-6 v. Mills*,
　16 F.4th 20 (1st Cir. 2021) ............................................................ 40

*Employment Division v. Smith*,
　494 U.S. 872 (1990) ................................................................ 46, 47

*Florida v. U.S. Dep't of Health & Human Servs.*,
　19 F.4th 1271 (11th Cir. 2021) ..................................................... 53

*Fulton v. City of Phila.*,
　141 S. Ct. 1868 (2021) ............................................................... 47

*Gilligan v. Morgan*,
　413 U.S. 1 (1973) ..................................................................... 27

*Goldman v. Weinberger*,
　475 U.S. 503 (1986) .................................................................. 33

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
　527 U.S. 308 (1999) .................................................................. 48

*Harkness v. Secretary of the Navy*,
　858 F.3d 437 (6th Cir. 2017) .................................................... 28, 29

*Hodges v. Callaway*,
　499 F.2d 417 & n.13 (5th Cir. 1974) ............................................. 23

*Holder v. Humanitarian Law Project*,
　561 U.S. 1 (2010) ..................................................................... 41

*Holdiness v. Stroud*,
　808 F.2d 417 (5th Cir. 1987) ....................................................... 20

*Holland Am. Ins. Co. v. Succession of Roy*,
　777 F.2d 992 (5th Cir. 1985) ....................................................... 49

*Janvey v. Alguire*,
　647 F.3d 585 (5th Cir. 2011) ....................................................... 49

*Kane v. De Blasio*,
　19 F.4th 152 (2d Cir. 2021) ........................................................ 46

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020) ................................................. 25

*Maier v. Orr*,
    754 F.2d 973 (Fed. Cir. 1985) ....................................... 28

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ................................................... 19

*McCurdy v. Zuckert*,
    359 F.2d 491 (5th Cir. 1966) ........................................ 50

*Meister v. Texas Adjutant Gen.'s Dep't*,
    233 F.3d 332 (5th Cir. 2000) ........................................ 20

*Miller v. United States*,
    42 F.3d 297 (5th Cir. 1995) ............................... 16, 29, 39

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ......... 2, 16, 19, 20, 26, 27-28, 29, 32

*NeSmith v. Fulton*,
    615 F.2d 196 (5th Cir. 1980) ........................................ 20

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................... 51

*Opulent Life Church v. City of Holly Springs Miss.*,
    697 F.3d 279 (5th Cir. 2012) ........................................ 51

*Orloff v. Willoughby*,
    345 U.S. 83 (1953) ........................................... 27, 28, 53

*Pitcher v. Laird*,
    415 F.2d 743 (5th Cir. 1969) ........................................ 49

*Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman*,
    981 F.3d 347 (5th Cir. 2020) ........................................ 19

*Reaves v. Ainsworth*,
    219 U.S. 296 (1911).................................................... 28

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020) ............................................. 34, 53

*Rydie v. Biden*,
  No. 21-2696, 2021 WL 5416545 (D. Md. Nov. 19, 2021),
  *appeal pending*, No. 21-2359 (4th Cir.) ........................................................ 53-54

*Sambrano v. United Airlines*,
  No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ...........................................50

*Sampson v. Murray*,
  415 U.S. 61 (1974) ........................................................................... 18, 49, 50

*Sebra v. Neville*,
  801 F.2d 1135 (9th Cir. 1986) ......................................................................... 28

*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ................................................................................ 48

*Texas Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) .......................................................................... 24

*Tigges v. Northam*,
  473 F. Supp. 3d 559 (E.D. Va. 2020) .................................................................. 53

*United States v. O'Brien*,
  391 U.S. 367 (1968) ................................................................................... 34

*United States v. Webster*,
  65 M.J. 936 (A. Ct. Crim. App. 2008) ................................................................. 28

*Veasey v. Abbott*,
  870 F.3d 387 (5th Cir. 2017) .......................................................................... 24

*Von Hoffburg v. Alexander*,
  615 F.2d 633 (5th Cir. 1980) ...................................................................... 23, 24

*Walch v. Adjutant Gen.'s Dep't of Tex.*,
  533 F.3d 289 (5th Cir. 2008) .......................................................................... 20

*We the Patriots USA Inc. v. Hochul*,
  17 F.4th 266 (2d Cir. 2021) ..................................................................... 40, 43, 44

*White v. Carlucci*,
  862 F.2d 1209 (5th Cir. 1989) ..................................................................... 50, 53

*Winter v. Natural Res. Defense Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................ 18, 29, 49, 54

**Statutes:**

Religious Freedom Restoration Act (RFRA):
    42 U.S.C. § 2000b ............................................................................... 2
    42 U.S.C. § 2000bb(1)(a) ................................................................. 33
    42 U.S.C. § 2000bb(1)(b) ................................................................. 33
    42 U.S.C. § 2000bb-1(c) .................................................................. 48
    42 U.S.C. § 2000bb-3(a) .................................................................. 24

10 U.S.C. § 1552 ................................................................................. 50

28 U.S.C. § 1292(a)(1) ........................................................................ 3

28 U.S.C. § 1331 .................................................................................. 3

## Legislative Materials:

H.R. Rep. No. 103-88 (1993) ............................................................. 34

S. Rep. No. 103-111 (1993) ......................................................... 33-34

## Other Authorities:

DoD, *Armed Forces Strength Figures* (Jan. 31, 2022),
    https://go.usa.gov/xzZ4r ............................................................... 7

Stanley M. Lemon et al., *Protecting Our Forces: Improving Vaccine Acquisition and
    Availability in the U.S. Military* (2002), https://perma.cc/E545-TQ9G ...................... 5

Navy Medicine, *Navy & Marine Corps COVID-19 Vaccination Requirements:
    Pregnant & Postpartum Service Members FAQ* (Sept. 17, 2021),
    https://go.usa.gov/xzBcS .............................................................. 6

## INTRODUCTION

Plaintiffs are 35 service members in the Naval Special Warfare (NSW) community—Navy SEALs, Special Warfare Combatant-Craft Crewmen, Explosive Ordnance Disposal personnel, and Navy Divers—who are charged with handling some of the U.S. military's most challenging and high-stakes missions. In light of the intense demands placed on this elite fighting community, the Navy has imposed an array of medical requirements designed to ensure their maximum readiness to serve, including that they be vaccinated against numerous illnesses.

In 2021, the U.S. Department of Defense (DoD) and the Navy added COVID-19 vaccination to those requirements to ensure "force readiness and mission execution." ROA.1662. Plaintiffs, who object for religious reasons to being vaccinated against COVID-19, filed this action to seek an exemption from that requirement. The district court granted a preliminary injunction barring the Navy from taking plaintiffs' unvaccinated status into account in making decisions regarding assignment, training, or deployment or from taking any other "adverse action" against them based on their refusal to comply with the requirement. This Court denied the government's motion for a partial stay of the injunction pending appeal, but the Supreme Court granted the government's partial stay application on March 25, 2022. *See Austin v. U.S. Navy SEALs 1-26*, No. 21A477 (U.S. Mar. 25, 2022).

As the Supreme Court's decision reflects, the district court vastly exceeded its authority, and the preliminary injunction threatens to significantly impair the Navy's

ability to defend the Nation. Military officials, and not federal courts, are charged with deciding which service members should deploy on special-operations missions, what precautions must be taken to reduce the risk that a service member will become ill and compromise such a mission, who is fit to train special-operations forces, and how best to maintain good order and discipline among this small group of elite forces.

Under established Circuit precedent, the district court lacked authority to second-guess the Navy's judgment that unvaccinated Special Warfare service members should not be deployed. *See Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). Nor have plaintiffs established that their claims under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000b, and the Free Exercise Clause are likely to succeed on the merits. As Justice Kavanaugh emphasized in his concurring opinion in this case, the Navy has an extraordinarily compelling interest in requiring that plaintiffs be vaccinated against COVID-19—both to reduce the risk that they become seriously ill and jeopardize critical missions and to protect the health of their fellow service members. The district court brushed those judgments aside based on its own views about plaintiffs' fitness for duty and, in doing so, seriously exceeded its authority in a manner that could threaten national security. For similar reasons, the preliminary injunction does not constitute appropriate relief under RFRA or the Free Exercise Clause.

Plaintiffs also failed to carry their burden of showing that the balance of equities and the public interest favor a preliminary injunction. Plaintiffs' unvaccinated status elevates the risk that they will become seriously ill from COVID-19, potentially

requiring their units to abandon missions, risking the lives of other personnel who must conduct a medical evacuation, and threatening mission failure in military crises. Those harms far outweigh plaintiffs' asserted injuries, which are employment-related and accordingly do not constitute irreparable harm.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331, among other provisions. *See* ROA.33. On January 3, 2022, the district court issued a preliminary injunction barring defendants from taking any "adverse action" against plaintiffs on the basis of their requests for religious exemptions from the Navy's COVID-19 vaccination requirement. *See* ROA.2394. Defendants filed a notice of appeal on January 21, 2022. ROA.2508. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1.     Whether the preliminary injunction should be vacated because plaintiffs have failed to demonstrate a likelihood of success on the merits of their claims.

2.     Whether the preliminary injunction should be vacated because plaintiffs have failed to show irreparable injury or that the balance of equities and the public interest favor preliminary relief.

## STATEMENT OF THE CASE

### A.    The Naval Special Warfare Community

This case involves the Naval Special Warfare community, which includes Navy SEALs and Naval Special Warfare combat support personnel. *See* ROA.1869. Special

Warfare service members conduct some of the military's most critical and sensitive missions, including special reconnaissance, countering weapons of mass destruction, counterterrorism, counterinsurgency, and hostage rescue. These missions often occur in diplomatically sensitive or hostile environments that lack medical facilities, and they may necessitate clandestine action, often working with or through host-nation, underground, and/or guerilla forces. *See* ROA.1876. Special Warfare personnel routinely engage in "high-risk operations," such as parachuting, high-speed boat and unconventional-vehicle operation, weapons operation, demolitions employment, and SCUBA diving, ROA.1863, and they do so in small units working in close proximity, *see* ROA.1863-64, 1876.

