**No. 22-10077 consolidated with No. 22-10534**

# In the United States Court of Appeals for the Fifth Circuit

U.S. NAVY SEALs 1-26; U.S. NAVY SPECIAL WARFARE
COMBATANT CRAFT CREWMEN 1-5; U.S. NAVY EXPLOSIVE
ORDNANCE DISPOSAL TECHNICIAN 1; U.S. NAVY DIVERS 1-3,
*Plaintiffs-Appellees,*

*v.*

JOSEPH R. BIDEN, JR., in his official capacity as President of the United
States of America; LLOYD AUSTIN, Secretary, U.S. Department of
Defense, individually and in his official capacity as United States Secretary
of Defense; UNITED STATES DEPARTMENT OF DEFENSE; CARLOS
DEL TORO, individually and in his official capacity as United States
Secretary of the Navy,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
No. 4:21-cv-01236

## APPELLEES' BRIEF

Kelly J. Shackelford
Jeffrey C. Mateer
Hiram S. Sasser, III
David J. Hacker
Michael D. Berry
Jordan E. Pratt
Danielle A. Runyan
Ryan Gardner
Holly M. Randall
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
(972) 941-4444 (phone)

Heather Gebelin Hacker
Andrew B. Stephens
HACKER STEPHENS LLP
108 Wild Basin Road South
Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

No. 22-10077 consolidated with No. 22-10534
U.S. NAVY SEALs 1-26, ET AL.,
*Plaintiffs-Appellees*,

*v.*

BIDEN, ET AL.,
*Defendants-Appellants.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs-Appellees | Former or present counsel |
|---|---|
| • U.S. Navy SEALs 1-26<br>• U.S. Navy Special Warfare Combatant Craft Crewmen 1-5<br>• U.S. Navy Explosive Ordnance Disposal Technician 1<br>• U.S. Navy Divers 1-3 | Hacker Stephens LLP<br>• Heather Gebelin Hacker<br>• Andrew B. Stephens<br>First Liberty Institute<br>• Kelly J. Shackelford<br>• Jeffrey C. Mateer<br>• Hiram S. Sasser III<br>• David J. Hacker<br>• Michael D. Berry<br>• Justin Butterfield<br>• Jordan E. Pratt<br>• Roger Byron<br>• Danielle A. Runyan<br>• Ryan Gardner<br>• Holly M. Randall |

|  |  |
|---|---|
| **Defendants-Appellants** | **Former or present counsel** |
| • Joseph R. Biden, Jr.<br>• Lloyd Austin<br>• U.S. Department of Defense<br>• Carlos Del Toro | U.S. Department of Justice<br>• Brian M. Boynton<br>• Alexander K. Haas<br>• Anthony J. Coppolino<br>• Andrew E. Carmichael<br>• Amy E. Powell<br>• Stuart J. Robinson<br>• Zachary Avallone<br>• Courtney D. Enlow<br>• Liam Holland<br>• Reginald Skinner<br>• Daniel Luecke<br>• Chad E. Meacham<br>• Sarah E. Harrington<br>• Charles W. Scarborough<br>• Lowell V. Sturgill, Jr.<br>• Sarah W. Carroll<br>• Marleigh D. Dover<br>• Casen B. Ross<br>• Sarah J. Clark<br>• Daniel Winik |

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER
*Counsel for Plaintiffs-Appellees*

## Statement Regarding Oral Argument

Plaintiffs-Appellees request oral argument. Whether Defendants-Appellants are entitled to unlimited deference—as they contend—in forcing Navy servicemembers with sincere religious objections to COVID-19 vaccination to comply with the Department of Defense's mandate despite the Religious Freedom Restoration Act and the First Amendment is a significant issue. This case also has increased importance because the Supreme Court granted a partial stay of the preliminary injunction.

# TABLE OF CONTENTS

Page(s)

Certificate of Interested Persons ............................................................... i

Statement Regarding Oral Argument ...................................................... iii

Table of Authorities .................................................................................. vi

Introduction ............................................................................................... 1

Jurisdictional Statement ........................................................................... 5

Statement of Issues ................................................................................... 6

Statement of the Case ............................................................................... 7

    I.   Factual background ........................................................................... 7

    II.  Procedural history .......................................................................... 17

    III. Admiral Lescher's deposition testimony ..................................... 21

Summary of the Argument ..................................................................... 25

Argument .................................................................................................. 29

    I.   Plaintiffs' Claims Are Justiciable and the Court Has No Basis to
        Abstain from Deciding This Case. ............................................... 29

        A.  Plaintiffs' claims are justiciable under RFRA. ................... 29

        B.  If the justiciability test from *Mindes v. Seaman* applies,
            Plaintiffs' claims satisfy it ................................................... 33

            1.  *Mindes* does not apply to RFRA cases. ....................... 33

            2.  If *Mindes* applies, the district court (and this Court)
                correctly held that this case is justiciable. ................... 34

        C.  The district court correctly determined that the *Mindes*
            factors do not support abstention. ...................................... 37

    II.  Both Plaintiffs and the Class Are Likely to Succeed on the Merits. .......... 45

        A.  The Navy's religious accommodation process is a sham and
            categorically denies all religious exemptions in violation of *O
            Centro* ................................................................................... 45

        B.  The Navy lacks a compelling interest in categorically
            requiring religious objectors to receive a COVID-19
            vaccination despite their sincere religious beliefs. .............. 50

C.  The Navy's categorical mandate is not the least restrictive means of accomplishing its interest. ................................... 53

D.  Plaintiffs are also likely to succeed on their First Amendment claims. ........................................................................... 57

E.  Plaintiffs satisfy the other requirements for a preliminary injunction. ...................................................................... 58

F.  The preliminary injunctions are appropriate relief. ........................ 59

III. The District Court Did Not Abuse Its Discretion in Certifying the Class and That Decision Is Not an Appealable Interlocutory Order. ................................................................................. 61

A.  There is no jurisdiction over the class-certification issue. ................. 61

B.  Class certification was proper under Rule 23 and *Dukes*. ................... 64

1.  The district court did not abuse its discretion in determining that the evidence showed common questions of law and fact sufficient to satisfy the commonality requirement. ........................................................... 65

2.  The Named Plaintiffs' claims are typical of the class. ................ 68

3.  The district court did not abuse its discretion by concluding that the Rule 23(b)(2) requirements are satisfied. ...................... 69

Conclusion ................................................................................. 76

Certificate of Service ..................................................................... 77

Certificate of Compliance ................................................................ 77

# Table of Authorities

Page(s)

**Cases**

*Adair v. England,*
 183 F. Supp. 2d 31 (D.D.C. 2002) ....................................32

*Ahmad v. Old Republic Nat'l Title Ins. Co.,*
 690 F.3d 698 (5th Cir. 2012) .........................................64

*Allison v. Citgo Petroleum Corp.,*
 151 F.3d 402 (5th Cir. 1998) .........................................70

*Antonellis v. United States,*
 723 F.3d 1328 (Fed. Cir. 2013) ..................................... 40

*Armstrong v. Exceptional Child Ctr., Inc.,*
 575 U.S. 320 (2015)................................................... 60

*Austin v. U.S. Navy Seals 1-26,*
 142 S. Ct. 1301 (2022) ........................................... *passim*

*Bostock v. Clayton Cnty.,*
 140 S. Ct. 1731 (2020) ............................................... 33

*Brannum v. Lake,*
 311 F.3d 1127 (D.C. Cir. 2002) .....................................32

*Brown v. Plata,*
 563 U.S. 493 (2011)701

*BST Holdings, LLC v. OSHA,*
 17 F.4th 604 (5th Cir. 2021) ...............................2, 38, 51

*Burwell v. Hobby Lobby Stores, Inc.,*
 573 U.S. 682 (2014) ............................... 29, 41, 45, 46, 53

*Chappell v. Wallace,*
 462 U.S. 296 (1983) ............................................. 40, 41

*Chavez v. Plan Benefit Servs., Inc.,*
 957 F.3d 542 (5th Cir. 2020) .................................. 64, 65

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
 508 U.S. 520 (1993) ...................................................57

*City of Milwaukee v. Illinois,*
 451 U.S. 304 (1981) ...................................................33

*Coburn v. McHugh,*
    679 F.3d 924 (D.C. Cir. 2012) ............................................... 36

*Colonel Financial Mgmt. Officer v. Austin,*
    No. 8:22-cv-1275-SDM-TGW (M.D. Fla. Aug. 18, 2022) ........................ 34, 71

*Conn. Nat'l Bank v. Germain,*
    503 U.S. 249 (1992) ........................................................ 30

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978) ....................................................... 5, 61

*Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.,*
    710 F.3d 579 (5th Cir. 2013) .............................................. 45

*Dilley v. Alexander,*
    603 F.2d 914 (D.C. Cir. 1979) ............................................. 31-32

*Does 1-3 v. Mills,*
    No. 21A90, 142 S. Ct. 17 (2021) .......................................... 4

*Doster v. Kendall,*
    No. 1:22-CV-84, 2022 WL 2974733 (S.D. Ohio July 27, 2022) ................. 71

*Downen v. Warner,*
    481 F.2d 642 (9th Cir. 1973) .............................................. 38

*Dunn v. Smith,*
    141 S. Ct. 725 (2021) ..................................................... 51, 54

*Elrod v. Burns,*
    427 U.S. 347 (1976) ....................................................... 38, 58

*Emp. Div., Dept. of Hum. Resources of Ore. v. Smith,*
    494 U.S. 872 (1990) ....................................................... 57

*Escobar v. Montee,*
    895 F.3d 387 (5th Cir. 2018) .............................................. 62

*Fulton v. City of Phila.,*
    141 S. Ct. 1868, 1877 (2021) ............................................. 57

*Gen. Tele. Co. of Sw. v. Falcon,*
    347 U.S. 147 (1982) ....................................................... 66, 68

*Gilligan v. Morgan,*
    413 U.S. 1 (1973) ......................................................... 40

*Goldman v. Weinberger,*
    475 U.S. 503 (1986) ....................................................... 41

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) ............................................................... 45, 46, 49

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ...................................................................... 59

*Harkness v. Sec'y of the Navy*,
  858 F.3d 437 (6th Cir. 2017) ........................................................ 40

*Hernandez v. Terrones*,
  397 F. App'x 954 (5th Cir. 2010) ............................................. 5, 62

*Hodges v. Callaway*,
  499 F.2d 417 (5th Cir. 1974) ....................................................... 35

*Holdiness v. Stroud*,
  808 F.2d 417 (5th Cir. 1987) ....................................................... 31

*Holt v. Hobbs*,
  574 U.S. 352, 361-62 (2015) ................................................ *passim*

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ....................................................... 66

*In re Monumental Life Ins. Co.*,
  365 F.3d 408 (5th Cir. 2004) ................................................. 70, 72

*In re Rogers*,
  513 F.3d 212 (5th Cir. 2008) ....................................................... 30

*Jackson Women's Health Org. v. Currier*,
  760 F.3d 448 (5th Cir. 2014) ....................................................... 59

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001) ....................................................... 68

*Lamie v. U.S. Tr.*,
  540 U.S. 526 (2004) ..................................................................... 30

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832, 836 (5th Cir. 2012) ......................................... 64, 71

*Maldonado v. Ochsner Clinic Found.*,
  493 F.3d 521 (5th Cir. 2007) ....................................................... 71

*McAllen Grace Brethren Church v. Salazar*,
  764 F.3d 465 (5th Cir. 2014) ....................................................... 46

*Meister v. Tex. Adjutant Gen.'s Dep't.*,
  233 F.3d 332 (5th Cir. 2000) ................................................. 31, 34

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ..................................................62
*Microsoft Corp. v. Baker*,
   137 S. Ct. 1702 (2017) ..........................................................62
*Mindes v. Seaman*,
   453 F.2d 197 (5th Cir. 1971) ........................................... *passim*
*Miss. Power & Light Co. v. United Gas Pipe Line*,
   760 F.2d 618 (5th Cir. 1985) .................................................45
*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) .................................................68
*NeSmith v. Fulton*,
   615 F.2d 196 (5th Cir. 1980) ................................................ 31
*Nken v. Holder*,
   556 U.S. 418 (2009) ......................................................58-59
*Opulent Life Church v. City of Holly Springs*,
   697 F.3d 279 (5th Cir. 2012) ....................................35, 38, 58
*Orloff v. Willoughby*,
   345 U.S. 83 (1953) .......................................................... 40
*Pashby v. Delia*,
   709 F.3d 307 (4th Cir. 2013) .............................. 6, 62, 64
*Payne v. Travenol Labs., Inc.*,
   673 F.2d 798 (5th Cir. 1982) .................................................62
*Penson v. Terminal Transp. Co., Inc.*,
   634 F.2d 989 (5th Cir. 1981) .................................................72
*Ramirez v. Collier*,
   142 S. Ct. 1264 (2022) ..................................................... 20
*Reaves v. Ainsworth*,
   219 U.S. 296 (1911) ........................................................ 40
*Rhodes v. United States*,
   574 F.2d 1179 (5th Cir. 1978) ...............................................35
*Rollins v. Home Depot USA*,
   8 F.4th 393 (5th Cir. 2021) .....................................59, 61, 73
*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   141 S. Ct. 63 (2020) ....................................................... 4, 52

*Sambrano v. United Airlines*,
19 F.4th 839 (5th Cir. 2021) (mem. op.) ........................................................38

*Sambrano v. United Airlines*,
No. 21-11159, (5th Cir. Aug. 18, 2022) ................................................... 37, 43

*Sambrano v. United Airlines*,
No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ................................38

*Sebra v. Neville*,
801 F.2d 1135 (9th Cir. 1986) ........................................................................ 40

*Singh v. Carter*,
168 F. Supp. 3d 216 (D.D.C. 2016) ................................................................ 31

*Tandon v. Newsom*,
141 S.Ct. 1294 (2021) .........................................................................50, 55, 57

*Tanzin v. Tanvir*,
141 S. Ct. 486 (2020) ..................................................................................... 60

*Tex. v. United States*,
809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015) ................................45

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
732 F.3d 535 (5th Cir. 2013) ..........................................................................59

*Thornton v. Gen. Motors Corp.*,
136 F.3d 450 (5th Cir. 1998) ..................................................................5, 61, 62

*U.S. Navy Seals 1-26 v. Biden*,
27 F.4th 336 (5th Cir. 2022) .................................................................. *passim*

*United States v. Sterling*,
75 M.J. 407 (C.A.A.F. 2016) ..........................................................................29

*United States v. Webster*,
65 M.J. 936 (Army Ct. Crim. App. 2008) ...................................................... 40

*Von Hoffburg v. Alexander*,
615 F.2d 633 (5th Cir. 1980) ..................................................................... 35, 38

*Vizena v. Union Pac. R.R.*,
360 F.3d 496 (5th Cir. 2004) (per curiam) ......................................................64

*Walch v. Adjutant Gen.'s Dep't of Tex.*,
533 F.3d 289 (5th Cir. 2008) .......................................................................... 31

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................... *passim*

*Yates v. Collier,*
    868 F.3d 354 (5th Cir. 2017) ...........................................................64

## Constitutional Provisions

U.S. Const. art. I § 8 ..................................................................... 60
U.S. Const. art. II .......................................................................... 60

## Statutes

10 U.S.C. § 774 ............................................................................. 41
28 U.S.C. § 1292 ....................................................................... 5, 61
28 U.S.C. § 1292(a)(1) ...................................................................5
28 U.S.C. § 1331 .............................................................................5
42 U.S.C. § 2000bb-1(a) ............................................................. 31
42 U.S.C. § 2000bb-1(c) ............................................................. 31
42 U.S.C. § 2000bb-2(1) ........................................................29, 60

## Rules

Fed. R. Civ. P. 23 .......................................................................... 61
Fed. R. Civ. P. 23(a) ............................................................. 7, 64, 65
Fed. R. Civ. P. 23(b)(2) ............................................. 7, 64, 65, 69, 71
Fed. R. Civ. P. 23(f) ................................................................. 5, 62
Fed. R. Civ. P. 65 .......................................................................... 45

