# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 6, 2023

Lyle W. Cayce
Clerk

No. 22-10077
CONSOLIDATED WITH
No. 22-10534

U.S. NAVY SEALS 1-26; U.S. NAVY SPECIAL WARFARE
COMBATANT CRAFT CREWMEN 1-5; U.S. NAVY EXPLOSIVE
ORDNANCE DISPOSAL TECHNICIAN 1; U.S. NAVY DIVERS 1-3,

*Plaintiffs—Appellees,*

*versus*

JOSEPH R. BIDEN, JR., *in his official capacity as President of the United States of America*; LLOYD AUSTIN, *Secretary, U.S. Department of Defense, individually and in his official capacity as United States Secretary of Defense*; UNITED STATES DEPARTMENT OF DEFENSE; CARLOS DEL TORO, *individually and in his official capacity as United States Secretary of the Navy*,

*Defendants—Appellants.*

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-1236

Before GRAVES, HO, and DUNCAN, *Circuit Judges*.

No. 22-10077
c/w No. 22-10534

STUART KYLE DUNCAN, *Circuit Judge*:

Our nation's guarantees of religious freedom protect those serving in the military. *See* U.S. CONST. amend. I; RELIGIOUS FREEDOM RESTORATION ACT ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*; *see also, e.g.*, *Singh v. Berger*, 56 F.4th 88, 92 (D.C. Cir. 2022) (observing that "the Political Branches have repeatedly required the military to carefully balance its need for disciplined uniformity with the religious needs of service members"). For good reason, then, courts have halted the military's recent attempts to force servicemembers, on pain of draconian penalties, to receive COVID-19 vaccines against their sincere religious objections. *See Doster v. Kendall*, 54 F.4th 398, 419 (6th Cir. 2022) (upholding preliminary injunction because plaintiffs were likely to "prove that the Air Force violated RFRA when it denied their requests for religious exemptions"); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 350 (5th Cir. 2022) (per curiam) (denying the Navy's requested stay because "at a minimum, [Plaintiffs'] RFRA claims are meritorious"), *preliminary injunction partially stayed sub nom. Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022) (mem.).

This appeal involves the Navy's near-categorical refusal to accommodate servicemembers' inability to receive a vaccine due to their religious convictions. The district court twice enjoined the Navy's policies as likely illegal under RFRA. After entry of those injunctions, however, Congress ordered the military branches to rescind their mandates. The Navy complied with that directive and then went above and beyond it—rescinding all the challenged policies and formally announcing that COVID-19 vaccines would not be imposed on any servicemember.

The Navy's actions moot this appeal. So, despite the overwhelming importance of the issues presented, we lack jurisdiction to address them. In reaching that conclusion, we join other circuits that have dismissed similar

No. 22-10077
c/w No. 22-10534

challenges as moot. *See, e.g., Roth v. Austin*, 62 F.4th 1114 (8th Cir. 2023); *Navy Seal 1 v. Austin*, No. 22-5114, 2023 WL 2482927 (D.C. Cir. Mar. 10, 2023) (unpublished); *Dunn v. Austin*, No. 22-15286, 2023 WL 2319316 (9th Cir. Feb. 27, 2023) (unpublished).

We therefore DISMISS the appeal and REMAND for further proceedings consistent with this opinion.

I.

A.

On August 24, 2021, Secretary of Defense Lloyd Austin ordered all members of the Armed Forces to be vaccinated against COVID-19. Secretary of the Navy Carlos Del Toro followed suit soon after, mandating vaccination for all Navy servicemembers.

The Navy mandate was fleshed out by three policies relevant here. First, unvaccinated servicemembers, absent an exemption, would be separated from service. As a result, they would also risk losing veteran's benefits and having to repay the cost of their training. *See* NAVADMIN 225/21 (Oct. 13, 2021). Second, servicemembers seeking an exemption could not re-enlist, execute orders, be promoted, or deploy. *See* NAVADMIN 256/21 (Nov. 15, 2021). Third, even servicemembers granted an exemption remained ineligible to deploy—but only if the exemption was granted on religious grounds. *See* Manual of the Navy Medical Department ("MANMED") 15-105(3)(n)(9).

Plaintiffs are thirty-five members of Naval Special Warfare Command units.[1] Each sought an exemption due to a sincere religious objection to the

---

[1] They include Navy SEALs, Navy Divers, Navy Special Warfare Combatant Craft Crewmen, and Navy Explosive Ordnance Disposal Technicians.