All Special Warfare personnel must be medically fit to deploy on short notice. *See* ROA.1878. Although Special Warfare deployment cycles "generally progress in a planned, rotational fashion, military contingencies may necessitate the immediate deployment of qualified personnel with little-to-no notice." ROA.2768. "Events requiring short-notice deployments occur regularly and due to the nature of NSW work are inherently a matter of national security." ROA.2768. Service members "currently serving in a training capacity [also] may be called upon at any moment to deploy for matters of the utmost urgency." ROA.2769.

Because special-operations duty is among the most physically and mentally demanding assignments in the U.S. military, ROA.1808, longstanding Navy policies disqualify service members from special-operations duty if they have a condition that

may "impair the ability to safely and effectively work in the [special-operations] environment," "increase potential for medical evacuation," or "caus[e] a significant potential for disruption of operations," ROA.1810; *see* ROA.1810-16 (disqualifying individuals with, for example, certain forms of sleep apnea, chronic conditions that require frequent dental care, and severe allergies); ROA.1864-65.

### B.    The Navy's COVID-19 Vaccination Requirement

1.    The U.S. military has relied on mandatory immunization since 1777, when George Washington directed the inoculation of the Continental Army against smallpox. Stanley M. Lemon et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the U.S. Military* 12-13 (2002), https://perma.cc/E545-TQ9G. As of 2021, nine vaccines were required for all service members in all branches of the armed forces, and eight others were required when certain elevated risk factors were present. *See* ROA.1650. DoD generally aligns its immunization requirements and eligibility determinations for service members with recommendations from the Centers for Disease Control and Prevention's Advisory Committee on Immunization Practices. *See* ROA.1596.

On August 24, 2021, the day after the Food and Drug Administration (FDA) granted full approval to the first COVID-19 vaccine, the Secretary of Defense announced that vaccination against COVID-19 would be added to the required list. *See* ROA.1591-92. Determining that COVID-19 "adversely impacts [the Navy's] force

readiness and mission execution," the Secretary of the Navy directed active-duty service members to be fully vaccinated by November 28, 2021. ROA.1662.

On September 24, 2021, the Commander of the Naval Special Warfare Command issued "Trident Order #12," which required Special Warfare personnel to receive the first dose of the vaccine or to request an exemption by October 17. ROA.1685-86. The order stated that requests for exemptions would be handled under existing "service policies." ROA.1686; *see* ROA.1870-71. The Navy also issued two directives related to the COVID-19 vaccination requirement, which are referred to as "NAVADMIN 225/21" and "NAVADMIN 256/21." Those directives set forth procedures for disciplining and, if necessary, separating service members who refuse vaccination without an exemption. *See* ROA.1670-74; ROA.1676-83. They also provide that "service members who are not vaccinated, regardless of exemption status, may be temporarily reassigned" based on "operational readiness and mission requirements." *See* ROA.1677.

2.    Navy policies establish "two types of exemptions" from vaccination requirements: "medical and administrative." ROA.1889. Medical exemptions are granted by medical personnel for medical reasons, based on objective contraindications, and may be either temporary or permanent. ROA.1889. Most exemptions are granted for temporary conditions such as pregnancy. *See* ROA.1890, 2602; Navy Medicine, *Navy & Marine Corps COVID-19 Vaccination Requirements: Pregnant & Postpartum Service Members FAQ* (Sept. 17, 2021), https://go.usa.gov/xzBcS. As of December 2021, out

of roughly 350,000 active-duty service members, the Navy had granted "10 permanent medical exemptions" and "259 temporary medical exemptions" from the COVID-19 vaccination requirement. Stay Order 7; *see* DoD, *Armed Forces Strength Figures* (Jan. 31, 2022), https://go.usa.gov/xzZ4r. No member of the Special Warfare community has received a permanent medical exemption, and very few have temporary medical exemptions. *See* ROA.1865-66. Service members with temporary medical exemptions must be vaccinated when their exemptions expire.[1]

Administrative exemptions cover a variety of temporary situations, including a "pending separation or retirement" and "emergency leave." ROA.1895. Those exemptions last only as long as the condition occasioning the exemption. As of December 2021, the Navy had recognized only 59 of this type of exemption. Stay Order 7.

Administrative exemptions also include permanent "religious accommodation[s]." ROA.1895. A service member seeking a religious accommodation must submit a request to his or her commanding officer. *See* ROA.1895. Such requests are governed by longstanding Navy policies. Those policies provide that each request for an accommodation is "evaluated on a case-by-case basis" considering factors

---

[1] The panel of this Court that denied the government's motion for a stay pending appeal stated that the Navy had granted at least 17 temporary medical exemptions to members of the Special Warfare community. Stay Order 7. The Navy has informed us that most of those exemptions have now expired and that there are now only two temporary medical exemptions among all Naval Special Operators.

including "military readiness, unit cohesion, good order, discipline, health, [and] safety." ROA.1897; *see* ROA.1898 (explaining that a commander may recommend denial of a religious-accommodation request only if the denial furthers a compelling government interest and is the least restrictive means of furthering that interest). In the case of vaccination requirements, service members may appeal the denial of a religious accommodation to the Chief of Naval Operations. ROA.1897.

The COVID-19 vaccination requirement triggered an "unprecedented increase" in religious-accommodation requests. ROA.1882. Between 2015 and the summer of 2021, the Navy "adjudicated 83 religious accommodation requests for exemption from *any* required vaccination," granting one of those requests. ROA.1882. As of December 9, 2021, there were more than 3000 pending requests for religious exemptions from the COVID-19 vaccination requirement, and none of those requests had been fully adjudicated through appeal. ROA.1881; *see* Dkt. No. 121, at 59 (stating that, as of February 3, 2022, 81 appeals had been fully adjudicated, more than 1200 appeals remained pending, and many requests that were denied after initial review could still be appealed). Thus far, the Navy has granted one religious-accommodation request.[2]

3.     An exemption from a vaccination requirement—whether medical or administrative—does not entitle a service member to be deployed. The Navy instead

---

[2] The stay panel believed the Navy had not granted any religious-accommodation requests because the grant, which involved a member of the Individual Ready Reserve, occurred after the preparation and filing of the government's stay declarations. Stay Order 7-8; *see* Dkt. No. 129, at 23 n.2.

has a separate process for determining medical readiness for deployment. *See* ROA.1865-66, 1871-72, 2601. As relevant here, a service member who meets all medical requirements for "special operations"—which include operations undertaken by the Special Warfare community—is deemed "Physically Qualified," and one who does not is "Not Physically Qualified." ROA.2600; *see* ROA.1810. Service members found to be "Not Physically Qualified" are medically disqualified from special-operations duty unless they obtain a medical "Waiver to Physical Standards." ROA.2600, 2601; *see* ROA.1865. The list of medical requirements to qualify for special-operations duty is extensive. *See* ROA.1810-26.

Under a longstanding Navy policy, Special Warfare service members who cannot be vaccinated for religious reasons are deemed not physically qualified. ROA.1816 (U.S. Dep't of Navy, Manual of the Medical Department (MANMED) § 15-105(4)(n)(9) (May 22, 2018)). That specific policy does not apply to service members with "medical contraindications" to vaccination. ROA.1816. But other, more general Navy policies make clear that a service member who is unvaccinated against COVID-19 for any reason, religious or secular, cannot be assigned to an operational unit and must obtain a separate medical waiver to be deployable. ROA.1871-72; *see* ROA.2601, 2735. "These deployability determinations do not take into account whether a member is unvaccinated for secular or religious reasons; all unvaccinated service members are treated the same for purposes of determining whether they should receive a medical waiver that would render them fit for special operations duty." ROA.2601-02.

4.    A service member who refuses vaccination without an approved exemption may be subject to discipline or adverse administrative action, *see, e.g.*, ROA.1662, and must be processed for administrative separation, *see* ROA.1670.[3] No disciplinary action will be taken against a service member with a pending exemption request. *See* ROA.1662, 1671, 1881, 1893, 1897.

The process for separating a service member who refuses to be vaccinated against COVID-19 without a valid exemption includes prior notice and the opportunity to provide a defense, and the process would typically take several months to complete. *See* ROA.1900-03. Navy service members who are discharged as a result of that process may obtain review of their discharge from the Naval Discharge Review Board, *see* ROA.1906, and from the Board for Correction of Naval Records, which is empowered to void a discharge, *see* ROA.1907. The "least favorable characterization of service for Navy service members" who are discharged for "refusing the vaccine, without extenuating circumstances, will be GENERAL (under honorable conditions)." ROA.1677.

---

[3] The Chief of Naval Personnel is the centralized authority to initiate separation procedures for sailors who refuse COVID-19 vaccination and do not have a pending exemption request. ROA.1671. The Vice Chief of Naval Operations—the second-highest uniformed officer in the Navy—is the Navy authority to initiate court-martial and non-judicial punishment for sailors refusing COVID-19 vaccination without an exemption. *See* ROA.1671.

10

### C. Procedural History

#### 1. Complaint

On November 9, 2021, 35 members of the Navy, all proceeding under pseudonyms, filed a complaint challenging the DoD COVID-19 vaccination directive and Navy policies implementing the DoD directive. The complaint identifies plaintiffs as twenty-six Navy SEALs, five Navy Special Warfare Combatant-Craft Crewmen, one Navy Explosive Ordnance Disposal Technician, and three Navy Divers. *See* ROA.34. The complaint asserts claims under RFRA (Counts 1-2) and the First Amendment (Counts 3-4). *See* ROA.48-57.