## Other Authorities

Antony Sguazzin, *J&J Shot Loses Antibody Protection Against Omicron in
    Study*, Bloomberg Quint, (Dec. 14, 2021)
    https://www.bloombergquint.com/business/j-j-shot-shows-no-
    neutralization-against-omicron-in-lab-study .....................................56
CDC, *CDC Updates and Shortens Recommended Isolation and Quarantine
    Period for General Population*, (Dec. 27, 2021),
    https://www.cdc.gov/media/releases/2021/s1227-isolation-
    quarantine-guidance.html .............................................................. 2

Ctrs. for Disease Control & Prevention, *Johnson & Johnson's Janssen, How Well the Vaccine Works* (updated Oct. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html ...................................................................... 56

Diana Stancy Correll, *Omicron isn't significantly impacting Navy operations, admiral says*, Navy Times (Jan. 27, 2022), https://www.navytimes.com/news/your-navy/2022/01/27/omicron-isnt-significantly-impacting-navy-operations-admiral-says/ ........................... 13

Greta M. Massetti, et al., *Summary for Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems*, Morbidity and Mortality Weekly Report, CDC (Aug. 19, 2022), https://www.cdc.gov/ mmwr/volumes/71/wr/mm7133e1.htm ................................................. *passim*

H.R. Rep. No. 103-88 (1993) ................................................................. 30

HHS.gov, "COVID-19 Vaccines," https://www.hhs.gov/coronavirus/covid-19-vaccines/index.html ................... 7

Janet A. Aker, *COVID-19 Booster Effectiveness Remained High During Omicron Surge*,   Military Health System, (Apr. 18, 2022), https://health.mil/News/Articles/2022/04/18/COVID-19-Booster-Effectiveness-Remained-High-During-Omicron-Surge ....................................................................................................... 48

Navy COVID-19 Update, Jul. 27, 2022, https://www.navy.mil/us-navy-covid-19-updates/ (last accessed Aug. 22, 2022) ..................................... *passim*

S. Rep. No. 103-111 (1993) ..................................................................... 30

World Health Org., *Timeline: WHO's COVID-19 response*, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/interactive-timeline ................................................................................ 7

## Introduction

The Navy[1] is fighting to separate from service over 4,000 sailors, including 35 SEALs and Special Warfare operators, simply because those sailors will not compromise their sincere religious beliefs against the COVID-19 vaccination. In doing so, the Navy is fighting a war that the rest of the country knows no longer exists. The COVID-19 virus now is not the same as the virus that circulated in 2020, nor even the dominant strain circulating when Defendants belatedly mandated vaccination nearly a year after it became available. The Centers for Disease Control and Prevention (CDC) now recognizes that natural immunity from COVID-19 infection is just as effective at preventing disease as the vaccination mandated by the Department of Defense,[2] the natural evolution of the virus and the availability of both therapeutics

---

[1] Defendants-Appellants are referred to collectively as "the Navy." President Biden was dismissed from the case. ROA.22-10077.2399.

[2] Greta M. Massetti, et al., *Summary for Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems*, Morbidity and Mortality Weekly Report, CDC (Aug. 19, 2022), https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm ("As SARS-CoV-2, the virus that causes COVID-19, continues to circulate globally, high levels of vaccine- and infection-induced immunity and the availability of effective treatments and prevention tools have substantially reduced the risk for medically significant COVID-19 illness (severe acute illness and post-COVID-19 conditions) and associated hospitalization and death. . . .The risk for medically significant illness increases with age, disability status, and underlying medical conditions *but is considerably reduced by immunity derived from* vaccination, *previous infection*, or both." (emphasis added)); *id.* ("*Receipt of a primary series alone*, in the absence of being up to date with vaccination through receipt of all recommended booster doses, *provides minimal protection against infection and transmission*. . . . The rates of COVID-19-associated hospitalization and death are substantially higher among unvaccinated adults than among those who are up to

and preventive drugs have significantly lessened the probability for severe cases,[3] and CDC recommendations have been revised accordingly to treat vaccinated and unvaccinated individuals the same.[4] The Navy's government interest grows weaker by the day as new information becomes available, yet it continues to insist that it must force servicemembers with sincere religious beliefs against COVID-19 vaccination to choose "between their job(s) and their jab(s)," *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021), because it is too "risky" to deploy unvaccinated sailors. It clings to outdated science to justify its denial of sincere Religious Accommodation (RA) requests, which it continues to do across the board, even though over 99% of the Navy is already vaccinated.

The Navy knows it must examine the individual facts of each request for accommodation. And while its policies pay lip service to that requirement, the evidence shows that is not what the Navy is doing. As the Vice Chief of Naval Operations (VCNO) Admiral William Lescher recently testified, if those requests were really

---

date with recommended COVID-19 vaccination [primary series plus recommended boosters]." (emphasis added)).

[3] *Id.* ("Preexposure prophylaxis with Evusheld can help protect persons . . . for whom COVID-19 vaccination is not recommended because of their personal risk for severe adverse reactions. . . . Antiviral medications . . . and monoclonal antibodies . . . are available to treat COVID-19 in persons who are at increased risk for severe illness. . . . Antiviral agents reduce risk for hospitalization and death when administered soon after diagnosis.")

[4] *See* CDC, *CDC Updates and Shortens Recommended Isolation and Quarantine Period for General Population*, (Dec. 27, 2021), https://www.cdc.gov/media/releases/2021/s1227-isolation-quarantine-guidance.html (unvaccinated have same quarantine recommendations as vaccinated).

being examined on an individual basis, one would not expect the number of accommodations granted to be zero. Tr. 138:11-139:19.[5] Yet it is.[6] The picture that continues to emerge is that the Navy seeks to justify its denials of *every Navy servicemember's* RA request by formulaically reciting that "there is no less restrictive means" and that the vaccine mandate "serves the compelling interest of military readiness and health of the force." That boilerplate falls far short of what the Religious Freedom Restoration Act (RFRA) requires, and the evidence shows that Defendants do not consider individual circumstances. Defendants' "least restrictive means" analysis is the same for *every servicemember*. And Defendants' medical justification is based on health data that is outdated given more recent developments. While stemming the

---

[5] Citations in this brief to Admiral Lescher's deposition transcript ("Tr.") refer to the Appendix to the Motion to Supplement the Record filed on August 16, 2022 and granted on August 18, 2022. The district court had not made the supplemented record available yet at the time of filing, so Plaintiffs-Appellees will submit an updated brief replacing the citations with ROA citations to comply with the Court's directive.

[6] The Navy has only conditionally granted 13 religious exemptions to members of the Individual Ready Reserve, but they face no consequences for noncompliance with the mandate unless they return to active duty or reserve service. *See* ROA.399 ("all members of the Armed Forces under DoD authority on active duty or Ready Reserve"); ROA.415 (Navy vaccine mandate applies to "Active-duty service members and service members in the Selected Reserve only[,]" not Individual (inactive) Ready Reserve.) The Navy has granted zero religious exemptions to servicemembers subject to the mandate (out of 4,244 pending), but it granted 19 permanent medical exemptions and 189 temporary medical exemptions to active duty servicemembers, and 3 permanent medical exemptions and 65 temporary medical exemptions for Ready Reserve service members. *See* Navy COVID-19 Update, Jul. 27, 2022, https://www.navy.mil/us-navy-covid-19-updates/ (last accessed Aug. 22, 2022).

spread of COVID-19 may have been a compelling government interest at the height of the pandemic, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam), "this interest cannot qualify as such forever." *Does 1-3 v. Mills*, No. 21A90, 142 S. Ct. 17 (2021) (Gorsuch, J., dissenting).

Perhaps realizing this, the Navy argues that it is entitled to absolute deference and the Court should abstain from even considering this case. But accepting the Navy's argument would rewrite RFRA, which no court may do. The Navy has a critical job in protecting our Nation, and the judgments of military leaders should not be lightly disregarded by courts. But the Navy must comply with the Constitution and RFRA. Like prison officials, its judgments deserve no special deference when they are unsupported. Those supposed judgments are even less justified when they will result in our armed forces losing *thousands* of otherwise qualified, dedicated service-members they cannot afford to lose in the face of dismal recruiting numbers despite lowered standards, Tr. 194:13-21; 185:2-190:5, all to enforce a mandate for a vaccine we now know is ineffective at preventing disease.[7]

Plaintiffs are likely to succeed on the merits of both their RFRA and Free Exercise claims. The Navy's sham process for evaluating religious accommodation requests results in categorical denial, the mandate is not supported by a compelling interest, nor is it the least restrictive means available to accomplish the Navy's interest. Thus, the district court did not abuse its discretion in granting preliminary injunctions to the Individual Plaintiffs or to the Navy Class. And because the Class

_____

[7] Massetti, et al., *supra* n. 2.

suffers the same harm as the Named Plaintiffs by the Navy's categorically discriminatory treatment, class certification was proper. The Court should affirm both injunctions, and if it considers the Navy's arguments about class certification, it should affirm class certification as well.

## Jurisdictional Statement

The district court has jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction over Defendants' timely interlocutory appeals of the preliminary injunction and the classwide injunction under 28 U.S.C. § 1292(a)(1). This Court does not, however, have jurisdiction to consider the issue of class certification. Class-certification orders are interlocutory orders not immediately appealable under the collateral order doctrine, *see Coopers & Lybrand v. Livesay,* 437 U.S. 463, 477 (1978), nor explicitly under 28 U.S.C. § 1292 like preliminary injunctions. Defendants-Appellants did not petition for permission to appeal the certification of the class on an interlocutory basis. Fed. R. Civ. P. 23(f).

Without permission to appeal, the only possibility for jurisdiction is pendent appellate jurisdiction, which "is only proper in . . . rare and unique circumstances where a final appealable order is 'inextricably intertwined' with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order." *Hernandez v. Terrones*, 397 F. App'x 954, 963 (5th Cir. 2010) (quoting *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998)). Here, the class-certification issue is not "inextricably intertwined" with the classwide preliminary injunction analysis because the district court granted a classwide preliminary injunction for the same reasons it granted a preliminary injunction to the

individual plaintiffs. *See* Part III.A *infra*. Thus, "because the class certification question is distinct from the preliminary injunction, the issue is not properly before [the Court]." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).

## Statement of Issues

The district court granted a preliminary injunction prohibiting enforcement of the Navy's COVID-19 vaccine mandate against the 35 Individual Plaintiffs, determining that they are likely to succeed on their claims that a policy or practice of across-the-board denial of religious exemption requests and a lack of individualized consideration of those requests violates RFRA, and that the Navy lacks a compelling interest in enforcing the mandate against the Individual Plaintiffs. The district court subsequently certified a class of all Navy servicemembers who requested a religious exemption from the mandate ("Navy Class") and granted classwide preliminary injunctive relief based on its previous finding of a pattern or practice of religious discrimination, finding that the Navy Class is likely to succeed on its RFRA and First Amendment claims.

The issues presented are:

1.    Does *Mindes v. Seaman* have continued vitality in the RFRA context, and if so, does it (a) preclude justiciability where Plaintiffs have alleged the violation of a constitutional right and exhaustion of administrative remedies is either futile or has occurred for some class members, and (b) is abstention proper here given that the legal issues in the case are proper for judicial resolution?

2.    Did the district court abuse its discretion in issuing a preliminary injunction protecting the Individual Plaintiffs from enforcement of the mandate?

3.    Did the district court abuse its discretion in issuing a preliminary injunction protecting the Navy Class from enforcement of the mandate?

4.    Does the Court have jurisdiction to consider the issue of class certification on interlocutory appeal, and if so, was it an abuse of discretion for the district court to certify the Navy Class and Subclasses under Federal Rule of Civil Procedure 23(a) and 23(b)(2)?

## Statement of the Case

### I.    Factual background

#### a. Defendants' vaccination mandate

The World Health Organization declared the COVID-19 outbreak a public health emergency on January 30, 2020.[8] Vaccines first became available in December 2020.[9] On July 29, 2021, in addition to announcing vaccination mandates for federal employees and contractors, the President announced that he directed the Department of Defense (DoD) to require military servicemembers to receive a COVID-19 vaccination. ROA.22-10077.523-35. About a month later, Secretary of Defense Lloyd Austin directed DoD to vaccinate all active-duty and reserve servicemembers. ROA.22-10077.399-400. Six days later, Secretary of the Navy Carlos Del Toro directed Navy active-duty and reserves personnel to become vaccinated within 90 and

---

[8]    World Health Org., *Timeline: WHO's COVID-19 response*, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/interactive-timeline.

[9] HHS.gov, "COVID-19 Vaccines," https://www.hhs.gov/coronavirus/covid-19-vaccines/index.html.

120 days, respectively. ROA.22-10077.402-03. Secretary Del Toro's order "exempted from mandatory vaccination" service members "actively participating in COVID-19 clinical trials[,]" even those receiving a placebo. ROA.22-10077.403. His order warned that "failure to comply is punishable as a violation of a lawful order" and "may result in punitive or adverse administrative action or both." *Id.* It also authorized the CNO and Commandant of the Marine Corps "to exercise the full range of administrative and disciplinary actions to hold non-exempt Service Members appropriately accountable." *Id.* Such actions "include, but [are] not limited to, removal of qualification for advancement, promotions, reenlistment, or continuation, consistent with existing regulations, or otherwise considering vaccination status in personnel actions as appropriate." *Id.*

In October 2021, the CNO issued Navy Administrative Message (NAVADMIN) 225/21, which threatens religious objectors not only with the loss of their careers, but also with potentially crippling debt. ROA.22-10077.414-18. NAVADMIN 225/21 states that "Navy service members refusing the COVID-19 vaccination, absent a pending or approved exemption, shall be processed for administrative separation." ROA.22-10077.414; *see also* ROA.22-10077.417-18. It also provides that the Navy "may seek recoupment of applicable bonuses, special and incentive pays, and the cost of training and education for service members refusing the vaccine." ROA.22-10077.415. For the SEALs, this means that the Navy is threatening to force each of them to pay back over $1 million. ROA.22-10077.39. NAVADMIN 225/21 also authorizes temporary reassignment of "Navy service members who refuse the COVID-19 vaccine, regardless of exemption status, based on operational readiness

or mission requirements." ROA.22-10077.416. It also mandates that "[c]ommands shall not allow those refusing the vaccine to promote/advance, reenlist, or execute orders, with the exception of separation orders, until the CCDA has completed disposition of their case." ROA.22-10077.417.

In November 2021, the Navy issued NAVADMIN 256/21, ROA.22-10077.1676-83, which states that "Navy service members whose COVID-19 vaccination exemption request is denied are required to receive the COVID-19 vaccine … within 5 days of being notified of the denial." ROA.22-10077.1677. It also authorizes adverse performance evaluations, denial of promotion or advancement, loss and required repayment of Navy-funded education, and possible loss of eligibility for some VA benefits such as the GI Bill, including the transfer of GI Bill benefits to dependents. ROA.22-10077.1676-83.

### b. Plaintiffs

The original Individual Plaintiffs are U.S. Navy SEALs, Navy Special Warfare Combatant Craft Crewmen (SWCCs), a Navy Explosive Ordnance Disposal Technician (EOD), and Navy Divers who object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs. ROA.22-10077.32-33. The Navy assigned Plaintiffs to Naval Special Warfare (NSW) Command units. ROA.22-10077.34. The Navy assigned many Plaintiffs to training commands; others are assigned to active SEAL Teams. *See* ROA.22-10077.2740, 2993. Except for a few SEALs in a certain group (which no Plaintiff is in), SEALs are not deployed with short notice. ROA.22-10077.2740-42, 2994. Their commands operate on a predict-

able, cyclical basis. ROA.22-10077.2741, 2994. That allows each SEAL Team to obtain training and qualifications required for specific missions, which the training commands facilitate. *Id.* Many Plaintiffs hold highly specialized qualifications that enable them to perform their special operations missions and train other SEALs. ROA.22-10077.39. Plaintiffs' sincerely held religious beliefs forbid them from receiving the COVID-19 vaccine for various reasons rooted in their Christian faith. ROA.22-10077.40-44, 1124-1275, 2396-97. Plaintiffs each requested accommodation of their religious beliefs against COVID-19 vaccination from the Navy. ROA.22-10077.47.