3

No. 22-10077
c/w No. 22-10534

Navy's authorized vaccines. None was exempted. In fact, the Navy did not grant a single religious exemption to anyone until this litigation was well underway, despite granting several hundred medical exemptions. *U.S. Navy Seals 1-26*, 27 F.4th at 341–42.

Plaintiffs sued Secretary Austin, Secretary Del Toro, and the Department of Defense (collectively, "the Navy"), alleging that the mandate violated the First Amendment and RFRA. They also sought a preliminary injunction to block enforcement of the policies described above. Specifically, they asked the court to enjoin "any adverse action" based on their vaccination status, such as job loss, ineligibility to deploy, and restrictions on promotion and training opportunities.

The district court granted a preliminary injunction that did two things. It enjoined the Navy "from applying MANMED § 15-105(3)(n)(9); NAVADMIN 225/21; Trident Order #12[2]; and NAVADMIN 256/21 to Plaintiffs." Further, it prohibited the Navy "from taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation." The gravamen of the court's reasoning was that the Navy's review process was mere "theater" with each request ending in a "rubber stamp[ed]" denial of a religious exemption.

The Navy appealed and sought a stay of the injunction pending appeal. A motions panel denied the stay, *U.S. Navy Seals 1-26*, 27 F.4th 336, but a divided Supreme Court granted it in part, staying the injunction "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022) (mem.).

---

[2] Trident Order #12 was rescinded prior to this appeal and is no longer at issue.

4

No. 22-10077
c/w No. 22-10534

Subsequently, the district court granted Plaintiffs' motion to certify a class consisting of "all Navy servicemembers subject to the vaccine mandate who have submitted religious accommodation requests." It then granted the class a preliminary injunction prohibiting enforcement of the same policies named in its first injunction. The Navy again appealed, challenging both the injunction and the class certification. We consolidated the two appeals.

B.

Before we heard oral argument, President Biden signed into law a statute directing Secretary Austin to rescind the vaccine mandate. *See* James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571–72 (2022) ("NDAA"). As relevant here, the NDAA provides that

> [n]ot later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members."

*Ibid.* The NDAA gave no further instructions.

Secretary Austin duly rescinded the mandate on January 10, 2023. *See* Memorandum, Secretary of Defense, Rescission of August 24, 2021, and November 30, 2021, Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed Forces (Jan. 10, 2023). He ordered the military to stop separating servicemembers who had sought an exemption and to "remove any adverse actions solely associated with denials of such requests." *Ibid.* Secretary Del Toro then rescinded the Navy mandate, "suspend[ing] any new adverse administrative actions associated with refusing the COVID-19 vaccine." NAVADMIN 005/23 (Jan. 11, 2023). Both Secretary Austin and Secretary Del Toro clarified, however, that

5

commanders remained free to consider vaccination status in making deployment, assignment, and operational decisions.

Following oral argument, the Navy promulgated additional policies that eliminated any remaining distinctions between vaccinated and unvaccinated personnel. Notably, the Navy issued a policy stating that "[u]nder no circumstances shall a Commander mandate that any Navy Service member receive the COVID-19 vaccination." NAVADMIN 038/23 (Feb. 15, 2023). It further provided that "COVID-19 vaccination status shall not be a consideration in assessing individual service member suitability for deployment or other operational missions." *Ibid.* Later, the Department of Defense also barred the military branches, including the Navy, from considering vaccination status for deployment and assignment-related decisions so long as the COVID-19 vaccine remained optional.[3]

## II.

Whether an appeal is moot is a jurisdictional issue that we review *de novo*. *See Freedom From Religion Found. v. Abbott* (*FFRF*), 58 F.4th 824, 831 (5th Cir. 2023); *Lauren C. ex rel. Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 371 (5th Cir. 2018).

## III.

### A.

The Navy argues that events subsequent to the preliminary injunction have mooted the appeal. We agree.

---

[3] *See* Deputy Secretary of Defense, Guidance for Implementing Rescission of August 24, 2021 and November 30, 2021 Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed Forces (Feb. 24, 2023) ("Feb. 24 DoD Rescission Guidance").