#### 2. Preliminary Injunction Motion and Order

On November 24, 2021, plaintiffs moved for a preliminary injunction. The district court granted plaintiffs' motion, enjoining defendants from "applying MANMED § 15-105([4])(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21 to [p]laintiffs" and from "taking any adverse action against [p]laintiffs on the basis of [p]laintiffs' requests for religious accommodation." ROA.2419.

The court held that plaintiffs were not required to exhaust their intra-service remedies because the court believed such remedies would be "inadequate" and exhaustion would be "futile." ROA.2402-05. The court reasoned that, even if plaintiffs were granted religious accommodations, their unvaccinated status would still leave them "permanently barred from deployment[] [and] denied the bonuses and incentive pay

11

that accompany deployment." ROA.2404-05. The court further concluded that plaintiffs' request for preliminary relief was justiciable because the court believed that (1) plaintiffs assert strong First Amendment and RFRA claims, *see* ROA.2406-07; (2) the loss of First Amendment freedoms constitutes irreparable injury and plaintiffs are suffering other injuries while waiting for the Navy to adjudicate their religious-exemption requests, *see* ROA.2407-08; (3) whether denying religious accommodations violates the First Amendment is a "distinct legal question that would not seriously impede the military in the performance of vital duties," ROA.2409; and (4) evaluating whether the vaccination requirement passes muster under the First Amendment and RFRA "requires neither military expertise or discretion," ROA.2409 (quotation marks omitted).

The court held that plaintiffs had shown a likelihood of success on the merits of their RFRA claim because they "have safely carried out their jobs during the pandemic," ROA.2412; because defendants have already achieved widespread vaccination within the Navy, *see* ROA.2413; and because the Navy is willing to grant exemptions for medical reasons and to service members who are participating in clinical trials, *see* ROA.2413-14. The court concluded that plaintiffs were likely to succeed on the merits of their Free Exercise Clause claim because it believed that "medically exempt, unvaccinated servicemembers are immediately deployable while unvaccinated servicemembers with religious objections are not." ROA.2414-15. The court held that the loss of First Amendment freedoms constitutes irreparable injury, *see* ROA.2417, and

that the balance of harms favors plaintiffs because "[n]early 100% of the Navy has been vaccinated," hospitalizations are "rising at a much slower rate," and COVID-19 treatments "are becoming more effective and widely available," ROA.2419.

### 3.    Motions for a Partial Stay Pending Appeal

The Navy asked the district court to stay the preliminary injunction pending appeal insofar as it precludes the Navy from considering plaintiffs' vaccination status in making deployment, assignment, and other operational decisions. The Navy also advised the court that, during the pendency of this appeal, the Navy would not initiate involuntary separation or disciplinary proceedings against plaintiffs for refusing to be vaccinated against COVID-19. *See* ROA.2545.

The district court denied the motion. *See* ROA.2964. The court declared that plaintiffs' claims are justiciable—even with respect to deployments, assignments, and other operational decisions—because "this case does not present a question of military strategy or personnel placement." ROA.2967. Regarding the merits and balance of harms, the court explained that it was "unconvinced that thirty-five unvaccinated [p]laintiffs present an intolerably high risk to their vaccinated peers." ROA.2971.

The Navy then sought a partial stay pending appeal in this Court, which was denied. The panel (Jones, Duncan, Engelhardt, JJ.) concluded that the Navy has "stacked the deck" against religious exemptions from the COVID-19 vaccination requirement, Stay Order 18; has a "plan . . . to ignore RFRA's protections," *id.* at 21; and lacks a compelling interest in requiring that plaintiffs be vaccinated because

plaintiffs "engage in life-threatening actions that may create risks of equal or greater magnitude than the virus," *id.* at 25.[4]

On March 7, the Navy applied for a partial stay in the Supreme Court. *See Austin v. U.S. Navy SEALs 1-26*, No. 21A477 (U.S. filed Mar. 7, 2022). The Supreme Court granted the application on March 25, staying the preliminary injunction "insofar as it precludes the Navy from considering [plaintiffs'] vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U.S. Navy SEALs 1-26*, No. 21A477, slip op. at 1 (U.S. Mar. 25, 2022). In a concurring opinion, Justice Kavanaugh explained that a stay was warranted "for a simple overarching reason: Under Article II of the Constitution, the President of the United States, not any federal judge, is the Commander in Chief of the Armed Forces." *Id.* (Kavanaugh, J., concurring). Justice Kavanaugh "s[aw] no basis in this case for employing the judicial power in a manner that military commanders believe would impair the military of the United States as it defends the American people." *Id.* at 3.

### 4.    Further Proceedings in District Court

Litigation continued in the district court after entry of the preliminary injunction. Plaintiffs moved for class certification and a classwide preliminary injunction extending relief to all of the thousands of Navy service members who have sought religious exemptions. *See* Stay Order 14 n.7. Plaintiffs also filed a contempt motion asserting that

---

[4] Because the stay panel concluded that plaintiffs were likely to succeed on their RFRA claims, it did not address their Free Exercise Clause claims. *See* Stay Order 13 n.6.

the preliminary injunction entitles them to immediate transfer to operational units; to be assigned or reassigned to specific military duties, including leadership positions; to have military equipment issued to them; and to train and deploy with operational units. ROA.2662-66.

On March 28, 2022, the district court certified a class consisting of all Navy service members who have submitted religious-accommodation requests and subclasses of Special Warfare service members and SEALs. *See* Dkt. 140, at 7, 27. The court granted a classwide preliminary injunction barring enforcement of DoD's and the Navy's COVID-19 vaccination requirements but immediately stayed the injunction "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *Id.* at 27 (quoting *Austin*, slip op. at 1).

## SUMMARY OF ARGUMENT

The district court abused its discretion in granting the preliminary injunction. The court improperly substituted its views for the Navy's considered judgments about Special Warfare service members' fitness, discipline, assignment, and deployment. The preliminary injunction threatens to impair the Navy's ability to train, maintain, and deploy its elite special-operations forces and, as the sworn declarations of military commanders explain, thus also threatens the success of Special Warfare missions. The district court simply dismissed the Navy's considered professional judgment regarding the precautions that must be taken to reduce the risk that a service member will become

15

ill and compromise a mission, as well as how best to maintain good order and discipline among the small group of service members who train for and execute some of the military's most hazardous and sensitive tasks. The preliminary injunction risks substantially undermining our national defense—a grave harm that outweighs any interests plaintiffs may have in avoiding employment-related consequences during the pendency of this suit.

1. Plaintiffs have not carried their burden of showing a substantial likelihood of success on the merits of their claims.

As an initial matter, plaintiffs' claims are not justiciable under the test set forth in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). Plaintiffs have not fully exhausted their intra-service remedies: only two plaintiffs have exhausted appeals of the denial of their religious-exemption requests, and none has been subjected to discipline or to separation proceedings, which they can administratively challenge. *Mindes* also bars the district court from considering plaintiffs' challenges to Navy decisions about deployments, assignments, and other operational duties. "[D]ecisions as to the composition, training . . . and control of a military force are essentially professional military judgments . . . ." *Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (second alteration in original) (quoting *Chappell v. Wallace*, 462 U.S. 296, 302 (1983)). By requiring the Navy to deploy and assign plaintiffs without regard for their vaccination status, the district court "in effect inserted itself into the Navy's chain of command, overriding military commanders' professional military judgments" about operational needs and

16

requirements, including service members' fitness to deploy and carry out other duties. *Austin v. U.S. Navy SEALs 1-26*, No. 21A477, slip op. at 2 (U.S. Mar. 25, 2022) (Kavanaugh, J., concurring). Plaintiffs may vindicate any interests they might have in objecting to vaccination through the intra-service processes that they have failed to complete.

Plaintiffs also failed to demonstrate a substantial likelihood of success on the merits of their RFRA and Free Exercise Clause claims because requiring plaintiffs to be vaccinated against COVID-19 is the least restrictive means to further multiple compelling military interests. *See Austin*, slip op. at 2 (Kavanaugh, J., concurring). Unvaccinated or partially vaccinated service members are at higher risk of contracting COVID-19. ROA.1854-56. If an unvaccinated or partially vaccinated member of a special-operations team were to develop COVID-19 symptoms, that person might become unable to carry out his or her unique role, jeopardizing the team's mission, leaving the Nation exposed to the national security threat the team was assigned to address, and potentially spreading the disease to other team members. *See, e.g.*, ROA.1856. A seriously ill service member might also have to be medically evacuated, "creat[ing] additional risk . . . to the mission" and "plac[ing] those [s]ervice members executing the medivac at a significant risk of harm or death themselves." ROA.1877. Precluding the Navy from considering plaintiffs' unvaccinated status in assigning duties would also jeopardize the health and safety of service members who support Special Warfare personnel and undermine military order and discipline.

For similar reasons, the district court erred by assuming that interfering with military deployment, assignment, and other operational-duty decisions can qualify as "appropriate relief" under either RFRA or the Free Exercise Clause.

2.     The balance of equities also weighs heavily against the preliminary injunction. As even the district court recognized, plaintiffs' alleged career damage, including being declared nondeployable and deprived of promotions and travel, "do[es] not, by [itself], rise to the level of irreparable injury." ROA.2417. The court correctly recognized that plaintiffs could be awarded "backpay, retroactively promoted, or reimbursed for lost benefits like medical insurance and the GI Bill." ROA.2417. The district court held that plaintiffs had nonetheless shown irreparable harm because their alleged workplace injuries "are inextricably intertwined with" an alleged loss of constitutional rights, ROA.2417, but it is well-established that employment-related harms are not irreparable, *see, e.g., Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). That bedrock principle does not yield simply because plaintiffs assert meritless constitutional claims. By contrast, enjoining the Navy from requiring plaintiffs to be vaccinated harms the national defense and the public interest.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008); *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) ("Injunctive relief is an extraordinary and drastic remedy[] and should only be granted when the movant has clearly carried the burden of

persuasion."). Plaintiffs must "*by a clear showing*" establish that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm without an injunction; (3) the balance of equities tips in their favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Failure to satisfy any one of these requirements precludes injunctive relief. *See Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

This Court reviews the grant of a preliminary injunction "for abuse of discretion, reviewing findings of fact for clear error and conclusions of law de novo." *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 354 (5th Cir. 2020) (quotation marks omitted). "When a district court applies incorrect legal principles, it abuses its discretion." *Id.*

## ARGUMENT

## I.    The Preliminary Injunction Should Be Vacated Because Plaintiffs Failed to Demonstrate a Substantial Likelihood of Success on the Merits.