### c. Class Plaintiffs

Four Plaintiffs—SEAL 1, SEAL 2, SEAL 3, and EOD 1—are the Named Plaintiffs and representatives of the certified class as specified in the First Amended Complaint. ROA.22-10077.2516-17. SEAL 1 has served as a Navy SEAL since 2011. ROA.22-10077.1124. He is currently a reservist and his duty station is in Fort Worth, Texas. ROA.22-10077.1124, Dkt. 174 at 9. His parent command is SEAL Team 17, which is based in Southern California. ROA.22-10077.2146; Dkt. 174 at 6. SEAL 1 is Catholic and has a sincere religious objection to COVID-19 vaccination. ROA.22-10077.1125-26. He submitted a Religious Accommodation (RA) request in September 2021. ROA.22-10077.2146. The Navy denied his initial request on December 16, 2021. ROA.22-10077.2146. He submitted his appeal to the Chief of Naval Operations (CNO) on January 9, 2022 but it is still pending.

SEAL 2 is an E7 Chief and has been a Navy SEAL since 2006, having served in the Navy since graduating from high school in 2004. ROA.22-10077.3101. He has

served several combat deployments and spent most of his career on West Coast SEAL Teams. ROA.22-10077.3101-02. He is currently stationed in Mississippi and is assigned to the NSW Advanced Training Command. ROA.22-10077.3102. He works as an instructor for a special operations tactical medical program. ROA.22-10077.3102. SEAL 2 is Catholic and has a sincere religious objection to COVID-19 vaccination. ROA.22-10077.3103. SEAL 2 submitted an RA request in October 2021. ROA.22-10077.1131. The commanding officer of NSW Advanced Training Command—the individual in charge of all SEAL training—recommended approval of SEAL 2's RA request. ROA.22-10077.3106, ROA.22-10077.3323-24 (sealed); *see also* ROA.22-10077.3079. Still, the Chief of Naval Personnel denied SEAL 2's RA request in a form letter. ROA.22-10077.3107; ROA.22-10077.3329-30 (sealed). SEAL 2 submitted an appeal on December 10, 2021 but his appeal is still pending.

SEAL 3 is an E6 Petty Officer and has been a Navy SEAL since 2012, achieving a childhood dream. ROA.22-10077.3060. He joined the Navy "to support and defend the Constitution of the United States." ROA.22-10077.3060. He has served several combat deployments. ROA.22-10077.3062-63. He is currently stationed in Mississippi like SEAL 2. ROA.22-10077.3063. He also serves as an instructor for a medical course. ROA.22-10077.3063. SEAL 3 is also Catholic and has a sincere religious objection to COVID-19 vaccination. ROA.22-10077.3064-65. He submitted a RA request in October 2021. ROA.22-10077.1136, 3065, 3072. The commanding officer of NSW Advanced Training Command—the individual in charge of all SEAL training—recommended approval of SEAL 3's RA request. ROA.22-10077.3106;

ROA.22-10077.3285-86 (sealed); *see also* ROA.22-10077.3079. But the Chief of Naval Personnel also denied SEAL 3's request in a letter identical to SEAL 2's. ROA.22-10077.3086; ROA.22-10077.3302-03 (sealed). He submitted an appeal on December 27, 2021 but it is still pending.

EOD 1 is an E8 Senior Chief Petty Officer. ROA.22-10077.3131. EODs are trained to dispose of ordnance items, IEDs, and bombs in every environment in support of special operations missions. ROA.22-10077.3131. EOD 1 is currently stationed in Florida as an EOD instructor and division head. ROA.22-10077.3131. He has served multiple deployments, including in combat zones. ROA.22-10077.3131. The Navy deployed EOD 1 to South Korea during the early part of the COVID-19 pandemic. ROA.22-10077.3131-32, 3138-39, 3141. EOD 1 was the leading chief petty officer for EOD during his deployment in South Korea and received a Joint Service Commendation Medal for the excellence and success of his work during that deployment despite COVID-19. ROA.22-10077.3138, 3140-41, 3150. EOD 1 is a Christian and has a sincere religious objection to COVID-19 vaccination. ROA.22-10077.3132-33. He submitted a RA request in August 2021. ROA.22-10077.3134-35. His commanding officer, executive officer, and command master chief met with him after he submitted his RA request to discuss it. ROA.22-10077.3135. He felt he was being coerced to take the vaccine, and at one point they asked him if, "with [his] religious beliefs, if he thought that martyrs would be remembered." ROA.22-10077.3136. EOD 1 submitted his appeal in October 2021 but it is still pending.

### d. Defendants' current vaccination policies

In recent months, the Navy relaxed COVID-related requirements but continues to enforce its vaccine mandate. In December 2021, the Department of Defense issued new guidance permitting DoD contractors to show a negative COVID test for access to DoD facilities instead of vaccination, and not requiring vaccination for members of the public accessing DoD facilities.[10] Many Plaintiffs work regularly with contractors. In January 2022, the Navy issued NAVADMIN 07/22, which recognizes that COVID-19 will still be an issue despite nearly universal vaccination. ROA.22-10077.2733-38. It explicitly permits individuals at high risk for COVID-19 complications to be deployed. ROA.22-10077.2736. Over 25% of the Navy is at recognized high risk for severe cases of COVID-19 because of obesity. Tr. 165:19-167:7. Navy policy also instructs against retesting servicemembers on a ship after quarantine for COVID because they will likely still test positive, accepting that COVID-positive individuals will mingle with others. ROA.22-10077.2735. Also in January 2022, the Navy admitted that over 99% of servicemembers are vaccinated, and that the Omicron variant has had "really no operational impact."[11] In March 2022, DoD

---

[10] https://media.defense.gov/2021/Dec/20/2002912718/-1/-1/0/FHP-GUID-ANCE-SUPPLEMENT-23-REV-3-DOD-GUIDANCE-FOR-COVID-19-VAC-CINATION-ATTESTATION-SCREENING-TESTING-AND-VACCINA-TION-VERIFICATION.PDF

[11] ROA.2396, 2729; Diana Stancy Correll, "Omicron isn't significantly impacting Navy operations, admiral says," *Navy Times* (Jan. 27, 2022), https://www.na-vytimes.com/news/your-navy/2022/01/27/omicron-isnt-significantly-impacting-navy-operations-admiral-says/ [https://perma.cc/77R3-WEUC].

removed masking requirements for all DoD personnel and visitors in counties with medium or low COVID-19 community levels.[12] In April 2022, the Navy issued NAVADMIN 093/22, which now prohibits unvaccinated personnel from executing orders to operational units or embarking underway Navy vessels or aircraft.[13] "Exceptions, if any" will be managed by the Navy Component Commander (the commanding officer of one of the nine component commands of the Navy) and reported to the Office of the CNO.[14] In contrast, the same NAVADMIN still allows for individuals at recognized high risk for severe illness from COVID-19 to deploy at commander discretion.[15]

### e. Defendants' discriminatory actions

On their face, the Navy's policies feign compliance with RFRA, as they require individualized assessment of religious-accommodation requests and place the burden on the military to show a compelling justification for denials. *See* ROA.22-10077.420-38, 440-48, 450-66, 468-71. But as to the vaccine mandate, the individualized assessments and compelling demonstration the policies require are a farce. The Navy uses a six-phase, fifty-step process in adjudicating RA requests. ROA.22-

---

[12] https://media.defense.gov/2022/Mar/02/2002947853/-1/-1/0/UPDATED -GUIDANCE-FOR-MASK-AND-SCREENING-TESTING-FOR-ALL-DE-PARTMENT-OF-DEFENSE-INSTALLATIONS-AND-OTHER-FACILI-TIES.PDF.

[13] https://www.mynavyhr.navy.mil/Portals/55/Messages/NAVADMIN/NAV 2022/NAV22093.txt?ver=ruF6V-tpipc3-hA0KIHZ6g%3d%3d.

[14] *Id.* at 6.b.1.

[15] *Id.* at 8.d.

10077.3893-3926. The process begins, however, by instructing an administrator to use a prepared disapproval template containing the same rationale, despite the differing circumstances of each servicemember submitting a request. *See* ROA.22-10077.3920-21. Plaintiffs have received nearly identical denials. *See, e.g.*, ROA.22-10077.3302-03, 3349-50, 3359-60 (sealed); ROA.22-10077.3920-21, 4035-36. This is despite SEAL 2 and SEAL 3's commanding officer, who oversees all SEAL training on the East and West coasts, recommending approval. ROA.22-10077.3285-86, 3346-47 (sealed). As that officer stated:

> [T]he training environment [of the command] often requires close quarters contact for prolonged periods of time, however, successful mitigation measures have been implemented since the onset of COVID-19 to ensure the safety of the staff and students . . . The cumulative impact of repeated accommodations of religious practices of a similar nature would mean my command *is still able* to safely accomplish its mission and protect the health and safety of its members.

*U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 343 (5th Cir. 2022). The Navy applies the same purported "least restrictive means" analysis to each accommodation request, ROA.22-10077.3934-47, and it relies on outdated COVID-19 data from nearly a year ago, ROA.22-10077.3949-88, despite the dramatic changes in the virus. The Navy refuses to reconsider requests for accommodation based on changed circumstances, including relevant changes to the requestor's job and widely accepted data about the effectiveness of natural immunity and the severity and transmissibility of the virus itself. ROA.22-10077.3995-4041.

The Navy has also displayed "outright hostil[ity]" to Plaintiffs' beliefs. *U.S. Navy Seals 1-26*, 27 F.4th at 352 n.22, 342-44. To date, the Navy *still* has not granted

a single exemption to an active-duty or active reserve servicemember for the COVID-19 vaccination, or at all in the last seven years.[16] By contrast, the Navy has granted exemptions to COVID-19 vaccination for secular reasons: twenty-three permanent medical exemptions and hundreds of temporary medical exemptions.[17]

Even if it were possible for Plaintiffs to receive a religious exemption, Article 15-105(4)(n)(9) of the Manual of the Navy Medical Department (MANMED) states that special operations personnel, which includes Plaintiffs, "refusing to receive recommended vaccines . . . based solely on personal or religious beliefs are disqualified. This provision does not pertain to medical contraindications or allergies to vaccine administration." ROA.22-10077.1091. Trident Order #12 was issued in September 2021 and repeats the MANMED automatic disqualification for personal or religious objections. ROA.22-10077.411-12. This means that even if a SEAL or other special warfare operator receives a religious exemption to a vaccine requirement, the Navy automatically disqualifies that servicemember from special operations duty (*i.e.,* made non-deployable), which means the loss of special duty pays and the potential loss of the member's special warfare device pin. (SEALs wear the famous "Trident.")[18]

---

[16] *See* U.S. Navy COVID-19 Update, *supra* n.6.

[17] U.S. Navy COVID-19 Update, *supra* n.6.

[18] In the order denying a stay pending appeal, the district court reserved judgment on whether these policies are neutral between religious and secular exemptions until the merits stage. ROA.2970.

### f. Harm to Plaintiffs

Even if the Navy's promised religious-accommodation process were not a farce with a predetermined outcome, it has provided Plaintiffs no relief. Each Plaintiff submitted an RA request, some as early as August 2021, but a year later, the Navy has approved none. ROA.22-10077.2397, 2856. Even submission of an RA request resulted in coercive and punitive action against class members. *See* ROA.22-10077.1131-32, 1136, 1144-45, 1158-59, 1173, 1176, 1181, 1185, 1189-90, 1199, 1202-04, 1208, 1215-16, 1224-25, 1232, 1237, 1242, 1255, 1260, 1263, 2146, 2175, 2181, 2184, 2190, 2193, 2196, 2199, 2205-06, 2209, 2217-18, 2221, 2224, 2228, 2239, 2242, 2247-48, 2254-55, 2674-75, 2678-80, 2685-87, 2694-95, 2697-98, 2700-01, 3005-07, 3009-10, 3012-14, 3037-38, 3040-42, 3044-45, 3048-50, 3895-96, 3899-3902, 4023; Dkt. 174, 178 at 14-120; *U.S. Navy Seals 1-26*, 27 F.4th at 343-44, 353; *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1303-04 (2022) (Alito, J., dissenting).

## II. Procedural history

A. Plaintiffs sued on November 9, 2021, asserting claims under the Free Exercise Clause, RFRA, and other provisions of federal law. ROA.22-10077.32-80. Plaintiffs moved for a preliminary injunction based on their religious liberty claims on November 24. ROA.22-10077.201-46. The district court held a preliminary injunction hearing on December 20, ROA.22-10077.25, and three plaintiffs testified. ROA.22-10077.3059-3151; *U.S. Navy Seals 1-26*, 27 F.4th at 343-44 (summarizing testimony). The Navy offered no witnesses. ROA.22-10077.3151. The district court granted the preliminary injunction on January 3, 2022. ROA.22-10077.2419. The order enjoined the Navy "from applying MANMED § 15-105([4])(n)(9); NAVADMIN 225/21;

Trident Order #12; and NAVADMIN 256/21 to plaintiffs. ROA.22-10077.2419. The order also enjoined Defendants from taking any "adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation." ROA.22-10077.2419.

The Navy filed a notice of interlocutory appeal on January 21 and filed a motion for partial stay of the injunction pending appeal in the district court on January 24. ROA.22-10077.2508-09, 2545-47.[19] The district court denied the Navy's motion for partial stay on February 13. ROA.22-10077.2964-73. The Navy filed a motion for partial stay pending appeal in this Court on February 16, and this Court denied the motion on February 28. *U.S. Navy Seals 1-26*, 27 F.4th 336. The stay panel rejected the Navy's argument that the preliminary injunction interfered with their "deployment, assignment, and other operational decisions." *Id.* at 352. It noted that "the district court clarified that the preliminary injunction 'simply prohibits adverse action against Plaintiffs based on their requests for religious accommodation.' Defendants therefore remain able to make decisions based on other neutral factors." *Id.* at 352-53.

B.   The Navy then requested a partial stay from the Supreme Court on March 7, 2022. Docket, *Austin v. U.S. Navy Seals 1*-26, No. 21A477 (U.S., Mar. 7, 2022). After briefing, the Supreme Court granted the partial stay on March 25, 2022:

> The district court's January 3, 2022 order, insofar as it precludes the Navy from considering respondents' vaccination status in making deployment,

---

[19] The Navy requested only a "partial stay" because it conceded that it would not court martial or separate plaintiffs pending the litigation.

assignment, and other operational decisions, is stayed pending disposition of the appeal in the United States Court of Appeals for the Fifth Circuit and disposition of the petition for a writ of certiorari, if such writ is timely sought. Should the petition for a writ of certiorari be denied, this order shall terminate automatically.

*Austin*, 142 S. Ct. 1301.

Justice Thomas noted that he would deny the application. *Id.* Justice Kavanaugh wrote a solo concurring opinion, noting that his agreement with the Court's order was based on a "simple overarching reason: Under Article II of the Constitution, the President of the United States, not any federal judge, is the Commander in Chief of the Armed Forces." *Id.* at 1302 (Kavanaugh, J., concurring). Responding to plaintiffs' arguments about RFRA, Justice Kavanaugh noted that "even accepting that RFRA applies in this particular military context, RFRA does not justify judicial intrusion into military affairs in this case." *Id.* He relied on the declaration submitted in support of the Navy's stay motion by Admiral Lescher, the VCNO, in concluding that there is "no basis in this case for employing the judicial power in a manner that military commanders believe would impair the military of the United States as it defends the American people." *Id.*

Justice Alito (joined by Justice Gorsuch) dissented, disagreeing sharply with the idea that RFRA would not apply and pointing out that the Navy concedes that it does: "the Government does not claim that Article II imperatives absolve the Navy's chain of command from complying with RFRA." *Id.* at 1304 (Alito, J., dissenting). Justice Alito asserted that Plaintiffs had shown a likelihood of success on both their RFRA and Free Exercise claims because the summary rejection of RA requests does

not comply with RFRA, *id.* at 1305, and because the Navy treats accommodations for religious reasons less favorably than secular accommodations, *id.* at 1307. Justice Alito also pointed out the inconsistency with the Court's decision to grant the partial stay with the Court's decision the day before in *Ramirez v. Collier*, 142 S. Ct. 1264 (2022), where the Court did not defer to prison officials' judgment that permitting religious touch in the execution chamber would be a security risk. *Austin*, 142 S. Ct. at 1307.