No. 22-10077
c/w No. 22-10534

If a dispute ceases mid-litigation, so does our jurisdiction. *See* U.S. CONST. art. III, § 2 (limiting federal jurisdiction to "Cases" and "Controversies"); *see also FFRF*, 58 F.4th at 831–32 (under Article III, "[w]e are . . . permitted 'to adjudicate only live disputes'" (quoting *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 548 (5th Cir. 2020))). One way that happens is when a challenged policy is repealed. *See, e.g., Houston Chron. Pub. Co. v. League City*, 488 F.3d 613, 619 (5th Cir. 2007) ("It goes without saying that disputes concerning repealed legislation are generally moot."). "In that case, mootness is the default." *FFRF*, 58 F.4th at 832 (collecting authorities).

That default rule of mootness applies here. Obeying a newly enacted federal statute, the Navy rescinded its COVID-19 mandate. Then it revoked each of the implementing policies addressed by the preliminary injunction. Then it promulgated new policies providing that no vaccine mandate will be imposed on Navy servicemembers. As other circuits have held, such actions moot a dispute over the lawfulness of military vaccine mandates.[4]

Another sure sign that this appeal is moot is that the preliminary injunctions no longer provide Plaintiffs "any effectual relief." *See Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("A matter is moot 'when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012))). The district court enjoined specific vaccine policies and

---

[4] *See Roth*, 62 F.4th at 1119 ("The rescission of the COVID-19 vaccination mandate, as directed by the [NDAA], provides the Airmen all of their requested preliminary injunctive relief and renders this appeal moot."); *Navy Seal 1*, 2023 WL 2482927, at *1 (*sua sponte* dismissing as moot appeals from denials of preliminary injunctions "[i]n light of the January 10, 2023 Memorandum issued by the Secretary of Defense rescinding the military's COVID-19 vaccination mandate for all service members, and the subsequent directives formally implementing the Secretary of Defense's rescission of the COVID-19 vaccination requirement"); *Dunn*, 2023 WL 2319316, at *1 (same).

7

Case: 22-10077 Document: 00516841201 Page: 8 Date Filed: 08/28/2023
Case: 22-10077 Document: 00516841201 Page: 8 Date Filed: 08/28/2023

No. 22-10077
c/w No. 22-10534

prohibited "any adverse action" against noncomplying Plaintiffs.[5] But Plaintiffs, both individually and as a class, have now received everything those injunctions required, mooting the appeal. *See, e.g.*, *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (finding preliminary injunction moot where revisions to a challenged law "provided the plaintiffs the very relief their lawsuit sought"); *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998) ("[A] request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined.").

Start with the vaccine policies themselves. They forced Plaintiffs to be vaccinated or face severe penalties. No more. Secretary Austin's January 10 rescission order rendered all military "policies, directives, and guidance implementing those vaccination mandates *as no longer in effect*." Feb. 24 DoD Rescission Guidance (emphasis added). In fact, the military branches were required to "formally rescind" those nullified policies. *Ibid.* There is no need to enjoin policies that no longer exist. *See Spell*, 962 F.3d at 179 ("Once the [challenged] law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do.").

Plaintiffs also no longer face any threat of "adverse action" from refusing a COVID-19 vaccine. Navy policies now formally prohibit "any new adverse administrative actions" against unvaccinated servicemembers and require removing past adverse actions. NAVADMIN 005/23 (January 11, 2023); Memorandum, Secretary of the Navy, Department of the Navy Actions to Implement Coronavirus Disease 2019 Rescission (Feb. 24, 2023).

---

[5] The district court's class-wide preliminary injunction was narrower, only enjoining the four vaccination policies. So, our discussion of the individual Plaintiffs' preliminary injunction necessarily encompasses the class-wide injunction.

Critically, the Navy has also ruled out using vaccination status to deny deployment eligibility, training opportunities, and assignments. This was the central threat that, Plaintiffs argued, hung over their heads even post-rescission. The Navy has now abjured it. No fewer than three binding policies now forbid considering vaccination status for such decisions.[6] Because the Navy has definitively restored Plaintiffs to equal footing with their vaccinated counterparts through repeated formal policy changes, enjoining "adverse action" offers Plaintiffs no effectual relief.

In sum, the Navy has given Plaintiffs "the precise relief" provided by the preliminary injunctions, leaving us "unable to provide relief beyond what [the Navy] already gave." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 375 (5th Cir. 2022). Thus, absent an exception to mootness, we lack jurisdiction to reach the merits. It is to those exceptions that we now turn.

B.

Plaintiffs argue the appeal remains live under two exceptions to mootness: voluntary cessation and capable of repetition yet evading review. We consider each in turn.