### A.    Plaintiffs' Claims Are Not Justiciable.

This Court has long held that a suit challenging military decisionmaking is justiciable only if the case satisfies various requirements. First, "a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971). If the case satisfies those

threshold conditions, the court "must examine the substance of [the plaintiff's allegations] in light of the policy reasons behind nonreview of military matters." *Id.* That inquiry requires the court to weigh four factors: (1) "[t]he nature and strength of the plaintiff's challenge to the military determination"; (2) "[t]he potential injury to the plaintiff if review is refused"; (3) "[t]he type and degree of anticipated interference with the military function"; and (4) "[t]he extent to which the exercise of military expertise or discretion is involved." *Id.*[5]

Applying these factors, this Court has declined to review a variety of challenges to military decisionmaking. *See, e.g., Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 302 (5th Cir. 2008); *Meister v. Texas Adjutant Gen.'s Dep't*, 233 F.3d 332, 340-41 (5th Cir. 2000); *Holdiness v. Stroud*, 808 F.2d 417, 423 (5th Cir. 1987); *NeSmith v. Fulton*, 615 F.2d 196, 201-03 (5th Cir. 1980). This Court likewise should not review plaintiffs' claims challenging the military's determination that their failure to obey lawful orders to be vaccinated against COVID-19 poses intolerable risks to the health and safety of other service members and the success of military missions.

---

[5] The stay panel questioned whether *Mindes* applies to RFRA claims. *See* Stay Order 15-16. But *Mindes*, by its terms, applies even where a plaintiff alleges the deprivation of a constitutional right, 453 F.2d at 201, and Congress made clear that RFRA did not disturb traditional principles of judicial deference to military decisionmaking, *see infra* p. 33.

### 1.    Plaintiffs Have Not Exhausted Their Intra-Service Remedies.

Plaintiffs cannot satisfy the initial threshold requirements of *Mindes* because they have not exhausted the available intra-service remedies for seeking religious exemptions from the vaccination requirement. Plaintiffs acknowledged that some of their requests for religious exemptions were still under review, *see* ROA.2174, 2177, 2195, 2204, 2208, 2216, 2221, 2227, and that other plaintiffs either planned to appeal the denial of their requests, *see* ROA.2146, 2153, 2186, 2192, or already had appeals pending, *see* ROA.2149, 2156, 2159, 2162, 2165, 2169, 2172, 2181, 2184, 2199, 2202, 2212, 2224. Several weeks after the preliminary injunction was granted, plaintiffs notified this Court that two plaintiffs' administrative appeals had been denied. *See* Exs. to Opp'n to Mot. for Partial Stay Pending Appeal (filed Feb. 21, 2022). The Navy has not yet proposed or initiated disciplinary or separation proceedings against any plaintiff.

The district court acknowledged that plaintiffs had not exhausted their intra-service remedies but wrongly concluded that it would be futile for them to do so. *See* ROA.2402. As explained, the Navy evaluates requests for religious exemptions on an individualized, case-by-case basis, deciding whether the denial of any such request would, as applied to the service member at issue, represent the least restrictive means to accomplish a compelling military interest. *See supra* pp. 7-8. This process permits the Navy to consider each service member's individual circumstances and compile a record on matters directly relevant to the validity of individual service members' claims, including the sincerity of each service member's religious beliefs. *See* ROA.1918

(requiring that military chaplains evaluate whether each "requestor's religious beliefs appear sincerely-held"). That concern is particularly important here, given that the Navy received a total of 83 requests for religious exemptions from vaccination requirements between 2015 and 2021 and more than 3000 requests since then. *See supra* p. 8. The district court wrongly encroached on the military's prerogatives by considering plaintiffs' claims before the Navy had an opportunity to complete its deliberative process.

Plaintiffs and the district court sought to characterize the Navy's individualized process as a façade for the alleged blanket denial of religious-exemption requests. *See, e.g.*, ROA.2403 (asserting that exemption requests are "denied the moment they begin"). Those assertions fundamentally misunderstand the record and overlook the strong presumption that military officers "discharge their duties correctly, lawfully, and in good faith." *Coburn v. McHugh*, 679 F.3d 924, 929 (D.C. Cir. 2012) (quotation marks omitted). The district court mistakenly believed, for example, that commanders are required to use a template recommending denial of religious-exemption requests when transmitting requests to the Deputy Chief of Naval Operations for decision. ROA.2403; *see* Stay Order 6 (wrongly stating that "there apparently is no approval template"). But commanders are provided a template that allows a recommendation for or against approval, *see* ROA.1897, 1925-26, as reflected by the fact that two plaintiffs' commanding officers recommended approval of their religious-exemption requests, *see* Stay Order 9-11.

22

The district court also emphasized that there is a "fifty-step process" for evaluating requests for religious exemptions, ROA.2403, but those fifty steps are not things a service member must do; they are specific administrative instructions for logging information about a request into the Navy's computer systems and transmitting it to the appropriate decisionmaker. *See* ROA.2360-76. The process does not impose onerous burdens on service members requesting religious exemptions.[6] The decisionmaker is free to approve or disapprove a request based on the circumstances of the case. In any event, this Court has routinely required exhaustion even where it perceived the odds of relief as remote, explaining that exhaustion gives the Court the benefit of "a definitive interpretation of the [policy at issue] and an explication of the relevant facts from the highest administrative body in the [military's] own appellate system." *Von Hoffburg v. Alexander*, 615 F.2d 633, 639 (5th Cir. 1980); *see Hodges v. Callaway*, 499 F.2d 417, 422 & n.13 (5th Cir. 1974).

The district court also concluded that plaintiffs need not exhaust their intra-service remedies because, even if accommodations were granted, plaintiffs' unvaccinated status would bar them from deploying and from earning related bonuses and incentive pay. *See* ROA.2404-05. But it is firmly established that courts cannot interfere with professional military decisions about which troops to deploy. *See, e.g.,*

---

[6] Step 18, for example, is "Once at the Inbox, select New > Templates > Religious Accommodation Request," and Step 37 is "Move to the right side of the spreadsheet." ROA.2368, 2374.

*Austin v. U.S. Navy SEALs 1-26*, No. 21A477, slip op. at 1-3 (U.S. Mar. 25, 2022) (Kavanaugh, J., concurring). And in any event, like any other service member who is unvaccinated for any reason, a service member who is granted a religious accommodation may seek a waiver of his or her medical-disqualification status. *See supra* pp. 8-9. Plaintiffs do not allege that they have sought that kind of waiver (which is unsurprising, since the vast majority of plaintiffs have not even completed the antecedent process for seeking religious accommodations). And, again, regardless of the likelihood that the Navy would ultimately grant a medical-disqualification waiver, requiring plaintiffs to adhere to the process would allow the Navy to apply its policies in the first instance and evaluate whether any individual plaintiff's role and responsibilities would permit him to serve in an operational status despite being unvaccinated. *See, e.g.*, *Von Hoffburg*, 615 F.2d at 639; ROA.2601-02 (explaining that the Navy assesses the risks of deploying unvaccinated service members without regard for whether they are unvaccinated for religious or secular reasons); ROA.1871-72, 1877 (similar).

The stay panel excused plaintiffs' failure to exhaust their intra-service remedies because "[c]ourts are specifically equipped to address RFRA claims and, by the same token, the issues are less suitable for administrative adjudication." Stay Order 18.[7]

---

[7] A merits panel of this Court is not bound by a stay panel's conclusions. *See, e.g.*, *Texas Democratic Party v. Abbott*, 978 F.3d 168, 176 (5th Cir. 2020); *Veasey v. Abbott*, 870 F.3d 387, 392 (5th Cir. 2017) (per curiam). The stay panel's analysis in this case is entitled to even less weight in light of the Supreme Court's subsequent decision to grant a stay.

RFRA, however, applies to all federal law "and the implementation of that law," 42 U.S.C. § 2000bb-3(a), and application of RFRA is thus often closely intertwined with agencies' areas of expertise, *see, e.g.*, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020) (concluding that federal agencies lawfully considered RFRA in issuing regulations pertaining to insurance coverage of contraceptives). As Justice Kavanaugh explained, application of RFRA to the Navy's COVID-19 vaccination requirement necessarily implicates core military judgments about how to ensure the readiness of Navy special-operations forces and maximize the odds of their military success. *See Austin*, slip op. at 2-3 (Kavanaugh, J., concurring). Allowing the Navy to consider and compile a record on those matters serves the purposes underlying the exhaustion requirement and would facilitate judicial review.

The stay panel also stated that the Navy to date "ha[d] denied all religiously based claims for exemption from COVID-19 vaccination," Stay Order 17-18, but as the panel itself noted, "futility is not a function of the likely ultimate success of administrative exhaustion," *id.* at 18. As explained, the Navy's process for adjudicating religious-exemption requests requires individualized consideration of each request. Indeed, the Navy actually has granted one request for a religious exemption from the COVID-19 vaccination requirement. *See supra* p. 8 & n.2. And the Navy's denial of other requests reflects not a hostility to religion, but a compelling interest in minimizing the risk to, and maximizing the success of, its dangerous and critical missions. *See* ROA.1862-64.