C.  On March 28, 2022, the district court issued an order certifying a Navy Class under Federal Rule of Civil Procedure 23(b)(2), which includes "all Navy servicemembers subject to the vaccine mandate who have submitted religious accommodation requests," ROA.22-10534.3584. The court also certified two subclasses: a Navy Special Warfare/Special Operations (NSW/SO) subclass, which includes "all members of the Navy Class who (1) are assigned to NSW/SO, and (2) have submitted a religious accommodation request concerning the vaccine mandate," and a Navy SEALs Subclass, which "includes all members of the Navy Class who (1) are SEALs, and (2) have submitted a religious accommodation request concerning the vaccine mandate." ROA.22-10534.3586. Relying largely on its reasoning in granting the first injunction, the district court also entered a classwide preliminary injunction

> enjoining Defendants, their agents, servants, employees, attorneys, and all persons and entities in active concert or participation with them, directly or indirectly, from applying any policies, guidance, or memoranda implementing the DoD COVID-19 Vaccine Mandate or the Navy COVID-19 Vaccine Mandate, to any member of the Navy Class and/or Subclasses. . . . from applying MANMED § 15-105(4)(n)(9), Trident Order #12, or any other

> policies, guidance, or memoranda implementing the DoD COVID-19 Vac-
> cine Mandate or the Navy COVID-19 Vaccine Mandate, to any member of
> the Naval Special Warfare/Operations Subclass and/or the Navy SEALs
> Subclass. . . . and from taking any adverse action against any member of the
> Navy Class, the Naval Special Warfare/Operations Subclass, and/or the
> Navy SEALs Subclass because of their requests for religious accommoda-
> tion.

ROA.22-10534.2809-10, 3580. In view of the Supreme Court's order, the district
court immediately partially stayed the injunction "'insofar as it precludes the Navy
from considering respondents' vaccination status in making deployment, assign-
ment, and other operational decisions.'" ROA.22-10534.3580 (quoting *Austin*, 142
S. Ct. at 1301).

D.   The Navy did not petition for permission to appeal the certification of the
class on an interlocutory basis. Fed. R. Civ. P. 23(f). Instead, it filed a notice of appeal
on May 27, 2022. ROA.22-10534.3770. This Court granted the Plaintiffs-Appellees'
motion to consolidate the appeals on June 7, 2022, permitting Defendants to file sup-
plemental briefing relevant to the second appeal and permitting Plaintiffs to file a
consolidated response brief.

## III.    Admiral Lescher's deposition testimony

In the meantime, the parties proceeded to discovery. Class counsel deposed Ad-
miral Lescher on June 30, 2022. The transcript and exhibits from his deposition were
added to the record on appeal by order of this Court on August 18, 2022. In support
of the Navy's motion for stay pending appeal, Admiral Lescher submitted a long
declaration attesting to facts supporting the Navy's contentions that it has a compel-
ling interest in mandatory COVID-19 vaccination for religious objectors, and that

without it, the Navy would be subject to unacceptable risk because of the presence of unvaccinated sailors. ROA.22-10534.2578-96. The Navy relied heavily on Admiral Lescher's declaration during the stay proceedings and relies on it in both briefs in this appeal. *See* Opening Br. 35-38; Supp. Br. 16.

Admiral Lescher's deposition testimony clarified the reliability of the assertions made in his declaration, and provided further information on issues like whether the Navy's religious exemption review process satisfies RFRA, whether the Navy has a compelling interest in continuing to require the COVID-19 vaccination, and whether it is the least restrictive means available at this time to protecting the force from COVID-19. For instance:

- When asked to provide information Admiral Lescher relied on in drafting his declaration, the Navy produced a number of documents. Tr. 80:3-81:10, 82:16-20. But Admiral Lescher testified that he did not review any documents before he signed his declaration. Tr. at 81:19-82:1.

- When asked to provide details or more information about assertions of risk to missions and the effect of COVID-19 on the force, Admiral Lescher did not have those details and stated they would not be within the purview of the VCNO. *See, e.g.*, Tr. at 22:11-22:20, 23:4-23:6, 23:16-24:1 (stating details about the effect COVID-19 had on naval ships was "not generally" within his purview and that he did not speak to individuals with such knowledge before drafting his declaration); Tr. at 33:18-34:8 (stating he was unaware of any combat operations negatively impacted by COVID-19); Tr. at 50:15-51:16 (stating he was unaware of specific examples of

COVID-19 making a medical evacuation harder, was contracted through a rebreathing device, or was contracted on a submarine). He identified individuals who might have those details but testified that he did not meet with them before signing his declaration. Tr. at 73:16-73:20 (stating he had had no discussions with individuals with relevant knowledge about missions impacted by COVID-19 before signing his declaration). The few details he managed to provide were given to him shortly before the deposition. Tr. at 72:13-73:20.

- Admiral Lescher repeatedly asserted that religious accommodation requests should be reviewed in great detail on a case-by-case basis and consider the details of the requestor's position, consultation with medical experts, and the requestor's commander's recommendation. Tr. 17:11-18:5; 34:20-35:2; 61:11-63:1; 65:14-66:10; 69:2-8; 69:9-70:9; 77:22-78:4; 138:11-139:19; 173:4-14; 218:1-11. The commander's recommendation in particular should carry weight because that person knows the situation on the ground and is assessing the risk in that context. Tr. 34:20-35:2; 69:9-70:9; 71:3-72:5. When asked whether he would expect that zero requests would be granted if requests were handled in such a manner, he testified, "No." Tr. 138:11-139:19.

- Admiral Lescher asserted that vaccination prevented severe cases of COVID-19 in support of the Navy's claim to a compelling interest in requiring 100% vaccination. Tr. 99:5-14. But he admitted that Navy policy permitted the deployment of vaccinated sailors at recognized high risk for

severe cases of COVID-19 because of other health conditions recognized by the CDC. Tr. 165:7-18. As he admitted, one of those conditions is obesity, and he also admitted that 25% of the Navy is obese. Tr. 165:19-167:7. Thus, Navy policy accepts the risk of severe cases in one-quarter of the entire Navy yet requires vaccination for the 0.6% of servicemembers with a religious objection to vaccination because of the purported increased risk of severe cases. Tr. 165:7-167:7.

- Admiral Lescher also admitted that Navy policy permits HIV positive individuals to deploy at commander discretion, and states that HIV status may not be the sole basis for deployment decisions, despite the risks to others on the deployment. Tr. 173:15-184:18.

- Admiral Lescher also admitted that COVID-19 outbreaks on ships continue despite 100% vaccinated crews, and that when unvaccinated sailors remained on ships, at least one outbreak occurred only in vaccinated sailors. Tr. 103:8-16; 112:19-115:8.

- Admiral Lescher admitted that the Navy is currently 7,000 billets short, and a recent NAVADMIN admitted that the Navy was lowering its standards because of recruitment and retention issues, and the "uncertainty" of losing sailors due to the COVID-19 vaccine mandate (though it was later revised to exclude that language). Tr. 194:13-21; 185:2-190:5.

# Summary of the Argument

I.    Attempting to dodge any accountability for their unconstitutional mandate, the Navy insists that this case is not justiciable and that the Court should abstain from deciding it, relying on *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), a 50-year-old case that has never been applied in the RFRA context. But RFRA is a super statute that overrides even other federal law, so it would be illogical for it to take a backseat to a judge-made abstention doctrine, especially where Congress enacted it specifically to provide legal accountability for violating religious liberty rights. *See* Part I.A and I.B.1 *infra*.

Even if *Mindes* still applies, its requirements are satisfied. *See* Parts I.B and I.C *infra*. The case is justiciable because Plaintiffs alleged deprivation of a constitutional right and some class members (and Individual Plaintiffs) exhausted available intraservice corrective measures because the Chief of Naval Operations denied their appeals of their RA requests. *See* Part I.B.2 *infra*. To be sure, many are still pending over a year later, despite the Navy's argument that the presence of unvaccinated sailors in its force is an existential threat. But this Court recognizes an exception to *Mindes*'s exhaustion requirement where exhaustion would be futile, as it is here. The Navy has denied every single RA request for active servicemembers it has processed so far, and its standard operating procedure is to deny every single one. There is no need to make the Plaintiffs wait indefinitely and suffer irreparable harm while the Navy takes its time issuing its form denials.

The four *Mindes* factors also support judicial review. *See* Part I.C. *infra*. Plaintiffs' claims are of a type favorable to judicial review, are strong on the merits, and

Plaintiffs are suffering irreparable harm. Judicial resolution of Plaintiffs' claims will not improperly interfere with core military functions because compliance with RFRA and the First Amendment is required, even of the military, and RFRA does not insulate the Navy's conduct in that area from judicial review. And the Class's vaccination status has demonstrably *not* interfered with the performance of military functions, as the Navy operated successfully during the pandemic, even before the vaccine was mandated or available. The Navy may exercise its judgment in ways that do not unlawfully discriminate against the Class because of their religious beliefs. Nor does deciding this case require specialized military judgment. It takes judicial, not military, judgment to recognize that the Navy's cursory assessment and across-the-board denial of RA requests does not comport with the law. The Navy's arguments for total deference to their decisions, even in the face of widely known facts showing those decisions to be unjustified, are unsupported by law.

II.    Neither injunction was an abuse of discretion because Plaintiffs are likely to succeed on the merits of their claims. *See* Part II.A-C *infra.* The Navy's farcical process for reviewing and denying *all* RA requests does not comply with RFRA. It does not consider individual circumstances, it relies on outdated medical information, it applies the same least restrictive means analysis to every single person, and it categorically denies every request, even though the Navy grants exemptions for secular reasons. Categorical denial of exceptions without individual assessment, even where the Government insists it has a very compelling reason, conflicts with Supreme Court precedent. *See* Part II.A *infra.* The Navy's assertion of a compelling interest

rests on unsupported conjecture, as the facts show that operations continued successfully before the mandate, and the Navy admitted that the Omicron variant has had little operational impact. *See* Part II.B *infra*. Given that the vaccine administered a year ago to comply with the mandate is likely ineffective now, the Navy has no basis to continue to insist on vaccination of religious objectors, who make up only 0.6% of the entire Navy.

The mandate is also underinclusive, which shows that it is not the least restrictive means for achieving the Navy's interest in protecting its forces against illness. *See* Part II.C *infra*. The Navy granted twenty-three medical exemptions, yet those individuals present the same risk as class members who are unvaccinated for religious reasons. It also exempted servicemembers participating in vaccine trials with placebos from compliance. Confronted with the reality that the mandated vaccines no longer effectively prevent illness, the Navy insists vaccination is still justified because it reduces severe cases of COVID-19. But the Navy also allows vaccinated sailors who are at recognized high risk for severe cases to deploy, even though Admiral Lescher admits that individuals with just one high-risk factor make up at least 25% of the force.

Plaintiffs are also likely to succeed on their First Amendment claims. *See* Part II.D *infra*. The mandate is not neutral because the Navy treats those who are unvaccinated for nonreligious reasons more favorably than those who have a religious objection, so strict scrutiny applies. And for the same reasons as under the RFRA claims, the Navy fails to satisfy that exacting standard. Plaintiffs also meet the other

requirements for injunctive relief, and the preliminary injunctions are proper relief under RFRA. *See* Parts II.E, F *infra*.

III.  There is no jurisdiction over the class-certification issue, nor did the Navy make an adequate effort to show that pendent jurisdiction is appropriate. *See* Part III.A *infra*. But even if the Court considers this issue on interlocutory appeal, the district court did not abuse its discretion in certifying a class because the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(2) are satisfied. *See* Part III.B *infra*. The Navy challenges only the elements of commonality and typicality under Rule 23(a), but the district court correctly concluded that the categorical denial of all RA requests and their cursory consideration—a pattern of discriminatory behavior—is a common injury among all class members, such that the determination of the legality of that practice will resolve an issue central to the validity of each one of the class members' claims in one stroke. *See* Part III.B.1 *infra*. The claims of the Named Plaintiffs are also typical of the class because the claims arise from the same course of conduct and share the same legal theory, so any minor factual differences are irrelevant. *See* Part III.B.2 *infra*. And the class meets the requirements of Rule 23(b)(2) because the Navy's discriminatory conduct applies generally to the class, so final injunctive relief or declaratory relief is appropriate respecting the class as a whole. The Navy's new arguments about opt-out are forfeited because they were not raised below but are wrong in any event. *See* Part III.B.3 *infra*.

## Argument

### I. Plaintiffs' Claims Are Justiciable and the Court Has No Basis to Abstain from Deciding This Case.

The Navy continues to argue that Plaintiffs' claims are not justiciable, relying on *Mindes*, 453 F.2d at 201-02. But *Mindes* has no continued applicability in RFRA cases. Even if it did, however, this case easily satisfies the *Mindes* test for justiciability, as the stay panel already determined.

### A. Plaintiffs' claims are justiciable under RFRA.

"Congress enacted RFRA in 1993 in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014). On its face, it applies to every "branch, department, agency, instrumentality, and official . . . of the United States. . ." 42 U.S.C. § 2000bb-2(1); *see also Austin*, 142 S. Ct. at 1304 (Alito, J., dissenting) ("Under the clear terms of RFRA, *all components* of the Federal Government are forbidden to burden a person's exercise of religion unless the Government can demonstrate that the burden represents the least restrictive means of furthering a compelling interest." (emphasis added)). Thus, "[i]t undoubtedly 'applies in the military context.'" *U.S. Navy Seals 1-26*, 27 F.4th at 346 (quoting *United States v. Sterling*, 75 M.J. 407, 410 (C.A.A.F. 2016)).

The Navy conceded as much. *See Austin*, 142 S. Ct. at 1304 (Alito, J., dissenting). It just insists that the Court read in a military exception from RFRA's stringent requirements where none exists because it claims that military decisions should be exempt from judicial review. But those two positions are contradictory. If RFRA applies to the military, it applies with full force, as nothing in its text suggests otherwise.

The Navy claims (at 20) that "Congress made clear that RFRA did not disturb traditional principles of judicial deference to military decisionmaking," citing legislative history, not statutory language. But "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). This Circuit requires courts to look primarily to the text rather than attempt to divine Congress's intentions otherwise. *See, e.g.*, *In re Rogers*, 513 F.3d 212, 225-26 (5th Cir. 2008) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)).

Illustrating the folly in relying on legislative history to discern a statute's meaning rather than the plain text, the Navy quotes language from the Senate Committee report to support its argument that Congress intended leniency for the military that is not evident in the statutory language. *See* Appellant Br. 33-34 (quoting S. Rep. No. 103-111, at 12 (1993)). But the Navy also cites (at 34) the *House* Committee report, which both supports justiciability here and the idea reflected in the statutory text—that Congress intended RFRA to apply to the military, and that the military's interests are inherently protected by application of the compelling interest test because they are often interests "of the highest order." H.R. Rep. No. 103-88, at 8 (1993). It also emphasizes that "pursuant to the [Act], the courts must review the claims of prisoners and military personnel under the compelling governmental interest test. Seemingly reasonable regulations based upon speculation, exaggerated fears o[r] thoughtless policies cannot stand." *Id.* (emphasis added). Thus, if legislative history is even relevant here, it equally supports the idea that RFRA intended that courts

hold the Government—even the military—accountable for violating religious liberty rights.

Turning to the text, it turns out that the House Judiciary's vision for the statute was ultimately realized. RFRA commands that, with a narrow exception, "[g]overnment shall not substantially burden a person's exercise of religion," and it directly provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense *in a judicial proceeding* and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(a), (c) (emphasis added). Thus, "RFRA provides both broad protection of the free exercise right *and a broad right of action for judicial relief*," even against the military. *Singh v. Carter*, 168 F. Supp. 3d 216, 226 (D.D.C. 2016) (emphasis added).