1.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine

---

[6] *See* NAVADMIN 038/23 (Feb. 15, 2023) ("COVID-19 vaccination status shall not be a consideration in assessing individual service member suitability for deployment or other operational missions."); Feb. 24 DoD Rescission Guidance ("DoD Component heads and commanders will not . . . consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions, absent establishment of a new immunization requirement . . . ."); NAVADMIN 065/23 (March 7, 2023) ("COVID-19 vaccination status shall not be a consideration in assessing individual Service member suitability for deployment or other operational decisions.").

the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). That is because "[a] defendant, without court compulsion, could legally return to its former ways." *K.P. v. LeBlanc*, 627 F.3d 115, 121 (5th Cir. 2010). The doctrine of voluntary cessation evaluates the risk that a defendant is engaging in "litigation posturing" to avoid judicial review. *See Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018); *Aladdin's Castle*, 455 U.S. at 289 n.10. Accordingly, it must be "absolutely clear" that the defendant's challenged conduct "could not reasonably be expected to recur" to divest us of jurisdiction. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)).

The voluntary cessation analysis is somewhat different with respect to a government defendant. "[G]overnmental entities bear a 'lighter burden' . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot.'" *FFRF*, 58 F.4th at 833 (quoting *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014)) (some internal quotation marks omitted); *see also, e.g., Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (same), *aff'd*, 563 U.S. 277 (2011). "That is so because we presume that state actors, as public representatives, act in good faith." *FFRF*, 58 F.4th at 833 (citing *Amawi*, 956 F.3d at 821); *see also, e.g., Sossamon*, 560 F.3d at 325 (explaining that "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties"). Accordingly, "[w]ithout evidence to the contrary, we assume that formally announced changes to official government policy are not mere litigation posturing." *Yarls*, 905 F.3d at 911 (quoting *Sossamon*, 560 F.3d at 325).

No. 22-10077
c/w No. 22-10534

Plaintiffs argue that voluntary cessation applies here because the NDAA left the Navy free to implement a new mandate or at least resume its differential treatment of unvaccinated servicemembers. We disagree.[7]

It is true, as the Navy concedes, that it could implement a new vaccine mandate in the future. That does not change the mootness calculus, though. It is black-letter law that the government's mere "ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception." *FFRF*, 58 F.4th at 833; *see also Roth*, 62 F.4th at 1119–20 (Stras, J., concurring in the judgment) ("Voluntary cessation does not necessarily moot a case, but statutory changes generally do, even if the power to reenact the challenged provision remains.") (citations omitted; cleaned up); *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) ("[T]he mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists.").

Nor do we think that the Navy's conduct "raises suspicions of 'litigation posturing.'" *Yarls*, 905 F.3d at 910. Litigation posturing typically involves some sign of bad faith or insincerity. *See, e.g., Texas v. Biden*, 20 F.4th 928, 962–64 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022) (finding voluntary cessation where government "repeatedly exhibited gamesmanship in its decisionmaking" by hiding evidence and engaging in

---

[7] The Navy argues that voluntary cessation does not apply merely because it acted *involuntarily*—that is, the Navy opposed the NDAA and rescinded the mandate only at Congress's command. We need not address this argument. Whether or not the Navy rescinded the mandate involuntarily, it took other actions to remedy Plaintiffs' asserted harms that the NDAA did not expressly require: namely, treating unvaccinated and vaccinated servicemembers alike for purposes of deployment, assignment, and operational decisions. We express no opinion on whether the appeal would be moot if the Navy had only rescinded the mandate but done nothing more.

11

"eleventh-hour" policy changes); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 284 (5th Cir. 2012) (amending challenged law "the night before oral argument" did not moot case); *Sossamon*, 560 F.3d at 325 (requiring "evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct"). We see no signs of such gamesmanship here.

The Navy rapidly complied with the NDAA. It then promulgated multiple binding policies going beyond what Congress required to eradicate the effects of the mandate. It has even expressly assured that "[u]nder no circumstances shall a Commander mandate that any Navy Service member receive the COVID-19 vaccination" and that "COVID-19 vaccination status shall not be a consideration in assessing individual service member suitability for deployment or other operational missions." NAVADMIN 038/23 (Feb. 15, 2023). Those official assurances assuage any concern that the Navy is trying to duck judicial scrutiny. *See Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 572 (5th Cir. 2018) (voluntary cessation inapplicable "when a government entity assures a court of continued compliance, and the court has no reason to doubt the assurance").[8]

In sum, we cannot assume, without evidence to the contrary, that the upper echelons of the Navy, including the Secretary of the Navy, issued the post-rescission policies with an eye toward resuming the challenged conduct as soon as the courts were done. Accordingly, we adhere to the presumption that "formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325. The voluntary cessation exception does not apply here.