Exhaustion permits the Navy to assess those risks in the context of each individual service member's circumstances.

The district court also concluded that exhaustion was unnecessary because it would not remedy injuries plaintiffs "suffer[] . . . while waiting for the Navy to adjudicate their requests," such as withheld promotions. ROA.2408. That conclusion is at odds with the court's own recognition that plaintiffs' allegations of damage to their careers "do not, by themselves, rise to the level of irreparable injury," since plaintiffs could be awarded "backpay, retroactively promoted, or reimbursed for lost benefits like medical insurance and the GI Bill." ROA.2417; *see infra* pp. 49-50. The district court also apparently credited plaintiffs' claim that they would lose their "Trident[s]," ROA.2408—warfare qualifications that a board of senior service members can remove for performance-related deficiencies—but ignored the Navy's explanation that such action is neither "anticipated, nor desired" for noncompliance with the COVID-19 vaccination requirement, ROA.1875. In sum, this Court's precedent requires plaintiffs to exhaust their intra-service remedies so that the Navy can make findings and apply its expertise to plaintiffs' individual circumstances, as it must do when evaluating religious-exemption requests.

> **2.    The District Court Also Lacked Authority to Review Military Judgments Relating to Deployments, Assignments, and Other Operational Duties.**

Even if plaintiffs' failure to exhaust their intra-service remedies could be overlooked, the district court lacked authority to enjoin the Navy from considering

plaintiffs' vaccination status in making deployment, assignment, and other operational decisions at the second step of the *Mindes* test. That component of the *Mindes* test requires a court to consider: (1) the nature and strength of the plaintiff's challenge, (2) his potential injury if review is refused, (3) the type and degree of anticipated interference with the military function, and (4) the extent to which the exercise of military expertise or discretion is involved. *See Mindes*, 453 F.2d at 201-02. All four factors demonstrate that a civilian court may not review military determinations with respect to duty assignments, deployment, and medical fitness for duty.

The Supreme Court has long recognized that "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). "[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence." *Id.*; *see Austin*, slip op. at 1-2 (Kavanaugh, J., concurring). "[J]udges are not given the task of running the [military]," and it is the role of the military, not the courts, to determine service members' fitness for duty, discipline, and assignments. *Orloff v. Willoughby*, 345 U.S. 83, 92-93 (1953); *see Bynum v. FMC Corp.*, 770 F.2d 556, 562-63 (5th Cir. 1985) ("It has long been recognized that interference by civilian courts with military authority inevitably raises both questions about judicial competency in this area and separation of powers concerns."). Consistent with those principles, *Mindes* discussed the Supreme Court's unwillingness to analyze a service member's "fitness as

an officer," 453 F.2d at 200, and in *Reaves v. Ainsworth*, 219 U.S. 296 (1911), the Supreme Court refused to second-guess the military's determination of a service member's "fitness for promotion," *id.* at 298; *see Orloff*, 345 U.S. at 94 (noting the absence of any prior case in which the Supreme Court "ha[d] assumed to revise duty orders as to one lawfully in the service").

Other courts of appeals have likewise consistently declined to second-guess military judgments regarding fitness for duty, discipline, and assignments. *See, e.g.*, *Harkness v. Secretary of the Navy*, 858 F.3d 437, 443-45 (6th Cir. 2017) (declining to review a claim that a service member was wrongly denied promotions and duty assignments); *Antonellis v. United States*, 723 F.3d 1328, 1336 (Fed. Cir. 2013) ("Courts are in no position to determine the 'best qualified Officer' or the 'best match' for a particular billet."); *Maier v. Orr*, 754 F.2d 973, 984 (Fed. Cir. 1985) (determining physical fitness of service members is for the armed forces, not the judiciary); *Sebra v. Neville*, 801 F.2d 1135, 1141-42 (9th Cir. 1986) (declining to review a military transfer decision). That hesitance has extended even to constitutional challenges. *See, e.g.*, *Orloff*, 345 U.S. at 93-94 (Fifth Amendment); *Harkness*, 858 F.3d at 443-45 (First Amendment); *United States v. Webster*, 65 M.J. 936, 946-48 (A. Ct. Crim. App. 2008) (rejecting an argument that RFRA entitled a Muslim service member to challenge his deployment to Iraq).

As a result, the third and fourth factors of the *Mindes* analysis strongly disfavor review of the Navy's deployment, assignment, and other operational decisions concerning plaintiffs. In requiring the Navy to deploy and assign plaintiffs without

regard for their vaccination status, the district court effectively "inserted itself into the Navy's chain of command, overriding military commanders' professional military judgments" regarding plaintiffs' fitness for duty. *Austin*, slip op. at 2 (Kavanaugh, J., concurring). The court ignored that "decisions as to the composition, training, . . . and control of a military force are essentially professional military judgments." *Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (alteration in original) (quoting *Chappell v. Wallace*, 462 U.S. 296, 302 (1983)); *see Chappell,* 462 U.S. at 300 (warning against suits that "tamper with the established relationship between enlisted military personnel and their superior officers"); *Harkness*, 858 F.3d at 444-45. Indeed, in *Mindes* itself, this Court cautioned that "[c]ourts should defer to the superior knowledge and experience of professionals in matters [that] directly relate[] to specific military functions." 453 F.2d at 201-02.

The district court asserted that its injunction would not interfere with military discretion because "[w]hether denying religious accommodations violates the First Amendment is a distinct legal question" that "requires neither 'military expertise or discretion.'" ROA.2408-09 (quoting *Mindes*, 453 F.2d at 201). But decisions about assignments, deployment, and fitness for duty quintessentially implicate military expertise and discretion, and the preliminary injunction necessarily and inevitably interferes with those core military judgments. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24-25 (2008) (explaining that courts must "give great deference" to "professional military judgments" about what is needed to ensure military readiness)

(quotation marks omitted); *Harkness*, 858 F.3d at 444-45 ("Duty assignments lie at the heart of military expertise and discretion," and "[s]ubjecting every such assignment to judicial review would have a deleterious effect on the military's performance of its vital operations and would impede its overall preparedness."); *Church v. Biden*, No. 21-2815, 2021 WL 5179215, at *18 (D.D.C. Nov. 8, 2021) (Secretary of Defense's decision to require vaccination is "supported by a lengthy record replete with data demonstrating the necessity of a general vaccine mandate").[8]

The record highlights the district court's extreme disregard of core military judgments. The Secretary of Defense has "determined that mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people." ROA.1591. He explained that, "[t]o defend this Nation, we need a healthy and ready force" and concluded that COVID-19 vaccination was essential to that objective. ROA.1591. The Secretary made that decision after consulting with "medical experts and military leadership," ROA.1591, including the "Chairman of the Joint Chiefs of Staff, the Secretaries of the Military Departments, [and] the Service Chiefs," and considering a recent rise in infection rates, ROA.1589. The Secretary of the Navy

---

[8] *Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003), cited by the district court in denying the Navy's motion for a partial stay pending appeal, is inapposite. *Doe* held that a court could review whether, by requiring service members and civilian DoD employees to receive an anthrax vaccine, the military violated a statute that required service members' consent before they could be given experimental drugs unlicensed for their intended use without the employees' consent. *See id.* at 129. This case involves no such specific congressional action directed to the COVID-19 vaccine, which is licensed.

likewise found that COVID-19 "adversely impacts" "force readiness and mission execution" and that "[v]accination is the most effective tool we have to prevent widespread manifestation of COVID-19 in [the] force." ROA.1662. Other nations' vaccination requirements also restrict the ability of unvaccinated service members to enter those countries or to participate in joint training exercises, which are "vital to the preservation of national security and the protection of our foreign interests." ROA.1853; *see* ROA.1878. Vaccinations have promoted readiness by reducing the risk of service member infections, hospitalizations, and deaths; by reducing the number of service members required to quarantine; and by permitting the military to return to higher levels of occupancy in DoD facilities and hold in-person training. ROA.1854.

In its *Mindes* analysis, the stay panel concluded that judicial review would not "seriously impede the Navy's performance of its vital duties" because the Navy had granted hundreds of temporary medical exemptions. *See* Stay Order 20. But plaintiffs demand *permanent* religious exemptions and an entitlement to continue their duties without modification. A Special Warfare service member with a temporary medical exemption generally is not eligible to deploy while the exemption is in place, *see* ROA.1686, ROA.2602-03, and must be vaccinated when the exemption expires. The injunction here—which, until the Supreme Court stayed it, required the Navy to deploy and assign plaintiffs without regard for their vaccination status, unlike other unvaccinated service members—directly trenches on core military judgments about what is necessary to ensure an effective fighting force, a quintessential matter of military

expertise and discretion.

The stay panel also relied on an observation by Vice Admiral William Merz that the Omicron variant had had "no operational impact" on the Navy. *See* Stay Order 21. But Vice Admiral Merz explained that the Omicron variant had minimal operational impact *precisely because* all operational Navy units are currently 100 percent vaccinated— by virtue of the fact that service members "who have a waiver or are seeking a COVID-19 vaccine exemption are transferred to a shore tour to ensure sailors in operational units are fully vaccinated." ROA.2731, 2749 (quoting ROA.2731); *see* Dkt. No. 130, at 24-25.

The first and second *Mindes* factors—which focus on the nature and strength of the plaintiff's claims and his potential injury, *see Mindes*, 453 F.2d at 201-02—also disfavor review of plaintiffs' request to bar the Navy from taking their unvaccinated status into account. As even the district court recognized, harms to plaintiffs' careers are not irreparable, *see infra* pp. 49-50, and the constitutional nature of plaintiffs' claims is of little if any weight because the Supreme Court and this Court have held that core military decisions are unreviewable even against constitutional challenge, *see supra* pp. 27-28. Plaintiffs' asserted interests in those matters also are of little weight because plaintiffs' claims are likely to fail on the merits. *See infra* pp. 32-48.