The Navy still insists that courts decline to review military decisionmaking, citing a slew of non-RFRA cases. Appellant Br. 20 (citing *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289 (5th Cir. 2008) (race and sex discrimination); *Meister v. Tex. Adjutant Gen.'s Dep't.*, 233 F.3d 332 (5th Cir. 2000) (sexual harassment); *Holdiness v. Stroud*, 808 F.2d 417 (5th Cir. 1987) (pre-RFRA); *NeSmith v. Fulton*, 615 F.2d 196 (5th Cir. 1980) (pre-RFRA)). But even if there were room for courts to shirk their duties under RFRA—and again, there is none apparent from the text—the typical rationale for abstention would not apply here. The D.C. Circuit explained that the logic underlying non-justiciability in some military cases is "wholly inappropriate . . . when a case presents an issue that is amenable to judicial resolution," recognizing that "courts have shown no hesitation to review cases in which a violation of the Constitution, statutes, or regulations is alleged." *Dilley v. Alexander*, 603 F.2d 914,

920 (D.C. Cir. 1979); *see id.* ("It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. The military departments enjoy no immunity from this proscription." (citations omitted)). Even if military operations require some deference from courts, "resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board." *Adair v. England,* 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (citation omitted). Indeed, "the Supreme Court … [has] heard numerous [constitutional] challenges to military policies." *Brannum v. Lake*, 311 F.3d 1127, 1130 (D.C. Cir. 2002).

Plaintiffs challenge the Navy's vaccination mandate because it lacks a legitimate accommodation process and the Navy treats secular reasons for not being vaccinated more favorably than religious ones, as evidenced by the grant of 23 permanent medical exemptions and zero religious exemptions.[20] As the district court determined, "[w]hether the vaccine mandate passes muster under the First Amendment and RFRA requires neither 'military expertise [n]or discretion.' It is a purely legal question appropriate for review." ROA.22-10077.2409 (quoting *Mindes*, 453 F.2d at 201). Thus, there is no reason for the Court to abstain, and it would conflict with Congress's intent in creating a specific right of action to provide strong protection for religious liberty rights to do so.

---

[20] *See* U.S. Navy COVID-19 Update, *supra* n.6.

**B. If the justiciability test from *Mindes v. Seaman* applies, Plaintiffs' claims satisfy it.**

The Navy argues that Plaintiffs' claims are not justiciable under *Mindes*, 453 F.2d 197, a fifty-year-old case pre-dating RFRA which held that courts should abstain from adjudicating claims against the military unless certain criteria are met. The district court applied *Mindes* and found its requirements are satisfied here. ROA.22-10077.2399-2410. It does not appear that this Court has ever applied *Mindes* in a RFRA case, nor in a free-exercise case. And as the stay panel noted, "it is likely that, following RFRA's enactment, abstention based on the *Mindes* test is no longer permissible." *U.S. Navy Seals 1-26*, 27 F.4th at 346. Still, even if *Mindes* applies, its requirements are met, as both the district court and the stay panel determined.

**1. *Mindes* does not apply to RFRA cases.**

RFRA "operates as a kind of super statute, displacing the normal operation of other federal laws[.]" *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754 (2020). If RFRA's operation displaces other federal statutes, it surely displaces contrary judge-made doctrines, especially where they conflict with the point of the statute itself—legal accountability for violating religious liberty. As the Supreme Court has recognized, "when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981).

If *Mindes* still had force in the RFRA context even though it would override the clear intention of the statute, one would expect to see a judicial opinion applying it. But the Navy cites none. Indeed, it appears this Court has not applied *Mindes* to any

RFRA case, nor even to any Free Exercise case. It does not appear that the Eleventh Circuit has either, nor that it even applies in that Circuit in the context of statutory claims against the military. *See* Order Certifying Class and Issuing Classwide Preliminary Injunction, *Colonel Financial Mgmt. Officer v. Austin*, No. 8:22-cv-1275-SDM-TGW (M.D. Fla. Aug. 18, 2022), slip op. at 17 n.7. It does not appear that *any* Circuit has applied *Mindes* in a RFRA case, including circuits that have adopted *Mindes*. *See, e.g.*, *Meister*, 233 F.3d at 340 (discussing other circuits' application of *Mindes*).

### 2.  If *Mindes* applies, the district court (and this Court) correctly held that this case is justiciable.

*Mindes* allows for judicial review of military decisions when two threshold requirements are satisfied: the plaintiff has (1) alleged a deprivation of a constitutional or statutory rights and (2) exhausted available intraservice corrective measures. *Id.* at 339. It is undisputed that Plaintiffs allege a deprivation of constitutional and statutory rights, but the Navy insists that Plaintiffs must wait to sue until their final appeals are adjudicated. Appellant Br. 20. This argument is moot because, as the Navy admits, some class members (and Individual Plaintiffs) have already received their appeal denials. *See, e.g.*, ROA.22-10077.2856; Stay Opp. App. 001-03; *see also* ROA.22-10077.3995-4041.[21] Puzzlingly, the Navy argues that exhaustion is still a barrier because "[t]he Navy has not yet proposed or initiated disciplinary or separation proceedings against any plaintiff." Appellant Br. 21. But the Navy is enjoined

---

[21] Counsel is also aware of other class members who received appeal denials.

from doing so, and as the appeal denials note, if not for the injunction, separation proceedings *would* be initiated. Stay Opp. App. 001.

Even so, there are also recognized exceptions to the exhaustion requirement for review of internal military decisions which apply here. *Van Hoffburg v. Alexander,* 615 F.2d 633, 638 (5th Cir. 1980). Exhaustion is not required when administrative remedies would not provide adequate relief, *Hodges v. Callaway,* 499 F.2d 417, 420-21 (5th Cir. 1974), when the petitioner may suffer irreparable injury if he is compelled to pursue administrative remedies, *Rhodes v. United States,* 574 F.2d 1179, 1181 (5th Cir. 1978), when administrative appeal would be futile, *Hodges,* 499 F.2d at 420, and when the plaintiff raises a substantial constitutional question, *see* ROA.22-10077.2407 n.23 (collecting cases).

This case falls within these exceptions. Plaintiffs stand to suffer irreparable injury if they cannot sue until their final appeals are adjudicated. *See Opulent Life Church v. City of Holly Springs,* 697 F.3d 279, 295 (5th Cir. 2012). And the evidence shows that denials for all are inevitable, ROA.22-10077.2377-78, 2397, making the administrative process futile. As the stay panel stated, the "evidence . . . suggests that the Navy has effectively stacked the deck against even those exemptions supported by Plaintiffs' immediate commanding officers and military chaplains. This is sufficiently probative of futility." *U.S. Navy Seals 1-26*, 27 F.4th at 347 (footnote omitted). None for active servicemembers have been approved; in the past seven years the Navy has not granted a single religious accommodation to a vaccination requirement. ROA.22-10077.2730-31; *see also id*. The Navy does not dispute that Plaintiffs' requests will be denied and thus do not dispute exhaustion's futility. They

merely complain that the district court did not give the Navy enough time to deny all the requests before assuming they would be denied. Appellant Br. 21-22, 25. Despite the documents from the Chief of Naval Personnel's office showing denial is inevitable, ROA.22-10077.3893-3926, the Navy tries to argue that the Court should turn a blind eye to this established process and instead presume that "military officers 'discharge their duties correctly, lawfully, and in good faith.'" Appellant Br. 22 (quoting *Coburn v. McHugh*, 679 F.3d 924, 929 (D.C. Cir. 2012), a case involving a servicemember challenging his separation for marijuana use). But the Navy points to no authority requiring this Court to presume this in the face of evidence showing otherwise.[22]

If adopted, the Navy's arguments would force class members to wait indefinitely—indeed, some have been waiting for *over a year* for their RA request to be adjudicated—while suffering irreparable harm, just so that the Navy can compile an administrative record on its own timeline.[23] That is not—and cannot be—the law, or RFRA would be pointless. One of the harms RFRA rectifies is the inherent coercion

---

[22] Defendants claim that the fact that some commanders have recommended approval proves that the Navy is evaluating requests in good faith. Appellant Br. 22. But the Chief of Naval Personnel and the Chief of Naval Operations have so far denied every single request from active servicemembers *regardless* of commander recommendation, and the standard operating procedure contemplates the ultimate denial of every request. ROA.3893-3926; *see* U.S. Navy COVID-19 Update, *supra* n.6.

[23] The administrative separation and discharge process can take years to resolve. ROA.3931-32.

present in a government attempt to force an individual to violate their sincere religious beliefs. *See Sambrano v. United Airlines*, No. 21-11159, slip op. 3-4 (5th Cir. Aug. 18, 2022) (Ho, J., concurring in denial of rehearing en banc). If class members had to wait indefinitely to seek relief, many would eventually give up on their rights or the Navy, as some already have. Dkt. 178 at 14-120. It would not be surprising if that were the very reason for the Navy's delay in adjudicating these requests.

Finally, Plaintiffs' claims raise substantial constitutional questions. *See U.S. Navy Seals 1-26*, 27 F.4th at 347; Part II *infra*.

## C. The district court correctly determined that the *Mindes* factors do not support abstention.

Because the threshold step of *Mindes* is satisfied, the next step is weighing four factors to determine whether abstention is appropriate: (1) the nature and strength of the plaintiff's challenge to the military determination; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved. *Mindes,* 453 F.2d at 201-02.

1.    The first factor favors judicial review. As the district court found, Plaintiffs' claims "are squarely in the category of claims most favorable to judicial review" and are particularly strong on the merits, as discussed below and in Part II. ROA.22-10077.2406-07. As the stay panel observed, "this [C]ourt has favorably cited the Ninth Circuit's determination that '[r]esolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an

administrative board.'" *U.S. Navy Seals 1-26*, 27 F.4th at 348 (quoting *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973) and citing *Von Hoffburg*, 615 F.2d at 638).

2.   The second factor favors review as well, because without it, the Plaintiffs face serious, irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Opulent Life*, 697 F.3d at 295. Plaintiffs "suffered irreparable harm from being coerced into 'a choice between their job(s) and their jab(s),'" *Sambrano v. United Airlines*, No. 21-11159, 2022 WL 486610, at *8 (5th Cir. Feb. 17, 2022) (quoting *BST Holdings,* 17 F.4th at 618), "or 'between their beliefs and their benefits,'" *id.* (quoting *Sambrano v. United Airlines*, 19 F.4th 839, 841 (5th Cir. 2021) (mem. op.) (Ho, J. dissenting).

3.   The Navy relies heavily on the third factor, arguing that the preliminary injunction intrudes into "core military judgment." *See* Appellant Br. 30. But as *Mindes* acknowledges, "[i]nterference *per se* is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief." 453 F.2d at 201. Permitting Plaintiffs to continue doing their jobs, despite their vaccination status, has *demonstrably not* threatened the Navy's "performance of vital duties." *Id.*

Throughout the pandemic, multiple Plaintiffs deployed overseas, both before and after the vaccine became available, and their missions succeeded. ROA.22-10077.2156, 2159, 2162, 2172, 2184, 2213, 2224, 2232, 2742-43. EOD 1 even received a Joint Service Commendation Medal for his work in conducting large scale exercises over several months in South Korea during the early part of the pandemic, with successful COVID mitigation as one of the noted achievements. ROA.22-10077.2246-

47, 3367 (sealed). Throughout the pandemic, Plaintiffs trained other SEALs preparing for deployments, with vaccination status being inconsequential to mission accomplishment. ROA.22-10077.2149, 2153, 2162, 2165, 2169, 2178, 2181, 2184, 2187, 2205, 2213-14, 2217-18, 2227, 2242, 2247, 2993. The Navy points to *zero* examples during the last two years where one of the Individual Plaintiffs' vaccination status compromised a NSW mission, despite claiming that vaccination is critical to mission success. In contrast, some training has been compromised because of the removal of some Plaintiffs. *See* ROA.22-10077.2153, 2165, 2695.

This holds true for the entire Navy. Despite the doomsday predictions in his declaration, Admiral Lescher admittedly testified under oath to Congress that the Navy continued its operations successfully and at a rapid pace despite the pandemic. Tr. 104:4-108:5; Mot. Supp. Record at 212. Additionally, as the stay panel discerned, the Navy's claims are undermined by the fact that it has granted many medical exemptions to the vaccine requirement, and by its admissions that the Omicron variant of COVID-19 has had no operational impact, despite the presence of unvaccinated sailors. *U.S. Navy Seals 1-26*, 27 F.4th at 349. It does not take specialized military knowledge or discretion to recognize that the Navy's claims do not align with reality.

4.    The Navy also relies on the fourth factor, which considers "the extent to which the exercise of military expertise or discretion is involved." *Mindes,* 453 F.2d at 201-02.

a.    The Navy uses the discussion of this factor to again urge the Court to blindly defer to "military judgments" even without a "military judgment exception" to RFRA. But despite its claims that courts "consistently" refuse to apply proper

scrutiny to claims like Plaintiffs', Appellant Br. 28, the Navy fails to cite a single case that applies such deference in the context of RFRA. All of the cited cases either predate RFRA, *see, e.g.*, *Chappell v. Wallace*, 462 U.S. 296 (1983); *Gilligan v. Morgan*, 413 U.S. 1 (1973); *Orloff v. Willoughby*, 345 U.S. 83 (1953); *Reaves v. Ainsworth*, 219 U.S. 296 (1911); *Sebra v. Neville*, 801 F.2d 1135 (9th Cir. 1986); or do not involve RFRA claims, *see, e.g.*, *Harkness v. Sec'y of the Navy*, 858 F.3d 437 (6th Cir. 2017); *Antonellis v. United States*, 723 F.3d 1328 (Fed. Cir. 2013). And the only case cited that does involve a RFRA claim applied strict scrutiny to the military's determinations, not a relaxed or deferential standard. *See United States v. Webster*, 65 M.J. 936, 945-48 (Army Ct. Crim. App. 2008).[24] Thus, the Navy fails to point to any authority that applies a deferential standard in the RFRA context. The preliminary injunction therefore does not violate any applicable longstanding principle of deference to the military, as the Navy claims. And "import[ing]" reasoning from other contexts despite RFRA's "greater protection" would be "improper[]." *Holt v. Hobbs*, 574 U.S. 352, 361-62 (2015). While in other contexts, "review of military regulations chal-

---

[24] In *Webster*, the court held that the Army satisfied RFRA's exacting standard, noting that the Army made "numerous allowances" for the military defendant, including reasonably accommodating his religious practices. 65 M.J. at 947. "The Army afforded him the opportunity to request relief as a conscientious objector. The Army gave him the right to request reasonable accommodation of his religious practices. Finally, although apparently not required to do so by any regulation, appellant's commander generously allowed appellant to deploy with his unit in a non-combatant role. We conclude that the First Amendment does not require anything more . . ." *Id.* at 947-48 (cleaned up).

lenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society," *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986), Congress decided to change that deferential review via RFRA to "provide very broad protection for religious liberty," *Hobby Lobby*, 573 U.S. at 693.[25] Regardless, the Supreme Court "has never held . . . that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." *Chappell*, 462 U.S. at 304.

b.    Despite the Navy's claims otherwise (*e.g.*, at 28), the injunction does not require the Navy to deploy Plaintiffs or class members. Neither plaintiffs nor the district court ever contended that the Navy is compelled by the preliminary injunction to deploy anyone. The district court stated:

> This Court has not required Defendants to make any particular personnel assignments. All strategic decisions remain in the hands of the Navy. Rather, the preliminary injunction simply prohibits adverse action against Plaintiffs based on their requests for religious accommodation.

ROA.22-10077.2967. The district court reiterated that "[t]he preliminary injunction is limited in scope. It enjoined the Defendants from applying the vaccine mandate to the thirty-five Plaintiffs here and prohibited adverse action on the basis of their reli-

---

[25] Before passing RFRA, Congress also responded directly to *Goldman* by passing a law that required greater respect for religious liberty. *See* 10 U.S.C. § 774. But even *Goldman* acknowledged that though it held "review of military regulations challenged on First Amendment grounds" is deferential, that does not "render entirely nugatory in the military context the guarantees of the First Amendment." 475 U.S. at 507.

gious accommodation requests." ROA.22-10077.2972. The district court also reiterated that the preliminary injunction preserves the status quo by prohibiting adverse actions like deprivations of pay, training, and medical treatment. ROA.22-10077.2973.