---

[8] We therefore respectfully disagree with our dissenting colleague that the Navy is not entitled to the normal presumption, well-settled in our precedent, that a government entity acts in good faith when it ceases challenged conduct. *Post*, at 2.

2.

Alternatively, Plaintiffs argue that this appeal falls into the exception for controversies that are capable of repetition yet evade judicial review. This exception applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020) (alterations in original) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)). It applies "only in exceptional situations." *Ibid.* (quoting *Kingdomware*, 579 U.S. at 170).

We need not consider this exception, however, because the issues Plaintiffs raise can still be litigated in the district court and appealed after a final judgment, assuming they remain justiciable. The capable-of-repetition exception "is inapplicable in those situations in which the issues underlying the moot appeal are *not* moot in the case remaining before the district court." *Marilyn T., Inc. v. Evans*, 803 F.2d 1383, 1385 (5th Cir. 1986*), abrogated on other grounds by Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991); *see also Indep. Party of Richmond Cnty. v. Graham*, 413 F.3d 252, 256 (2d Cir. 2005). The mootness of this interlocutory appeal does not prevent the district court from ruling on any of Plaintiffs' claims that remain justiciable. *See Marilyn T.*, 803 F.2d at 1385.

C.

Finally, we decline the Navy's invitation to vacate our motion panel's published opinion denying a stay pending appeal. *U.S. Navy Seals 1-26*, 27 F.4th 336. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *ODonnell v. Salgado*, 913 F.3d 479, 481 (5th

13

Cir. 2019) (per curiam) (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994)). The Navy has not argued, much less shown, that the public interest would be served by vacatur.[9]

\*\*\*

In sum, this interlocutory appeal is moot because the Navy's vaccine policies challenged here have been rescinded and because no exception to mootness applies. That does not end the litigation, however. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981). Plaintiffs' case remains before the district court, which will decide in the first instance whether any of Plaintiffs' claims are justiciable. We express no view on that question.

IV.

We DISMISS the appeal as moot and REMAND for further proceedings consistent with this opinion.[10]

---

[9] The partially concurring opinion would vacate the stay panel's opinion under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). But "vacatur of a prior stay-panel opinion once a case becomes moot on appeal is inappropriate" under *Munsingwear* "because that stay-panel opinion cannot spawn binding legal consequences regarding the merits of the case." *Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 795 (11th Cir. 2020) (emphasis removed); *see also Hand v. Desantis*, 946 F.3d 1272, 1275 n.5 (11th Cir. 2020); *F.T.C. v. Food Town Stores, Inc.*, 547 F.2d 247, 249 (4th Cir. 1977); *Serv. Emps. Int'l Union Loc. 1 v. Husted*, 531 F. App'x 755, 756 (6th Cir. 2013).

[10] There is no need to vacate the preliminary injunctions because they no longer have any practical effect on the parties. "[I]f the case remains alive in the district court, it is sufficient to dismiss the appeal without directing that the injunction order be vacated." 13C ALAN WRIGHT, ARTHUR MILLER, & EDWARD H. COOPER, FED. PRAC. AND PROC. § 3533.10.3 (3d ed. April 2023). Indeed, dismissal without vacatur is the "usual practice" for interlocutory appeals, and we have no cause to deviate. *See Fleming v. Gutierrez*, 785 F.3d 442, 449 (10th Cir. 2015); *Democratic Exec. Comm. of Fla.*, 950 F.3d at 795; *Hous. Works, Inc. v. City of New York*, 203 F.3d 176, 178 (2d Cir. 2000); *McLane v. Mercedes-Benz of N. Am., Inc.*, 3 F.3d 522, 524 n.6 (1st Cir. 1993); *see also Marilyn T.*, 803 F.2d at 1385.