**B.    Plaintiffs Failed to Demonstrate a Substantial Likelihood of Success on the Merits of Their Claims.**

The district court also erred in granting a preliminary injunction because plaintiffs did not establish a substantial likelihood of success on their RFRA and First Amendment claims.

**1.    Plaintiffs' RFRA Claims Lack Merit.**

RFRA provides that the federal government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the government "demonstrates that application of the burden to the person" "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb(1)(a), (b).

In applying the Free Exercise Clause, the Supreme Court has long recognized that "when evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). Congress incorporated those longstanding principles when it enacted RFRA, expressly noting that "[t]he courts have always recognized the compelling nature of the military's interest" in "good order, discipline, and security" and have "always extended to military authorities significant deference in effectuating these interests." S. Rep. No. 103-111, at

33

12 (1993). Congress "intend[ed] and expect[ed] that such deference w[ould] continue under [RFRA]." *Id.*; *see* H.R. Rep. No. 103-88, at 8 (1993). The district court stood these principles on their head by substituting its own judgment about the current risks of COVID-19 and the adverse impact of unvaccinated service members on military readiness for the judgments of the military commanders that the Constitution and Congress have entrusted with making such determinations.

### a. Requiring Plaintiffs to Be Vaccinated Against COVID-19 Furthers Compelling Military Interests.

Requiring plaintiffs to be vaccinated against COVID-19 furthers compelling military interests, especially when evaluated against the backdrop of the substantial deference that courts have always given to military operational decisionmaking. "Stemming the spread of COVID-19 is unquestionably a compelling interest . . . ." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam). It is all the more important in the military, given the "vital interest" of maintaining a fighting force "that functions with maximum efficiency and is capable of easily and quickly responding to continually changing circumstances." *United States v. O'Brien*, 391 U.S. 367, 381 (1968).

Extensive record evidence demonstrates that the Navy has a continuing, compelling interest in ensuring that members of the Special Warfare community, including plaintiffs, are vaccinated. *See* ROA.1849-1957, 2567-2610 (declarations of high-ranking Navy officers). Navy personnel routinely operate for extended periods of

time in confined spaces that are ripe breeding grounds for respiratory illnesses, where mitigation measures such as distancing are impractical or impossible. A SEAL who falls ill not only cannot complete his or her own mission but risks infecting others as well, particularly in close quarters like submarines. A severe illness could require impractical or impossible medical evacuation and could jeopardize mission success. The Navy has a compelling interest in avoiding those foreseeable risks, especially given the transmissibility and virulence of COVID-19. *See* ROA.1878 ("Given the missions performed by [special-operations forces], it is vital that a member of the [Special Warfare] community be medically fit to train or deploy on short notice."); ROA.2579-80 (similar).

Unvaccinated or partially vaccinated service members are at substantially higher risk of contracting COVID-19 and developing severe symptoms that require hospitalization, which would necessarily remove them from their units and affect mission execution. *See, e.g.*, ROA.1854-55, 1865. Furthermore, Navy "[t]raining and operations necessitate [that] [s]ervice members interact in close-quarters, confined spaces, and under extreme conditions where telework, social distancing, and mask-wearing are not realistic options." ROA.1876. As Admiral William K. Lescher, the second-highest uniformed officer in the Navy, explained in his declaration supporting the government's motion for a partial stay, the nature of these duties renders Navy personnel "particularly susceptible to contagious respiratory diseases such as COVID-19." ROA.2575. Limited medical support is available while forces are deployed, so a

crewmember who developed severe symptoms would likely require a risky and disruptive medical evacuation, assuming a timely evacuation were even possible. ROA.1864, 1877. Admiral Lescher therefore concluded that "[r]estriction of the Navy's ability to reassign unvaccinated personnel in order to mitigate COVID-19 related risks to units preparing to deploy, or that are deployed, will cause direct and immediate impact to mission execution." ROA.2568. The judicial power should not be employed "in a manner that military commanders believe would impair the military of the United States as it defends the American people." *Austin*, slip op. at 3 (Kavanaugh, J., concurring).

The risks are particularly acute for Special Warfare service members. Special Warfare units often operate in small teams of two to four, which means "the incapacitation of one member can significantly degrade the effectiveness of the unit and may ultimately compromise the mission." ROA.1863-64. Their operations "are often conducted in hostile or diplomatically sensitive environments" and require service members "to work in close quarters where social distancing is not possible," including sitting "shoulder-to-shoulder or chest-to-back" on "vehicles that are not even six feet across, and/or which have limited ventilation." ROA.1876. Service members may also "have to share closed-circuit diving rebreathers," meaning they "literally inhale one another's exhalation." ROA.1876.

At the same time, Special Warfare forces "must be fully medically ready and at peak fitness given that their training and missions are physically demanding and

arduous" and given the need "to respond to contingencies and crises around the world" on "short notice." ROA.2579-80; *see* ROA.1878 (similar). "SEALs conduct insertions and extractions by sea, air[,] or land; they capture high-value enemy personnel and terrorists around the world, carry out small-unit direct-action missions against military targets[,] and perform underwater reconnaissance and strategic sabotage." ROA.2583; *see* ROA.1869-70. When conducting such operations, "[m]edical conditions" create "risk, both medical and operational, not only for the [s]ervice member afflicted, but for other members of the unit." ROA.1878. The Navy therefore disqualifies service members with everything from serious dental problems to severe allergies from special-operations duty, *see supra* p. 5. Unvaccinated personnel likewise threaten the health of other members of their units and their units' ability to safely conduct operations. ROA.1856, 1876-88; *see* ROA.1935, 2601 (noting that COVID-19 can cause conditions that are disqualifying for special-operations duty, such as shortness of breath, fatigue, and inability to stay awake).

As Admiral Lescher explained, data support the military's judgment that "vaccines are the most effective tool the Armed Forces have to keep our personnel safe, fully mission capable[,] and prepared to execute the Commander-in-Chief's orders to protect vital United States[] national interests." ROA.2574; *see* ROA.1662. As of December 2021, all but one of the service members who had died of COVID-19 were unvaccinated. ROA.1850; *see* ROA.2574 (all but two unvaccinated as of January 2022). Between July and December 2021, "non-fully-vaccinated active-duty service members

had a 14.6-fold increased risk of being hospitalized when compared to fully vaccinated active-duty service members." ROA.1854. In April 2020, before COVID-19 vaccines were available, an outbreak on the U.S.S. Theodore Roosevelt killed a crew member and caused the ship—one of only eleven Navy aircraft carriers—to "becom[e] non-operational." ROA.1852; *see* ROA.2575 (more than 4000 sailors removed from the ship, which "was unavailable for 51 days"). By contrast, a December 2021 outbreak on the U.S.S. Milwaukee, whose fully vaccinated crew "were asymptomatic or had mild symptoms," resulted in only a "minor deployment delay" of an additional week in port. ROA.2575-76.

Admiral Lescher thus explained that "[v]accination against COVID-19 has proven to be essential in keeping Navy units on mission" and that "[f]ully vaccinated naval forces are required to ensure readiness to carry out Navy missions throughout the world." ROA.2568. He summarized his view in stark terms:

> Sending ships into combat without maximizing the crew's odds of success, such as would be the case with ship deficiencies in ordnance, radar, working weapons or the means to reliably accomplish the mission, is dereliction of duty. The same applies to ordering unvaccinated personnel into an environment in which they endanger their lives, the lives of others and compromise accomplishment of essential missions.

ROA.2575. Other high-ranking Navy officers—including the Chief of Staff of U.S. Naval Special Warfare Command and the Deputy Chief of Naval Operations—provided similar assessments. *See* ROA.1868-78, 1886-1908.

Requiring the Navy to include plaintiffs in training commands while they are unvaccinated would also significantly harm the military mission. Fourteen plaintiffs are assigned to Naval Special Warfare Advanced Training Command, some as students and some as instructors who necessarily have close contact with students. *See* ROA.2583-84. "[T]he arduous training necessary to prepare NSW personnel" requires "interact[ions] in close-quarters, confined spaces, and under extreme conditions where telework, social distancing, and mask-wearing are not realistic options." ROA.1876; *see* ROA.2584 ("[U]nvaccinated instructors can spread COVID-19 to dozens of candidates in training, and qualified SEALs, SWCCs, and other personnel, . . . who will promptly return to their primary units or interact with additional training classes.").

By requiring the Navy to exempt plaintiffs from the COVID-19 vaccination requirement, the injunction also undercuts the maintenance of military good order and discipline. *See* ROA.1907-08. No military can successfully function where service members feel free to select the orders they will follow. *See Miller*, 42 F.3d at 303 (noting that the "concern for preserving military discipline is the most important consideration in any single case") (quotation marks omitted). Indeed, after the district court entered the preliminary injunction, one plaintiff refused to undergo weekly COVID-19 testing and stated that he would soon submit a separate request to be excused from that requirement. *See* ROA.2608-09. Because he is unvaccinated, his orders to an operational unit had previously been placed on hold pending consideration of his religious-exemption request. *See* ROA.2608-09. Before the Supreme Court stayed the injunction,

however, the Navy was forced to send him to Hawaii for duty with a command that operates "in confined spaces within exceptionally close proximity to other personnel and teammates." ROA.2609. RFRA plainly does not compel such extraordinary encroachments on military judgments.