> In response to the Navy's argument about deployment, the stay panel noted:

> [T]he district court clarified that the preliminary injunction "simply prohibits adverse action against Plaintiffs based on their requests for religious accommodation." Defendants therefore remain able to make decisions based on other neutral factors.

*U.S. Navy Seals 1-26*, 27 F.4th at 353. As the stay panel said, "[t]he Navy may permissibly classify any number of Plaintiffs as deployable or non-deployable for a wide variety of reasons. But if the Navy's plan is to ignore RFRA's protections, as it seems to be on the record before us, courts must intervene . . . ." *Id.* at 349. But classifying plaintiffs as "deployable" while the lawsuit proceeds (to ensure they will continue to receive special operations pay, which plaintiffs' families depend on) does not mean the Navy must actually *deploy* any Plaintiffs, and therefore does not usurp the Navy's authority to decide which servicemembers should be deployed.

    c.   Neither does the injunction require the Navy to promote individuals who have not already earned it or command it to employ class members in particular ways, decisions that would implicate military expertise. But it is fair—and not an unwarranted intrusion into military judgment—to enjoin the Navy from reversing decisions it already made to promote or train certain class members when the only reason it reversed those judgments was to punish Plaintiffs for requesting an accommodation of their sincere religious beliefs, a blatant violation of RFRA and the First

Amendment which has nothing to do with "military expertise." For instance, and as one Navy officer admitted, revoking some Plaintiffs' training was for financial, not safety, reasons. ROA.22-10077.1237, 1255, 2899. And RFRA's protections for servicemembers are meaningless if the Navy is permitted to make the lives of religious servicemembers miserable to coerce them to give in to the violation of their beliefs. *See Sambrano*, slip op. 3-4 (Ho, J., concurring in denial of rehearing en banc).

d.  Prohibiting adverse action against plaintiffs because of their religious accommodation request does not usurp military judgment *because it follows military guidance*. DoD policy states that "[a] Servicemember's expression of [religious] beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment." ROA.22-10077.423. Even more specifically, Army policy specifies that no "adverse action" is to be taken against any soldier with a pending religious accommodation request for the COVID-19 vaccination, and that while requests are pending, "[s]oldiers with pending exemption requests will be considered compliant with the mandatory vaccination order . . . ." ROA.22-10077.3024, 3038. The preliminary injunction here requires no more than that.

e.  Recent facts after the Supreme Court granted the Navy the latitude it requested show that the Navy is not using that latitude to further its missions. Instead, it persists in rampant retaliation by illogically using vaccination status (a proxy for RA requests, since most unvaccinated servicemembers have pending requests) to deprive class members of jobs and training to the *detriment* of its missions. It now treats work-related travel as an "operational" decision within the partial stay, even

though Admiral Lescher called it "administrative," and bans all unvaccinated sailors from traveling. ROA.22-10534.3847-50, ROA.22-10077.2578. In many cases, the military judgment was for Plaintiffs to take part in trips related to their jobs, yet that is being disregarded and overridden to adhere to the Navy's quixotic vaccination mandate and related policies. Dkt. 178 at 62-65 (unvaccinated plaintiff denied travel and replaced with unvaccinated, uneducated contractor who injured himself); *see also id.* at 69-80. It is also using vaccination status in a retaliatory way to prevent reservists from obtaining drill and training necessary to maintain good standing, which will result in separation despite the injunction's prohibition. Dkt. 178 at 82-120.

\* \* \*

These new facts underscore why the district court was correct to award preliminary injunctive relief to preserve the status quo. The "traditional deference" cited by the Navy in applying *Mindes* to "internal military decisions" is inapplicable, because deciding this case requires "neither 'military expertise [n]or discretion.'" ROA.22-10077.2409 (quoting *Mindes*, 453 F.2d at 201). The injunction simply requires the Navy to comply with the law and DoD's own policies prohibiting retaliation against religious servicemembers. *See* ROA.22-10077.423, 2967, 3024, 3038. Thus, the issues at hand are "legal question[s] appropriate for judicial review," as the district court correctly held, and as the stay panel agreed. ROA.22-10077.2409; *U.S. Navy Seals 1-26*, 27 F.4th at 348.

## II.    Both Plaintiffs and the Class Are Likely to Succeed on the Merits.

A court may issue a preliminary injunction if the movants establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in the movants' favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *See Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013); *see also* Fed. R. Civ. P. 65. "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). Thus, this Court reviews preliminary injunction decisions for abuse of discretion. *Tex. v. United States*, 809 F.3d 134, 150 (5th Cir. 2015), *as revised* (Nov. 25, 2015).

### A. The Navy's religious accommodation process is a sham and categorically denies all religious exemptions in violation of *O Centro*.

"RFRA did more than merely restore the balancing test used in the *Sherbert* line of cases; it provided even broader protection for religious liberty than was available under those decisions." *Hobby Lobby, Inc.*, 573 U.S. at 695 n.3; *accord Holt*, 574 U.S. at 357. Not only does RFRA require that the Government must demonstrate a "compelling governmental interest" to justify a substantial burden on religious beliefs, it also requires that the Government use the "least restrictive means" available for doing so. 42 U.S.C. § 2000bb-1(b). "The least-restrictive-means standard is exceptionally demanding . . . ." *Hobby Lobby*, 573 U.S. at 728. No matter if the Court considers the Navy's religious accommodation process under the compelling interest prong, *see Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418,

430-31 (2006), or under least restrictive means analysis, *see Austin*, 142 S. Ct. at 1305 (Alito, J., dissenting), it does not comply with RFRA.

1.  Defendants expect to meet RFRA's "exceptionally demanding" test by merely quoting the words "compelling interest" and "least restrictive means" in boilerplate denials, but the law requires far more than the Government's ipse dixit. "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' —the particular claimant whose sincere exercise of religion is being substantially burdened." *O Centro*, 546 U.S. at 430-31 (quoting 42 U.S.C. § 2000bb-1); *Hobby Lobby*, 573 U.S. at 726; *accord McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 475 (5th Cir. 2014). "RFRA 'demands much more[]' than deferring to 'officials' mere say-so that they could not accommodate [a plaintiff's religious accommodation] request.'" *U.S. Navy Seals 1-26*, 27 F.4th at 351 (quoting *Holt*, 574 U.S. at 369.)

The Navy uses a form denial letter produced by a six-phase, fifty-step process that begins with a prepared disapproval template. ROA.22-10077.3893-3926. This form denial, *e.g.*, ROA.22-10077.3909, 3915, which appears to be used in adjudicating all requests, *see, e.g.*, ROA.22-10077.3302-03, 3349-50, 3359-60 (sealed); ROA.22-10077.3920-21, 4035-36, vaguely states that the military has a compelling interest in military readiness, unit cohesion, good order and discipline, and health and safety, on both unit and individual levels. *Id*. Nowhere in the denial letters does the Navy explain with any degree of specificity why it has a compelling interest in denying a particular accommodation request. Instead, it relies on a categorical denial through conclusory assertions unsupported by specific evidence. *See id*. at 352 ("[I]n none of

46

the letters denying religious accommodations to these Plaintiffs has the Navy articulated Plaintiff-specific reasons for its decisions.") As the district court concluded, this process more closely resembles "theater" than the case-by-case rigorous analysis demanded by RFRA. ROA.22-10077.2394. The evidence so far confirms the woefully inadequate process the Navy is using to deny servicemembers' religious liberty:

First, as the stay panel explained, "[f]urther evidencing that there is a pattern of disregard for RFRA rights rather than individualized consideration of Plaintiffs' requests, the Navy admits it has not granted a single religious accommodation." *U.S. Navy Seals 1-26*, 27 F.4th at 352. This is still true.[26]

Second, the Navy's denial letters, even outside the NSW community, appear to be nearly identical. *See, e.g.*, ROA.22-10077.3302-03, 3349-50, 3359-60 (sealed); ROA.22-10077.3920-21, 4035-36. According to the Navy's evaluation, then, there is nothing particular about NSW—or any other subgroup of the Navy—that requires a different outcome. The same is true of religious accommodation appeals. Stay Opp. App.001-003.

Third, and relatedly, the Navy appears to use the same "least restrictive means" analysis for *every servicemember*. ROA.22-10077.3934-47. As the stay panel explained, "surely, had the Navy been conscientiously adhering to RFRA, it could have adopted least restrictive means to accommodate religious objections against forced vaccinations, for instance, to benefit personnel working from desks, warehouses, or remote locations." *U.S. Navy Seals 1-26*, 27 F.4th at 352.

---

[26] *See* U.S. Navy COVID-19 Update, *supra* n.6.

Fourth, the Navy's analysis for each RA request is simplistic, rote, and involves the same boilerplate. In response to a Navy officer's Freedom of Information Act request for "[a]ll responsive records reviewed by the Deputy Chief of Naval Operations . . . in adjudicating" his religious accommodation request, the Navy produced one line of a spreadsheet as its "entire[]" response. ROA.22-10077.3920, 3990, 3993.

Fifth, as even more evidence that the Navy is not considering individual circumstances or whether vaccination is the least restrictive means available, the Navy refuses to consider changed circumstances in reevaluating requests submitted several months ago, such as the job and location of the requestor, newly acquired natural immunity, and a different variant of COVID-19 which has caused widespread infection in vaccinated personnel. ROA.22-10077.3995-4041. Instead, it continues to rely on outdated information about the virus, even though other agencies have revised health guidelines many times since last fall. ROA.22-10077.3949-88. And it is well known that any benefit conferred by vaccination wanes quickly and natural immunity gives roughly the same protection as an initial course—and the CDC has recognized as much in its new guidelines.[27]

---

[27] *See* Massetti, et al., *supra* n. 2. The CDC still claims that boosters provide an increased benefit for a limited time, but the Navy has not mandated boosters and less than one quarter of eligible active Navy servicemembers have received one. Janet A. Aker, *COVID-19 Booster Effectiveness Remained High During Omicron Surge*, Military Health System, (Apr. 18, 2022), https://health.mil/News/Articles/2022/04/18/COVID-19-Booster-Effectiveness-Remained-High-During-Omicron-Surge.

2.    The Navy argues that RFRA does not entitle a religious claimant to any particular process, but that conflicts with *O Centro*. There, as here, the Government argued that a categorical rule—the prohibition of hoasca with no exceptions for religious users—was justified because it was the "least restrictive means of advancing three compelling governmental interests: protecting the health and safety of [church] members, preventing the diversion of hoasca from the church to recreational users," and complying with a United Nations treaty. *O Centro*, 546 U.S. at 425-26. The Government argued that its safety and health concerns about hoasca as a Schedule I substance under the Controlled Substances Act alone "preclude[d] any consideration of individualized exceptions such as that sought by the [religious sect]," and that the regulatory regime for controlled substances could not "function with its necessary rigor and comprehensiveness if subjected to judicial exemptions." *Id.* at 430. But the Supreme Court held that "RFRA, and the strict scrutiny test it adopted, contemplate an inquiry more focused than the Government's categorical approach." *Id.*

The Navy here is attempting to do what *O Centro* says it cannot: mandate COVID-19 vaccination for all active servicemembers, declare a compelling interest in universal vaccination of the force, assert that no option other than its preferred option can satisfy its interest, and deny all requests for religious exemptions from the mandate. In fact, what the Navy is doing is *worse* because it has granted exemptions for secular reasons.[28] If the Supreme Court rejected the Government's attempt to categorically ban a harmful and addictive substance with no religious exceptions, it

---

[28] *See* U.S. Navy COVID-19 Update, *supra* n.6.

would not have permitted the Government to do so where it allowed the use of the same harmful substance for secular reasons. *See id.* at 434 (exception for religious use of peyote undermines Government's argument that effectiveness of its efforts will be compromised by allowing exceptions); *see also Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam) ("Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too.").

\* \* \*

As the district court determined based on the record, the Navy's religious accommodation process "by all accounts … is theater" and the Navy "merely rubber stamps each denial." ROA.22-10077.2394. This does not satisfy the Navy's high burden under RFRA because it is discriminating against religious beliefs across the board, which cannot be the least restrictive means for accomplishing its interest in protecting the force from COVID-19, nor can summary denial of those requests serve any legitimate interest.

### B. The Navy lacks a compelling interest in categorically requiring religious objectors to receive a COVID-19 vaccination despite their sincere religious beliefs.

Even assuming the Navy's religious-accommodation process were not a sham, the Navy is unlikely to succeed because it fails to show that it has a compelling reason to apply its mandate to the Navy Class, much less the 35 Individual Plaintiffs, as

RFRA requires. It strains credulity to assert that the Individual Plaintiffs' non-vac-cination—or even the non-vaccination of the Navy Class, which amounts to 0.6% of all Navy servicemembers—will make or break the Navy's ability to operate or to combat the virus, especially with 99.4% of the force vaccinated. *See BST Holdings*, 17 F.4th at 616 n.19 ("the [OSHA vaccine] Mandate cannot prevent vaccinated em-ployees from spreading the virus in the workplace, or prevent unvaccinated employ-ees from spreading the virus in between weekly tests"). As the district court pointed out, "vaccinated servicemembers are far more likely to encounter other unvac-cinated individuals off-base among the general public than among their ranks." ROA.22-10077.2971. This is especially so now, when it appears that the vaccination mandated by the Navy does little to protect anyone from COVID-19, nor from having a severe case.[29]

The Navy argues that its interest is compelling because unvaccinated sailors threaten operations. But that ignores extensive evidence that shows the Navy—and plaintiffs in particular—continued operations successfully regardless of vaccination status. Health, safety, and mission success are generally compelling interests, but "past practice" shows that the Navy may ensure health, safety, and mission success without vaccinating plaintiffs. *See Dunn v. Smith*, 141 S. Ct. 725, 725-26 (2021) (Ka-gan, J., concurring in denial of application to vacate injunction). The Navy waited a year before vaccines were available to mandate them. Throughout the pandemic,

---

[29] *See* Massetti, et al., *supra* n. 2.

multiple plaintiffs deployed overseas, both before and after the vaccine became available, and their missions succeeded. ROA.22-10077.2156, 2159, 2162, 2172, 2184, 2213, 2224, 2232, 2742-43. EOD 1 received a Joint Service Commendation Medal for his "flawless execution" in conducting 76 large-scale exercises over several months with partner forces in South Korea during the early part of the pandemic, with successful COVID mitigation as one of the noted achievements. ROA.22-10077.2246-47, 3367 (sealed). SWCC 4 completed his entire 24-month deployment cycle during the worst of the COVID-19 pandemic before the vaccine mandate. ROA.22-10077.2743. He stood up a troop that deployed to the Middle East during the early part of the pandemic and was highly successful. ROA.22-10077.2742. Mitigation measures prevented COVID from having an impact on their success. This deployment required extensive training (for over 12 months) which involved multiple inter-fleet operations and large-scale military exercises. ROA.22-10077.2742. SWCC 4 also participated in a major multi-theater deployment during the pandemic. ROA.22-10077.2743. The mission was successful even though a vaccine was not mandated and roughly 50% of the team was unvaccinated. *Id.* Throughout the pandemic, plaintiffs trained other SEALs preparing for deployments, with vaccination status being inconsequential to mission accomplishment. ROA.22-10077.2149, 2153, 2162, 2165, 2169, 2178, 2187, 2205, 2213-14, 2227, 2242, 2247, 2993. Admiral Lescher boasted to Congress that the Navy's operations continued without a hiccup. Mot. Supp. Record at 212. There is, therefore, "no evidence that the [plaintiffs] have contributed to the spread of COVID-19 . . . ." *Roman Cath. Diocese*, 141 S. Ct. at 67. In contrast, some NSW training has been compromised because of the removal of

some plaintiffs. *See* ROA.22-10077.2153, 2165, 2695, Dkt. 178 at 62-65 (unvaccinated plaintiff denied travel and replaced with unvaccinated, uneducated contractor who injured himself); *see also id.* at 69-80.