No. 22-10077
c/w No. 22-10534

James E. Graves, Jr., *Circuit Judge*, concurring in part and dissenting in part:

I concur in parts I.B, II, III.A, III.B., and IV of the majority opinion. Because I would vacate the stay panel opinion under *United States v. Munsingwear, Inc.*, I respectfully dissent from part III.C of the opinion. 340 U.S. 36, 41 (1950) ("[vacatur] is commonly utilized in precisely this situation to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences."). In *Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, the Eleventh Circuit declined to vacate a stay-panel opinion because "the necessarily tentative and preliminary nature of a stay-panel opinion precludes the opinion from having an effect outside that case." 950 F.3d 790, 795 (11th Cir. 2020). However, it elaborated that vacatur of a stay panel opinion may be warranted in "a rare case where a party could identify any ruling within a stay-panel opinion that would have precedential effect beyond the preliminary decision on the stay." *Id.* at n.2. This stay panel opinion presents such a rare case. It is a published decision, so its analysis and application of *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) has precedential effect beyond its preliminary decision on the stay. While we would not have been bound by that analysis in reaching a final decision on the merits, the appeal was mooted before we had that opportunity. Since the Navy can no longer seek review of the published stay panel opinion, the public interest would be served by its vacatur. *Munsingwear*, 340 U.S. at 41; *see also United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) ("When a case becomes moot on appeal, whether it be during initial review or in connection with consideration of a petition for rehearing or rehearing en banc, this court generally vacates the District Court's judgment, vacates any outstanding panel decisions, and remands to the District Court with direction to dismiss.").

15

No. 22-10077
c/w No. 22-10534

JAMES C. HO, *Circuit Judge*, dissenting:

History will record that, in this battle over the Navy's COVID-19 vaccination mandate, the Navy SEALs won multiple victories, while the Navy suffered repeated losses. First, the SEALs vindicated their religious liberty claims by securing a preliminary injunction. *See U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022). Next, the Navy asked our court for a stay, but lost unanimously. *See U.S. Navy SEALs 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022). Unfortunately (for the Navy SEALs), the Supreme Court responded by awarding a partial stay to the Navy, over the objection of three Justices. *See Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022). But then Congress stepped in to support the SEALs. *See* James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571–72 (2022).

Yet the Navy continued to resist. The Secretary of Defense maintained his fervent opposition to Congress's repeal of his mandate. He also insisted that, notwithstanding Congress, the entire Armed Forces, including the Navy, could continue to discriminate based on vaccination status in deployment and other operational decisions. *See* Lloyd Austin, *Rescission of August 24, 2021 and November 30, 2021 Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed Forces* (Jan. 10, 2023).

Even during oral argument in this appeal, the Navy refused to admit illegality or assure the SEALs that their religious convictions would be respected in the future. It was only *after* oral argument that the Navy abruptly abandoned its discrimination policy, in an obvious effort to evade our review by purporting to render this proceeding moot. *See, e.g.*, *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 284–86 (5th Cir. 2012) (change of government policy "the night before oral argument" did not moot case).

16

No. 22-10077
c/w No. 22-10534

If this was a confession of error—if this sudden policy change was sincere rather than strategic—the Navy could just ask us to dismiss its appeal. But the Navy has not confessed error. To the contrary, the Navy by all accounts stands by its position—indeed, it asks us to vacate the preliminary injunction—based on a new policy it can rescind unilaterally at any time, without legislation or even the need for notice and comment.

"[A] defendant cannot automatically moot a case"—and thereby avoid accountability—"simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "[S]ubsequent events [must] make it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Trinity Lutheran Church of Columbia, Inc., v. Comer*, 137 S.Ct. 2012, 2019 n.1 (2017) (cleaned up) (emphasis added). That's because an official "could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already*, 568 U.S. at 91.

The majority says we should presume the military's good faith. *Ante*, at 10–11. But the military's record on these issues does not inspire trust. We should be "suspicious . . . of officials who try to avoid judicial review by voluntarily mooting a case"—especially in the absence of an admission of illegality or credible assurance of future compliance. *Tucker v. Gaddis*, 40 F.4th 289, 295 (5th Cir. 2022) (Ho, J., concurring). *See also id.* at 295–96.

That said, if there is any silver lining here, perhaps it's that the majority appears to leave it open for the district court on remand to conclude that the SEALs should ultimately prevail in this case. *See ante*, at 13 ("the issues Plaintiffs raise can still be litigated in the district court"); *id.* at 14.

It's been said that "cowards never start, the weak never finish, winners never quit." These faithful SEALs have shown that they will not quit—and that they deserve to win.

17