> **b.** **Requiring Plaintiffs to Be Vaccinated Against COVID-19 Is the Least Restrictive Means Necessary to Further the Military's Compelling Interests.**

Requiring that plaintiffs be vaccinated is also the least restrictive means of furthering the military's compelling interests in ensuring that members of the Special Warfare community are as physically prepared as possible to execute their demanding missions and in minimizing avoidable risks to mission success. *See Austin*, slip op. at 2 (Kavanaugh, J., concurring). Vaccines are singularly effective at preventing COVID-19 infection and reducing the severity of illness in the case of a breakthrough infection. Plaintiffs undisputedly work in settings "where telework, social distancing, and mask-wearing are not realistic options." ROA.1876. Neither plaintiffs nor the district court identified any viable less restrictive means of furthering the Navy's compelling interest. Indeed, even in non-military settings, courts have held that vaccination requirements are the least restrictive means of advancing the government's compelling interests in preventing the spread of infectious diseases in workplaces and schools. *See, e.g.*, *Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021) (health-care workers); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173 (9th Cir. 2021) (students); *We the Patriots USA Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) (health-care workers). Contrary to the district court's apparent belief,

nothing in RFRA requires the Navy to simply accept and tolerate the added risks posed by deploying unvaccinated personnel on special-operations missions.

### c. The District Court's Reasons for Concluding that the Navy Has Violated RFRA Do Not Withstand Scrutiny.

The district court held that the Navy lacks a compelling interest in requiring that plaintiffs be vaccinated because, "[b]y all accounts, [p]laintiffs have safely carried out their jobs during the pandemic." ROA.2412. The court stated that "at least six [p]laintiffs conducted large-scale trainings and led courses without incident"; that "[e]leven [p]laintiffs successfully deployed"; and that one plaintiff received a medal "for 'safely navigating restricted movement and distancing requirements' under COVID-19 protocol in early 2020." ROA.2412-13. But others have not been so fortunate; before vaccines were available, the pandemic severely disrupted the military, causing thousands of hospitalizations and dozens of deaths. *See* ROA.1850. In any event, past good fortune is no guarantee of future success.

The prior unavailability of FDA-approved vaccines also does not mean the Navy lacks a compelling interest in preventing COVID-19 infections among service members going forward. The Navy is not required to wait until an unvaccinated Special Warfare service member actually contracts COVID-19 and jeopardizes a vital mission before acting to prevent that kind of grave harm. *See, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010) (recognizing that the government's empirical conclusions are entitled to deference where the government is attempting to prevent harm to national security).

The record also shows that COVID-19 has "impacted exercises, deployments, redeployments, and other global force management activities," including by rendering one of the Navy's eleven aircraft carriers non-operational because of an outbreak. *See* ROA.1851-52. It caused the cancellation of "19 major training events, many of which involved preparedness and readiness training with our foreign partners." ROA.1852-53. Moreover, as explained, COVID-19 infections caused a 51-day interruption in the mission of the aircraft carrier U.S.S. Theodore Roosevelt and required the removal of over 4000 crew members. By contrast, an outbreak on the U.S.S. Milwaukee resulted in only a one-week mission delay precisely because the crew's fully-vaccinated status substantially mitigated infection severity and thus the impact on the military mission. *See supra* pp. 37-38.

The district court also declared that, "[e]ven if [d]efendants have a broad compelling interest in widespread vaccination of [the] force, they have achieved this goal without the participation of the thirty-five [p]laintiffs here." ROA.2413. The court observed that the Navy's overall vaccination rate is high and that "COVID-19 treatments are becoming increasingly effective at reducing hospitalization and death." ROA.2413. That reasoning is seriously flawed. Even a small number of unvaccinated service members—especially Special Warfare personnel—can "degrade the effectiveness of the unit" and undermine missions if they contract COVID-19 or spread it to others, causing great harm even if the disease ultimately does not hospitalize or kill them. ROA.1863-64. The military has determined that vaccination is the most effective

way of protecting service members from infection, preventing the disease's spread, and minimizing the risk of mission interruptions. In addition, the strength of the government's interest does not diminish as a policy successfully reduces the problems it was designed to remedy; the interests that justified the policy in the first place remain compelling.

Furthermore, the government's interest cannot be myopically limited to an interest in ensuring that the 35 plaintiffs in this case are vaccinated. Indeed, the day this brief was due, the district court certified a class of several thousand Navy service members and granted injunctive relief as to all of them. *See supra* p. 15; *cf. Doe*, 19 F.4th at 1178 (explaining that the number of requests for religious exemptions affects the "'risk' [such] exemption[s] pose[] to the government's asserted interests"); *We the Patriots*, 17 F.4th at 285-88 (similar).

The district court also held that the Navy lacks a compelling interest in requiring plaintiffs to be vaccinated because it believed that the Navy had granted exemptions to "those participating in clinical trials and those with medical contraindications" and that service members receiving those types of exemption remain deployable. *See* ROA.2413. As explained, recipients of medical and administrative (including religious) exemptions are treated equally; both groups may deploy only if they receive a separate medical waiver, and the standard for granting or denying such a waiver does not depend on the basis for the exemption. *See supra* pp. 8-9.

Moreover, medical exemptions are unique because they serve the same basic purpose as the military's COVID-19 vaccination requirement: to ensure that the force is medically fit for the special-operations duties it performs. Giving a vaccine to a service member who is, for example, allergic to a component of the vaccine would harm the service member's health and thus would undermine the Navy's interest in ensuring military readiness and the health and safety of its members. *See Doe*, 19 F.4th at 1178 (explaining that a medical exemption for students with vaccine contraindications "serves the primary interest for imposing the mandate—protecting student 'health and safety'"). Because religious and medical exemptions serve entirely different functions, they are not comparable.

In addition, only *temporary* medical exemptions have been granted to members of the Special Warfare community. As explained, a service member receiving a temporary medical exemption is generally ineligible to deploy while the exemption is in place, and he or she must be vaccinated when it expires. Indeed, the number of temporary medical exemptions for Special Warfare operators has dwindled to two. *See supra* p. 7 n.1. The small number and temporary nature of medical exemptions in the Special Warfare community sharply distinguish those exemptions from the permanent religious exemptions that plaintiffs and thousands of others have requested. *See Doe*, 19 F.4th at 1178; *We the Patriots*, 17 F.4th at 285-87.

The district court's focus on clinical trials was similarly misplaced. The Force Medical Officer of U.S. Naval Special Warfare Command stated that he was "not aware

44

of any NSW personnel participating in clinical research trials concerning COVID-19 vaccines or other COVID-19 medications or treatments." ROA.2603; *see* ROA.1859 (similar). Even if there were any such person in the future, that person would "very likely be found [not physically qualified]" to deploy, like any other service member who receives an exemption from the vaccination requirement. ROA.2604.

The stay panel stated that the Navy lacks a compelling interest in requiring that plaintiffs be vaccinated against COVID-19 because plaintiffs "engage in life-threatening actions that may create risks of equal or greater magnitude than the virus," such as "swimming or diving in polluted waters" and "breathing toxic chemical fumes." Stay Order 25 (quotation marks omitted). But the risks the panel identified are inherent in the dangerous missions that the Special Warfare community conducts. By contrast, the harmful effects of COVID-19 are largely preventable with vaccination. The Navy has a compelling interest in reducing or eliminating preventable risks to health, safety, and mission integrity wherever it can. *See* ROA.1878.

The stay panel also faulted the Navy for failing to articulate "[p]laintiff-specific reasons for its decisions" denying religious-exemption requests. Stay Order 26. Each of the decisions to which the panel referred, however, explains that the Deputy Chief of Naval Affairs considered the specific facts reflected in the materials provided to him by plaintiffs' commanders and made an individualized determination that denial of an exemption was the least restrictive means to secure the Navy's compelling interest in ensuring that its Special Warfare personnel are fit for duty. *See* ROA.3302-03 (sealed);

ROA.3349.50 (sealed), ROA.3359-60 (sealed). Those findings are entitled to a presumption of regularity, and where, as here, high-level Navy officials' declarations satisfy RFRA's least-restrictive-means and compelling-interest requirements, it is sufficient for the Navy to opine that it has found no ground to depart from that judgment in individual cases.

### 2.    Plaintiffs' Free Exercise Clause Claims Lack Merit.

If the Court concludes that RFRA permits the Navy to require that plaintiffs be vaccinated against COVID-19, the Court need not separately address plaintiffs' Free Exercise Clause claims; the vaccination requirement would also necessarily survive the most stringent standard that could apply under the Free Exercise Clause. Because the district court erroneously held that the Navy's COVID-19 vaccination requirement targets religion for adverse treatment, however, we explain below why that is incorrect.

In *Employment Division v. Smith*, 494 U.S. 872 (1990), the Supreme Court held that neutral laws of general applicability need not be justified by a compelling interest to satisfy the Free Exercise Clause. *See id.* at 878-79; *see Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). The Navy's COVID-19 vaccination requirement is facially neutral toward religion: it requires all non-exempted active-duty Navy service members to be fully vaccinated, rather than applying only to employees who decline vaccination for religious reasons. *Cf. Doe*, 19 F.4th at 1177 (same conclusion regarding vaccination requirement for students); *see also Kane v. De Blasio*, 19 F.4th 152, 164 (2d Cir. 2021). Plaintiffs also have not demonstrated that the Navy

adopted its COVID-19 vaccination requirement with the intent of targeting religious objections.

The district court concluded that the Navy's COVID-19 vaccination requirement is not generally applicable because, "by accepting individual applications for exemptions, the [Navy] invites an individualized assessment of the reasons why a servicemember is not vaccinated." ROA.2414 (citing *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021)). Unlike in *Fulton*, however, the process of determining whether a service member is entitled to an exemption does not involve an unrestricted judgment about whether his or her reasons for requesting a religious exemption are "worthy of solicitude." *Fulton*, 141 S. Ct. at 1879 (quoting *Smith*, 494 U.S. at 884). Whether a religious-exemption request should be granted turns strictly on whether denial of the request is narrowly tailored to achieve a compelling government interest. *See* ROA.1898.