Finally, the fact that the Navy was trying to retain (and keep in their jobs) unvaccinated sailors about to be separated because it denied their religious accommodation requests undermines the idea that the presence of *any* unvaccinated servicemembers is too risky to permit. Dkt. 178 at 38. It is also difficult to see how separating roughly 4,000 otherwise qualified and dedicated servicemembers because they have religious objections to the COVID-19 vaccine serves any compelling interest when the Navy is already 7,000 billets short and lowering their standards to attract and retain more sailors. Tr. 194:13-21; 185:2-190:5.

## C. The Navy's categorical mandate is not the least restrictive means of accomplishing its interest.

"'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 574 U.S. at 364-65 (quoting *Hobby Lobby*, 573 U.S. at 728). "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* at 365 (citation omitted).

1.    Despite its concerns, the Navy has points to *zero* examples during the last two years when a servicemember's *vaccination status* compromised a mission, not even a riskier NSW mission, though it claims that vaccination is critical to mission success. Thus, "that record suggests that [the Navy] could satisfy its . . . concerns

through a means less restrictive . . . ." *Dunn*, 141 S. Ct. at 726. Even as to NSW, the Navy's failure to consider any less restrictive means to achieve their interest is fatal. SEALs and other members of NSW are not all the same—personal characteristics, skills, and qualifications are no doubt routinely considered when assigning members to particular tasks, roles, missions, commands, or deployments. If a plaintiff is unvaccinated in line with his sincere religious beliefs, the Navy articulates no reason why those decisions could not be made with that in mind, among other neutral factors, as a less restrictive alternative. Indeed, some of the Individual Plaintiffs' commands have tried to keep them in place to use their unique, hard-won skills, but those decisions are being thwarted at higher levels in the Navy just to enforce the mandate. *See, e.g.*, Dkt. 178 at 38, 62-65, 69-81; Dkt. 174 at 7, 10.

2.    The Navy's refusal to consider any alternative except complete acquiescence is illustrated by their completely irrational treatment of SEAL 18, a decorated officer with twenty-five years of service, a former member of SEAL Team Six, and a veteran of eleven combat deployments. ROA.22-10077.2196, 2977, 2998-99. Despite being on the cusp of medical retirement due to injuries (which also means he would not be deployed), the Navy insisted that he comply with the mandate despite his religious beliefs. ROA.22-10077.1201-04. His command also would not allow him to go to a rehab center for treatment on temporary duty, as the Navy allowed before the mandate, unless he has approved leave. ROA.22-10077.2196. SEAL 18 is now on terminal leave and his last day in the Navy is September 28, yet the Navy would not bend even to allow this extremely dedicated SEAL to finish out his service. The

Navy's treatment of SEAL 18 shows its insistence on universal compliance is divorced from any legitimate mission-based needs.

3.    The Navy's arguments are also underinclusive and based on outdated science. Underinclusiveness undercuts the idea that denying an accommodation is the least restrictive means of accomplishing a compelling interest. *See Holt*, 574 U.S. at 368 ("'[t]he proffered objectives are not pursued with respect to analogous nonreligious conduct,' which suggests that 'those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree.'" (citation omitted)). The Navy claims the Navy Class must be vaccinated immediately or missions will be compromised, yet the Navy has granted twenty-three permanent medical exemptions and hundreds of temporary ones.[30] And testing is permitted instead of vaccination for military contractors, whom plaintiffs work with regularly, but not for plaintiffs.[31] Servicemembers or contractors unvaccinated for secular reasons—whether temporarily so or not—present the same risk as plaintiffs who are unvaccinated for religious reasons. *Tandon*, 141 S. Ct. at 1296.

In denying plaintiffs' religious accommodation requests, the Navy relied on COVID-19 data collected before September 2021. But the idea that vaccines prevents transmission is outdated, and the Navy's current policies recognize that contending with COVID is necessary even with 100% vaccination. *See* ROA.22-10077.2734-38. The Navy's claim that the mandate is justified because unvaccinated

---

[30] U.S. Navy COVID-19 Update, *supra* n.6.

[31] DoD Memo, *supra* n. 10.

individuals are more likely than vaccinated individuals generally to suffer serious cases is severely undermined by Navy policy permitting deployment of vaccinated individuals at recognized high risk for COVID complications, even though that amounts to at least one-quarter of the force. ROA.22-10077.2736; pp. 23-24 *supra*. Further, the Navy still accepts the Johnson & Johnson vaccine to fulfill the requirement, which during clinical trials—before the rise of the Delta and Omicron variants—proved only 66.3% effective in preventing infection.[32] That vaccine now produces "virtually no antibody protection against the omicron coronavirus variant."[33] And the Navy's vaccine policies gave across-the-board exemption to placebo participants in the military vaccine clinical trials, ROA.22-10077.22-10077.399, yet those individuals are still just as unvaccinated as the Navy Class, albeit for secular reasons.

Even if there is a COVID-19 outbreak on a ship at sea, operations will largely continue. ROA.22-10077.2734-38. The Navy does not even require service members on a ship who test positive to be retested after quarantine, as they will likely continue to test positive for 90 days. ROA.22-10077.2735. Apparently, the Navy will accept *COVID-positive individuals* mingling with other servicemembers on a ship, but

---

[32] *See* Ctrs. for Disease Control & Prevention, *Johnson & Johnson's Janssen, How Well the Vaccine Works* (updated Oct. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html.

[33] Antony Sguazzin, *J&J Shot Loses Antibody Protection Against Omicron in Study*, Bloomberg Quint, (Dec. 14, 2021) https://www.bloombergquint.com/business/j-j-shot-shows-no-neutralization-against-omicron-in-lab-study.

COVID-negative religious objectors are somehow an intolerable risk. That is irrational, especially since COVID outbreaks are occurring on ships that are 100% vaccinated, ROA.22-10077.2729.

* * *

It does not require military expertise to recognize that the Navy's claims do not align with current reality. "And without a degree of deference that is tantamount to unquestioning acceptance," it is hard not to conclude that the Navy fails to meet its exacting burden under RFRA to justify forcing religious objectors to comply with its vaccine mandate. *Holt*, 574 U.S. at 364.

### D. Plaintiffs are also likely to succeed on their First Amendment claims.

If the Government treats conduct engaged in for religious reasons less favorably than similar conduct engaged in for secular reasons, that treatment is unconstitutional under the First Amendment unless the Government can satisfy "strict scrutiny," which is essentially the same as the standard imposed by RFRA. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993); *Emp. Div., Dept. of Hum. Resources of Ore. v. Smith*, 494 U.S. 872, 878-79 (1990). Government action is not neutral and generally applicable if it treats "any comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296; *see also Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021); *Lukumi*, 508 U.S. at 542-46.

The Navy has granted twenty-three permanent medical exemptions and hundreds of temporary exemptions for active-duty sailors, which it appears to be assessing based on individual circumstances.[34] Yet the Navy has granted zero of the nearly 4,000 RA requests.[35] The Navy also exempts placebo participants in vaccine trials from compliance. ROA.22-10077.403. Application of the mandate therefore is not neutral, as religious-based accommodation requests are treated less favorably than secular requests. As the Court already concluded, "No matter how small the number of secular exemptions by comparison, any favorable treatment . . . defeats neutrality." ROA.22-10077.2415. Thus, even if Plaintiffs had no RFRA claim, strict scrutiny would still apply under the Free Exercise clause, and the Navy's mandate fails that scrutiny for the same reasons it cannot satisfy RFRA. *Id.*

### E.  Plaintiffs satisfy the other requirements for a preliminary injunction.

Plaintiffs have established irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod,* 427 U.S. at 373. The same is true of the loss of RFRA rights. *Opulent Life*, 697 F.3d at 295. As the stay panel concluded, "[n]o further showing is necessary . . ." *U.S. Navy Seals 1-26*, 27 F.4th at 353.

The balance of harms and public interest likewise strongly favor an injunction. "These factors merge when the Government is the opposing party." *Nken v. Holder*,

---

[34] *See* U.S. Navy COVID-19 Update, *supra* n.6.

[35] *Id.*

556 U.S. 418, 435 (2009). An injunction will not disserve the public interest where "it will prevent constitutional deprivations." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014). And "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (citation omitted). The Navy cannot show that it suffers any injury by allowing the injunction to preserve the status quo with Plaintiffs. Just as the Navy was successfully able to carry out its operations throughout the pandemic with the Navy Class among its ranks, even before a vaccine was available or mandated, it will not be hindered in those operations. It is also unclear how the class injunction would suddenly imperil the Navy's "unit effectiveness" and "the Navy's ability to fight and win the Nation's wars," Supp. Br. 29, when the Navy has already removed all unvaccinated sailors from operational units,[36] and when the Navy had not separated these servicemembers before the injunctions were entered, yet no wars were being lost.

### F. The preliminary injunctions are appropriate relief.

The Navy now argues that the preliminary injunction is not "appropriate relief" under RFRA, 42 U.S.C. § 2000bb-1(c), and inconsistent with "traditional principles of equity jurisdiction," *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Appellant Br. 48. But that argument was not presented to the district court, so it is forfeited. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance

---

[36] NAVADMIN 093/22, *supra* n. 13.

in the district court . . ."). In any event, it is meritless. What is meant by the phrase "appropriate relief" in RFRA resembles relief available under 42 U.S.C. § 1983, which includes injunctive relief against government officials to preserve the status quo. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 490-92 (2020). And injunctive relief against federal employees to preserve the status quo aligns with longstanding principles of equity. "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

Nor does the injunction "trench[] on core Article II prerogatives," Appellant Br. 48, though that argument was also never presented to the district court. In any event, the Executive exercised its "Article II prerogatives" when President Clinton signed RFRA into law. It also exercised its Article II powers by ensuring implementation and compliance through the promulgation of DoD regs. *See, e.g.*, ROA.22-10077.423. The Navy's argument for unquestioned military deference also overlooks *Article I* prerogatives "[t]o make Rules for the Government and Regulation of the land and naval forces," U.S. Const. art. I § 8. Congress exercised that prerogative when it enacted RFRA and included the military within its definition of "government." *See* 42 U.S.C. § 2000bb-2(1). This partnership between both elected branches protects religious freedom, even in the military. And through RFRA, both Congress and the President have instructed federal courts to enforce its provisions. The preliminary injunction thus does not improperly usurp Article II power.

### III.    The District Court Did Not Abuse Its Discretion in Certifying the Class and That Decision Is Not an Appealable Interlocutory Order.

The usual rule is that class-certification orders are not automatically appealable in an interlocutory context. The Navy still contends—in one sentence—that it can challenge class certification in this appeal, Supp. Br. 4, but makes no showing as to how this Court has jurisdiction.[37] That issue is forfeited for lack of development. *See Rollins*, 8 F.4th at 397 ("A party forfeits an argument by . . . failing to adequately brief the argument on appeal.") At any rate, there is no basis for exercising pendent jurisdiction over the class-certification issue here because the district court's analysis about class certification is not "inextricably intertwined" with the analysis supporting the classwide preliminary injunction. If the Court does exercise jurisdiction over the class-certification issue, the district court's decision was correct because the proposed class satisfies all the requirements of Rule 23.

### A.    There is no jurisdiction over the class-certification issue.

Class-certification orders are interlocutory orders not immediately appealable under the collateral order doctrine, *see Coopers & Lybrand,* 437 U.S. at 477, nor explicitly under 28 U.S.C. § 1292. And as Plaintiffs previously noted, the Navy did not

---

[37] The Navy cannot argue that it did not know jurisdiction would be an issue here. Aside from the fact that Fifth Circuit precedent is clear that interlocutory appellate jurisdiction over class-certification decisions is not automatic nor that pendent appellate jurisdiction is even common, *see Thornton*, 136 F.3d at 453 ("[p]endant appellate jurisdiction is only proper in rare and unique circumstances"), Plaintiffs made clear that would be an issue in briefing the motion to consolidate the appeals. Thus, the Navy's failure to even brief the issue is unjustifiable.

petition for permission to appeal the class-certification decision as required by Federal Rule of Civil Procedure 23(f). Rule 23(f) authorizes "permissive interlocutory appeal" from adverse class-certification orders in "the sole discretion of the court of appeals." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1709 (2017) (citation omitted). The lone in-circuit, pre-Rule 23(f) case cited by the Navy in support of jurisdiction does not suggest that 23(f) is irrelevant when there is also a preliminary injunction appeal. Appellant Br. 4 (citing *Payne v. Travenol Labs., Inc.*, 673 F.2d 798 (5th Cir. 1982)).[38] Rather, in the class-action context, without permission under Rule 23(f), pendent jurisdiction is proper only if "questions concerning class certification . . . are directly tied to the . . . injunction." *Id.* at 808-09; *see also Pashby*, 709 F.3d at 318 (collecting cases).

In this Circuit, "[p]end[e]nt appellate jurisdiction is only proper in rare and unique circumstances where a final appealable order is 'inextricably intertwined' with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order." *Hernandez*, 397 F. App'x at 963 (quoting *Thornton*, 136 F.3d at 453); *see also Escobar v. Montee*, 895 F.3d 387, 392-93 (5th Cir. 2018) (discussing factors considered in exercising pendent jurisdiction). Even if the issues are related, or the determination of one will make another superfluous, that does not mean they are "intertwined" enough to justify pendent appellate jurisdiction. *See Hernandez*, 397 F. App'x at 963 (holding, consistent with circuit

---

[38] Rule 23(f) was approved in 1998. *See Microsoft*, 137 S. Ct. at 1704. The Navy also cites a Ninth Circuit case, but that case relies on pre-Rule 23(f) precedent as well. Appellant Br. 4 (citing *Melendres v. Arpaio*, 695 F.3d 990, 999 (9th Cir. 2012)).

precedent, that a statute of limitations defense is not "inextricably intertwined" with the denial of qualified immunity and finding no jurisdiction over that issue).

Here, the class-certification issue is not "inextricably intertwined" with the classwide preliminary-injunction analysis just because they happened to be separate parts of the same order. The classwide preliminary injunction analysis relied on the district court's previous preliminary injunction analysis, not its class-certification analysis. And the district court granted a classwide preliminary injunction for the same reasons it granted a preliminary injunction to the individual plaintiffs. It is easy to see why. Once the Named Plaintiffs establish their individual entitlement to an injunction on grounds that would apply to the entire class, classwide relief is appropriate under *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338 (2011). And here, the district court already determined that the class representatives were individually entitled to preliminary injunctive relief, and granted classwide relief because the same relief was appropriate as to the class. Thus, the district court's injunction analysis echoes its previous analysis from the first injunction order. *Compare* ROA.22-10077.2394-2419 *with* ROA.22-10534.3580-3597. If anything, the district court noted that added evidence supported its previous preliminary injunction ruling. ROA.22-10534.3598.

The briefing below also supports this. The Navy's brief opposing the classwide injunction raised the same issues it raised before, including justiciability. *See* Dkt. 129; *see also generally* Dkt. 133; *see also* ROA.22-10534.3597, 3602 (noting repetition). The same is true on appeal—the Navy relies on all of its previous arguments in opposing the classwide injunction, Supp. Br. 28, spending only a little more than a page

on what it contends is the added harm from the classwide injunction, Supp. Br. 28-30. Thus, "because the class certification question is distinct from the preliminary injunction, the issue is not properly before [the Court]." *Pashby*, 709 F.3d at 319.

### B. Class certification was proper under Rule 23 and *Dukes*.

A party that moves for class certification must satisfy each requirement of Rule 23(a): "numerosity, commonality of issues, typicality of the class representatives' claims in relation to the class, and adequacy of the class representatives and their counsel to represent the class." *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (citing Fed. R. Civ. P. 23(a)). "Plaintiffs also must satisfy at least one of the requirements of Rule 23(b)." *Id.* In certifying a class, a district court has "broad discretion." *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017). But "a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23." *Vizena v. Union Pac. R.R.*, 360 F.3d 496, 503 (5th Cir. 2004) (per curiam). The district court certified the Navy Class, the NSW/SO Subclass, and the SEAL Subclass after determining in a detailed opinion that the Named Plaintiffs satisfied the requirements of Rule 23(a) and the requirements of Rule 23(b)(2). ROA.22-10534.3580-3597. On appellate review of class certification, this Court must "search only for abuse of discretion, recognizing 'the essentially factual basis of the certification inquiry and . . . the district court's inherent power to manage and control pending litigation.' . . . . [I]t's up to the district judge to find the facts." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020) (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 836 (5th Cir. 2012)).