The other limited exemptions from the Navy's COVID-19 vaccination requirement also turn exclusively on objective, secular factors, and they are not comparable to the permanent religious exemptions that plaintiffs seek. As noted, a temporary medical exemption—the only kind of medical exemption that has been granted in the Special Warfare community—facilitates service members' fitness for duty, the same interest that underlies the Navy's COVID-19 vaccination requirement, and it lasts only as long as the medical condition or contraindication at issue lasts. A religious exemption, by contrast, would last as long as the service member continues to have a sincerely held religious objection to vaccination. *See Doe*, 19 F.4th at 1179

(concluding that a 30-day vaccination exemption did not "undermine [a school district's] asserted interests in student health and safety the way a religious exemption would"). Those with temporary medical exemptions generally are not deployable by virtue of the very condition warranting the exemption (*e.g.*, pregnancy), and they must get vaccinated when the temporary condition no longer exists. *See* ROA.2602. The secular conduct on which the district court focused therefore is not comparable to the broad and effectively permanent religious exemption that plaintiffs seek. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

### 3.    The Preliminary Injunction Is Not Appropriate Relief.

Insofar as the preliminary injunction dictates the Navy's deployment, assignment, and operational decisions, it also does not represent "appropriate relief" under RFRA. 42 U.S.C. § 2000bb-1(c). Nor does it comport with "traditional principles of equity jurisdiction," *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999) (quotation marks omitted), which constrain the available relief on plaintiffs' Free Exercise Clause claims, *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327-28 (2015). An injunction that trenches on core Article II prerogatives concerning which military service members are qualified for which missions is both unprecedented and inconsistent with those traditional principles. *See Austin*, slip op. at 1-3 (Kavanaugh, J., concurring).

**II.     Plaintiffs Also Failed to Show Irreparable Injury or that the Balance of Harms and the Public Interest Favor Preliminary Relief.**

**A.     Plaintiffs Failed to Demonstrate Irreparable Injury.**

The district court also erred in granting relief because plaintiffs failed to show that they are "likely to suffer irreparable harm" absent a preliminary injunction. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (quoting *Winter*, 555 U.S. at 20). To obtain an injunction, plaintiffs must show that they have "no adequate remedy at law." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quotation marks omitted). The standard is particularly demanding in the military context. *See Pitcher v. Laird*, 415 F.2d 743, 745 (5th Cir. 1969).

No plaintiff is currently facing disciplinary or separation proceedings, and the possibility that plaintiffs may face such proceedings in the future is neither concrete nor imminent. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985); *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975).[9] Nor would such hypothetical, future harm be irreparable, as the Board for Correction of Naval Records may correct

---

[9] Insofar as the preliminary injunction bars the Navy from retaliating against plaintiffs for having sought religious exemptions, plaintiffs are not entitled to preliminary relief because the Navy has not engaged in any such retaliation, *see* ROA.2860-2952, and is entitled to a presumption that it will not do so in the future.

any military record when necessary to correct an error or remove an injustice. *See* 10 U.S.C. § 1552; ROA.1906-07. Indeed, the district court properly recognized that being "declared nondeployable" and being deprived of "promotions and travel," ROA.2408, would not alone "rise to the level of irreparable injury" because plaintiffs could be awarded "backpay, retroactively promoted, or reimbursed for lost benefits like medical insurance and the GI Bill," ROA.2417; *see, e.g.*, *McCurdy v. Zuckert*, 359 F.2d 491, 493 (5th Cir. 1966) (separation from service with a general discharge not irreparable); *White v. Carlucci*, 862 F.2d 1209, 1211-13 (5th Cir. 1989) (employment-related harm not irreparable where a civilian Navy employee alleged race discrimination).

The district court concluded that plaintiffs nonetheless satisfied the irreparable-injury requirement because their alleged workplace injuries "are inextricably intertwined with" a "loss of constitutional rights." ROA.2417. The court's reasoning is irreconcilable with the Supreme Court's admonition that employment-related harms do not constitute irreparable injury absent a "genuinely extraordinary situation," *Sampson*, 415 U.S. at 92 n.68, and with this Court's emphasis that "the nature of [a plaintiff's] claim" does not "eliminate[] the need" to satisfy that standard, *White*, 862 F.2d at 1212. None of plaintiffs' allegations suffices under *Sampson*.[10]

---

[10] Nothing in *Sambrano v. United Airlines*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022), alters that well-established rule. That unpublished, per curiam disposition is not precedent, and the panel in that case was sharply divided on whether an allegation that government action substantially burdens the free exercise of religion constitutes per se irreparable harm in the employment context. Similarly, the stay panel's reliance

**B.    The Balance of Equities and the Public Interest Weigh Against Preliminary Relief.**

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs cannot satisfy either of those requirements.

Enjoining the Navy from applying its COVID-19 vaccination requirement to plaintiffs harms the national defense and the public interest. As explained, Special Warfare service members conduct some of the military's most sensitive missions, including small-scale offensive actions like the Osama bin Laden mission, counterterrorism, and hostage rescue and recovery. Unvaccinated service members face a substantially higher risk of becoming infected with COVID-19, becoming seriously ill, and being hospitalized or dying—all of which would obviously affect their units' readiness to conduct these missions. *See* ROA.1935-38. Special Warfare service members "operate in small units"—often in teams of two or four—and "the incapacitation of one member" can therefore "significantly degrade the effectiveness of the unit and may ultimately compromise the mission." ROA.1863-64. If an unvaccinated Special Warfare service member were permitted to deploy and became seriously ill with COVID-19 in a hostile area, a medical evacuation could risk the lives

---

on *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279 (5th Cir. 2012), was misplaced because that case did not involve an employment-related claim.

of other service members or could ultimately be impossible, endangering the member's life and affecting the unit's mission. ROA.1863-64, 1865, 1877-78.

For all these reasons, the Navy has long recognized that "[o]nly the most physically and mentally qualified personnel should be selected" for special-operations duty, "and those who are or may be reasonably expected to become unfit or unreliable must be excluded." ROA.1808. Short-term symptoms frequently associated with COVID-19, including shortness of breath, fatigue, inability to think straight, and inability to stay awake, *see* ROA.1935, are incompatible with mission success. Service members infected with COVID-19 could also experience "long COVID," which can cause symptoms including fatigue, functional mobility impairments, and respiratory abnormalities for months after infection, impairing a service member's ability to complete the "high-risk operations" in which special-operations forces routinely engage. ROA.1863, 1936-38; *see* ROA.1865 (noting that several members of the Special Warfare community have experienced long COVID).

Unvaccinated service members could also spread COVID-19 to others, particularly because they must often work in close quarters. *See* ROA.1852, 1937-38. For example, Navy SEALs may travel with their units on boats that are not even six feet across or on helicopters in which they sit shoulder-to-shoulder. ROA.1876. Special Warfare personnel may also have to "share closed-circuit diving rebreathers," which means that they "literally inhale one another's exhalation." ROA.1876. Forcing the Navy to accept these preventable risks is not in the public interest.

The injunction also undermines the public interest by barring the Navy from implementing discipline and adverse action consistent with its ordinary military processes. *See* ROA.1670-74; ROA.1898-1906. The Navy's "interest in good order and discipline is best served by adjudicating each refusal [to comply with the vaccine directive] on a case-by-case basis." ROA.1907-08. By halting that process, the injunction is "a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." *Orloff*, 345 U.S. at 95; *cf. White*, 862 F.2d at 1212 ("[C]ourts must consider the disruptive effect on the administrative process of the federal government of granting preliminary injunctions in government-employment-related cases."). The injunction therefore contravenes the "strong judicial policy against interfering with the internal affairs of the armed forces." *Chilcott v. Orr*, 747 F.2d 29, 33 (1st Cir. 1984).

More generally, the preliminary injunction undermines the strong public interest in slowing the spread of COVID-19 among service members and the members of the public with whom they interact. In recognition of the government's "compelling interest" in "[s]temming the spread of COVID-19," *Cuomo*, 141 S. Ct. at 67, numerous courts reviewing "executive action designed to slow the spread of COVID-19" have concluded that "[t]he public interest in protecting human life—particularly in the face of a global and unpredictable pandemic—would not be served by" an injunction, *Tigges v. Northam*, 473 F. Supp. 3d 559, 574 (E.D. Va. 2020); *see also, e.g.*, *Church*, 2021 WL 5179215, at *18-19; *Florida v. U.S. Dep't of Health & Human Servs.*, 19 F.4th 1271, 1293 (11th Cir. 2021); *Rydie v. Biden*, No. 21-2696, 2021 WL 5416545, at *5-6 (D. Md. Nov.

19, 2021), *appeal pending*, No. 21-2359 (4th Cir.).

The district court concluded there is a public interest in ensuring that plaintiffs' constitutional and statutory rights are not violated, *see* ROA.2418-19, but the Navy is not violating those rights, as explained above. In any event, the balance of interests weighs heavily against the entry of preliminary injunctive relief that undermines national defense and military readiness. *See Winter*, 555 U.S. at 24-26.

## CONCLUSION

For the foregoing reasons, the preliminary injunction should be vacated.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

CHAD E. MEACHAM
  *United States Attorney*

MARLEIGH D. DOVER
CHARLES W. SCARBOROUGH
LOWELL V. STURGILL JR.

   */s/ Sarah Carroll*
SARAH CARROLL
CASEN B. ROSS
SARAH J. CLARK
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW, Rm. 7511*
  *Washington, DC 20530*

MARCH 2022

## CERTIFICATE OF SERVICE

I hereby certify that, on March 28, 2022, I electronically filed the foregoing brief with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

*/s/ Sarah Carroll*
SARAH CARROLL
Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,962 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Word 14-point Garamond typeface.

*/s/ Sarah Carroll*
SARAH CARROLL
Counsel for Appellants