On appeal, the Navy challenges only the district court's conclusions about the elements of commonality and typicality under Rule 23(a) and the 23(b)(2) requirements. The Navy's arguments fail because there are questions of law and fact common to the Class and Subclasses, the Named Plaintiffs' claims are typical of the Class and Subclasses, and in denying religious accommodation across the board without engaging in the individual, "to the person" analysis RFRA requires, the Navy "has acted or refused to act on grounds that apply generally to the class," Federal Rule of Civil Procedure 23(b)(2).

> **1.** **The district court did not abuse its discretion in determining that the evidence showed common questions of law and fact sufficient to satisfy the commonality requirement.**

To satisfy the requirement of commonality, the "claims must depend upon a common contention" that is "of such a nature it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Plaintiffs' motion for class certification lists twenty-four common questions of law and fact that will resolve issues that are "central to the validity" of each class member's claims "in one stroke" because the questions address whether Defendants' policies and practices cause the same constitutional and statutory violations of the class member's rights. *Id.*; ROA.22.10077.2623-26. The Navy's brief does not mention or address any of Plaintiffs' common questions and instead presents arguments on the *merits* of Plaintiffs' claims. In other words, Defendants focus on the *answers* to many of the common questions presented by Plaintiffs rather than

whether these questions satisfy commonality under Federal Rule of Civil Procedure 23(a). But "decid[ing] the merits of the plaintiffs' claims. . . . is inappropriate at the certification stage." *Chavez*, 957 F.3d at 546 n.3.

Commonality may be demonstrated by showing that the defendants "'operated under a general policy of discrimination.'" *Dukes*, 564 U.S. at 353 (quoting *Gen. Tele. Co. of Sw. v. Falcon*, 347 U.S. 147, 159 n.15 (1982)). That is exactly what Plaintiffs have shown here, as both the district court and the stay panel concluded. ROA.22-10534.3589; *U.S. Navy Seals 1-26*, 27 F.4th at 341, 352. Common questions that apply to all class members involve whether the Navy inappropriately discriminated against religious beliefs against COVID-19 vaccination by compelling vaccination despite those beliefs, refusing to accommodate those beliefs for any active servicemember, and granting exemptions for secular but not religious reasons. These questions are capable of resolution on a classwide basis. The claims are common among all class members because the injuries sustained—Defendants' denial of all class members' RA requests—are identical. And while the adverse actions experienced by class members because of their RA requests may vary for each individual as to type or effect, the injuries all arise from the same unconstitutional policies and practices. "[T]he legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810-11 (5th Cir. 2014). If Defendants have engaged in unlawful discrimination, as Plaintiffs have shown, such discrimination creates "the same injury" for purposes of commonality. *Id.*

The Navy's argument that RFRA's individual assessment requirement precludes class certification here misunderstands the law. The claims here stem from what Plaintiffs have shown is a *lack* of individualized assessment and a policy of across-the-board denials. Whether the Navy has an individualized assessment process is a question of fact common to the class, and whether the Navy's process satisfies RFRA and the First Amendment is a question of law common to the class. The resolution of these questions at the merits stage—the "determination of [their] truth or falsity"—will provide common answers for the class members' claims, showing that classwide resolution of the claims is proper. *Dukes*, 564 U.S. at 350. The Navy's argument is also ironic given that they argue here that classwide determination of RA requests is impossible, Supp. Br. 14, yet the Navy is doing *exactly that* by categorically denying every class member's request while claiming it is complying with RFRA.

Further, as the district court found, the Named Plaintiffs did not merely allege that the Navy violates their rights because it lacks such a process, they submitted evidence—the fifty-step SOP, boilerplate denial letters, statements by Naval officers that all requests will be denied, and the fact that the Navy has granted zero RA requests to active servicemembers—to support both their request for certification and the preliminary injunction. The stay panel agreed that this evidence showed—at least at this preliminary stage—that the Navy has a policy of denying all accommodation requests. *See U.S. Navy Seals 1-26*, 27 F.4th at 352 (finding evidence of "a pattern of disregard for RFRA rights rather than individualized consideration of Plaintiffs' requests."). The Navy, on the other hand, has thus far submitted no evidence proving otherwise. The Navy may dispute Plaintiffs' contentions by offering

contrary evidence at the merits stage, but the Navy's dispute of this common question of fact does not preclude class certification—it justifies it. The common answer to this question will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

### 2.    The Named Plaintiffs' claims are typical of the class.

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* "[T]he test for typicality is not demanding. It 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (citation omitted). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001).

The Navy argues that typicality is not satisfied because there are differing circumstances among class members and different religious reasons for objecting to the vaccine. The Navy claims that these differences are relevant for determining the elements of each individual's RFRA claim. While that is true, that is exactly what the Navy is *not* doing by following a policy to deny every RA request. That pattern of

discrimination is what gave rise to the common claims here. As the district court explained when rejecting this argument,

> in the Navy's own analysis, such distinctions make no difference. Defendants admit that the goal of the Standard Operating Procedure (SOP) is efficiency, not nuanced review. The SOP is "merely an administrative tool to efficiently adjudicate the unprecedented amount of requests." While the SOP touts "case-by-case review," it calls for pre-drafted denial letters. Perhaps the Navy actually weighed each applicant's beliefs and circumstances. But granting none of 4,095 religious accommodation requests suggests otherwise.

ROA.22-10534.3592. Plaintiffs' claims do not require individual resolution because the Navy's policies and practices result in across-the-board violations of *all* class members' rights. Plaintiffs' claims are therefore typical of the claims of all other class members.

### 3.   The district court did not abuse its discretion by concluding that the Rule 23(b)(2) requirements are satisfied.

In addition to satisfying the threshold requirements of Rule 23(a), the Class and the Subclasses also satisfy the requirements of Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has held that this requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. That is precisely what the Named Plaintiffs are requesting: declaratory and injunctive relief that protects the religious rights of each class member under the First Amendment and Religious Freedom Restoration Act. And "[a]ctions for class-

wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies. Such relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir. 1998). The Navy's arguments under Rule 23(b) are baseless and just another attempt to defend the merits, claiming, despite the evidence, that the Navy conducts individualized, "to the person" assessments of RA requests.

a.    Here, the Navy has "acted or refused to act on grounds that apply generally to the class" because they have (1) mandated the COVID-19 vaccine for all servicemembers despite the class members' sincerely held religious beliefs; (2) have policies or practices of across-the-board denial of all RA requests concerning the COVID-19 vaccine mandate with boilerplate denials and outdated, nonspecific reasoning, regardless of individual circumstances; and (3) have granted accommodations or exemptions concerning the COVID-19 vaccine mandate for secular reasons while denying every RA request. These systemwide violations make this case suited to a 23(b)(2) class. *See Brown v. Plata*, 563 U.S. 493, 532 (2011) (observing that Rule 23(b)(2) is especially suited to remedy "systemwide violation[s]" resulting from "systemwide deficiencies."); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 417 n.16 (5th Cir. 2004) (noting that subdivision (b)(2) was added "to Rule 23 in 1966 primarily to facilitate the bringing of class actions in the civil rights area." (citation omitted)).

Plaintiffs do not seek individualized relief for any class member or for any subset of the class or subclasses, ROA.22-10077.2514-43, unlike plaintiffs in cases cited by

the Navy. *See, e.g.*, *Stukenberg*, 675 F.3d at 848 (holding Rule 23(b)(2)'s requirements not met because injunction would have to be individualized rather than applying to entire class); *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) (rejecting class where Plaintiffs sought injunction for defendant to provide "mutually affordable health care" without defining that term). As the Middle District of Florida recently put it when certifying a Rule 23(b)(2) class of religious objectors to the Marine Corps' COVID-19 vaccine mandate with similar claims,

> the plaintiffs challenge not the correctness of the legal or factual sufficiency of any particular denial but challenge both the common but allegedly deficient process on which the Marine Corps relies in denying the requests uniformly and *en masse* and the allegedly inflexible, conclusory, vague, and overbroad rationalizations used by the Marine Corps in uniformly refusing accommodation.

*Colonel Financial Mgmt. Off.*, slip op. at 21.[39]

Because the Named Plaintiffs seek specific, classwide declaratory and injunctive relief that protects the sincerely held religious beliefs of all members of the Navy who have submitted RA requests concerning the COVID-19 vaccine mandate, this makes "final injunctive relief or corresponding declaratory relief . . . appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Dukes*, 564 U.S. at 360 ("Rule 23(b)(2) applies . . . when a single injunction or declaratory judgment would provide relief to each member of the class.").

---

[39] The Southern District of Ohio also recently certified an Air Force class and entered preliminary injunctive relief under RFRA. *Doster v. Kendall*, No. 1:22-CV-84, 2022 WL 2974733 (S.D. Ohio July 27, 2022).

b. The Navy also challenges the district court's decision not to allow class members to formally opt out. ROA.22-10534.3594. But because opt-out is not a requirement for 23(b)(2) suits, especially where there are no compensatory damages claims, the Navy's objection is not a valid objection to certification writ large. *In re Monumental Life*, 365 F.3d at 417; *Penson v. Terminal Transp. Co., Inc.*, 634 F.2d 989, 994 (5th Cir. 1981). In other words, if the district court abused its discretion in not permitting formal opt-out, that does not mean certification itself was improper. *Cf.* Supp. Br. 24. The Navy cites no contrary authority.

Even so, the district court's decision was not an abuse of discretion. Opt-out is generally not appropriate in 23(b)(2) classes, and the Navy never argued that the district court should allow for it. It made similar arguments about the possible existence of individuals who may not want to stay in the class, but presented them in the context of the adequacy element of 23(a), not in the context of 23(b)(2), and not in the context of opt-out. ROA.22-10534.3082. The Navy in fact expressly argued the opposite, quoting this Court's case law invalidating their argument here:

> As the Fifth Circuit has explained, "this rule seeks to redress what are really group as opposed to individual injuries," *thus "render[ing] the notice and opt-out provisions of [Rule 23](b)(3) unnecessary." Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (quoting *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 n.22 (5th Cir. 2000)).

ROA.22-10534.3086 (emphasis added). The Navy also contradicts itself by admitting in another filing that "[t]he Court also provided several methods for service members to effectively opt-out of the class at any time. Class members can 'choose

to get vaccinated, withdraw their religious accommodation requests, voluntarily separate, or proceed with retirement plans.'" Dkt. 175 at 8 (quoting ROA.22-10534.3594). Thus, the Navy's opt-out argument is both forfeited because it was not presented to the district court and concededly wrong. *See Rollins*, 8 F.4th at 397 ("A party forfeits an argument by failing to raise it in the first instance in the district court").

c.    It is also disingenuous for the Navy to try to make an issue out of class members leaving the Navy regardless of the injunction because those situations were *caused* by the Navy in the first place.[40] Before the class was certified and the class-wide injunction issued, these individuals opted to be involuntarily separated (though the Navy insists on discharging them for Commission of a Serious Offense) because the Navy's retaliatory and coercive treatment was too much for them and their families, or because they felt there was no hope that their accommodation request would be granted. Dkt. 178 at 14-15, 15-16, 28-29.[41] In some cases, their separation was not by choice—it commenced because their appeals had been denied and they stood on their beliefs. Dkt. 178 at 37-38, 49-50. Relying on the Navy's assertions that they

---

[40] If the Court considers the issue of opt-out as presented by the Navy on appeal despite not being raised below, it should either supplement the record with all the materials relating to this issue because the record was transmitted to the Court of Appeals before this issue was resolved or take judicial notice of the pertinent materials. *See* Dkt. 174-178, 180, 182.

[41] The Navy draws specific attention to SEAL 13's initial decision to begin terminal leave, but as he explained in a declaration, he thought that was his only option at the time. ROA.22-10534.3024-25.

would be separated imminently, these individuals sold their homes, moved their families, and got new jobs. Dkt. 178 at 15, 29, 50. Even though the district court's order expressly allowed for individuals to choose to separate and to withdraw their RA requests (removing themselves from the defined class), ROA.22-10534.3594, the Navy still told servicemembers the opposite, saying that "Service Members within the class definition are stuck there" and that the only way they will be able to continue with the separation process already started is if this Court modifies its injunction. Dkt. 178 at 11. The Navy also explicitly told servicemembers that they *could not* withdraw their religious accommodation requests to remove themselves from the class definition. Dkt. 178 at 11, 16, 29, 39. The purpose of this was apparently to drum up evidence the Navy believed would support their litigation strategy.[42] In doing so, the Navy disregarded the detrimental effects this had on these sailors and their families. One sailor was stuck living in squalor aboard a Navy barge because she had nowhere else to go. Dkt. 178 at 14-26. Another had moved his pregnant wife and toddler to another state but could not join them despite the impending birth. Dkt. 178 at 50. Another sailor had planned to take in relatives as foster children because they were

---

[42] *See* Dkt. 178 at 11 ("The DoJ may in the future petition the court, potentially jointly with Class Counsel, to modify the court's order to allow class members to separate if they so desire, but DoJ perceives itself as unlikely to succeed on such a motion without a significant number of Service Members requesting such separation and without concurrence of Class Counsel. Inputs to PERS-832 will be critical in such a motion to illustrate to the court the difficulties its class definition has created for individual Service Members.") This document is dated 26 April 2022, yet DOJ did not approach Plaintiffs' counsel with this issue before Plaintiffs' counsel raised it on May 10, 2022. Dkt. 176 at 27.

in a vulnerable situation but could not because he could not join his family. Dkt. 178 at 29. And another sailor on the cusp of being separated was brought back in and put back in his job, despite the supposed risk of being unvaccinated.[43] Dkt. 178 at 38.

The district court reiterated that these individuals could choose involuntary separation and accept the Navy's retaliatory consequences if they wish, and the Navy agreed. Dkt. 182; *see* Dkt. 175 at 2. That some individuals did so does not invalidate the premise of the 23(b)(2) class, which is that the way these individuals were treated because of an across-the-board Navy policy violates their rights. That some would choose not to subject themselves to continued coercion and retaliation—made worse by the partial stay—does not invalidate the certification of the class.[44]

---

[43] Refusing to allow these supposedly "dangerous" unvaccinated individuals to leave the Navy—even though they wanted to and chose to accept the Navy's onerous consequences for doing so—also undermines the supposedly compelling interest the Navy claims in 100% COVID-19 vaccination.

[44] *See, e.g.*, Dkt. 178 at 39 ("My work environment feels extremely toxic over the vaccine issue, which has caused both my wife and I much stress. Because of my sincerely held religious objection, I will not take the COVID-19 vaccine. Because of the hardship and stress this process has brought to my family, I do not wish to be a part of the United States Navy anymore.")

## Conclusion

The orders granting the preliminary injunction and the classwide injunction should be affirmed. Should the Court find it has jurisdiction over the class-certification portion of the order, it should affirm certification of the class.

Respectfully submitted.

Kelly J. Shackelford
Jeffrey C. Mateer
Hiram S. Sasser, III
David J. Hacker
Michael D. Berry
Danielle A. Runyan
Ryan Gardner
Holly M. Randall
First Liberty Institute
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
(972) 941-4444 (phone

Jordan E. Pratt
First Liberty Institute
227 Pennsylvania Ave. SE
Washington, DC 20003
(972) 941-4444 (phone)

/s/Heather Gebelin Hacker
Heather Gebelin Hacker
Andrew B. Stephens
Hacker Stephens LLP
108 Wild Basin Road South
Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

On August 22, 2022, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of the Court's June 9, 2022 briefing schedule because it contains 19894 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the program used for the word count).

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER