# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2022

Lyle W. Cayce
Clerk

No. 22-10077

---

U.S. Navy Seals 1-26; U.S. Navy Special Warfare
Combatant Craft Crewmen 1-5; U.S. Navy Explosive
Ordnance Disposal Technician 1; U.S. Navy Divers 1-3,

*Plaintiffs—Appellees,*

*versus*

Joseph R. Biden, Jr., in his official capacity as
President of the United States of America; Lloyd
Austin, Secretary, U.S. Department of Defense,
individually and in his official capacity as United
States Secretary of Defense; United States
Department of Defense; Carlos Del Toro, individually
and in his official capacity as United States Secretary
of the Navy,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-1236

---

Before Jones, Duncan, and Engelhardt, *Circuit Judges.*

*Per Curiam*:

The district court preliminarily enjoined the Department of Defense
("DoD"), United States Secretary of Defense Lloyd Austin, and United

States Secretary of the Navy Carlos Del Toro from enforcing certain COVID-19 vaccination requirements against 35 Navy special warfare personnel and prohibited any adverse actions based on their religious accommodation requests.[1]  It later declined to stay the injunction. Defendants now seek a partial stay pending appeal insofar as the injunction precludes them from considering Plaintiffs' vaccination statuses "in making deployment, assignment and other operational decisions."  The Navy has granted hundreds of medical exemptions from vaccination requirements, allowing those service members to seek medical waivers and become deployable.  But it has not accommodated *any* religious objection to *any* vaccine in seven years, preventing those seeking such accommodations from even being considered for medical waivers.  We DENY Defendants' motion.

## I. Background

### A.

President Biden "direct[ed] the [DoD] to look into how and when they [would] add COVID-19 vaccination to the list of required vaccinations for members of the military."  Thereafter, the DoD and the Navy issued a serious of orders and directives implementing mandatory COVID-19 vaccine requirements.

Pertinent to this case, Secretary Del Toro issued "ALNAV 062/21," which ordered all "active duty Service Members . . . to be fully vaccinated within 90 days" and "all Reserve Component Service Members . . . to be fully vaccinated within 120 days."  Secretary Del Toro's order "exempted

---

[1] At least two other district courts have recently enjoined the same, or similar, polices with respect to other service members. *See Air Force Officer v. Austin*, ____ F. Supp. 3d ____, No. 5:22-cv-00009-TES, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022); *Seal v. Biden*, No. 8:21-cv-2429-sdm-tgw, 2022 WL 520829 (M.D. Fla. Feb. 18, 2022).  Two other courts found similar challenges non-justiciable. *See Church v. Biden*, No. 21-2815 (CKK), 2021 WL 5179215 (D.D.C. Nov. 8, 2021); *Robert v. Austin*, No. 21-cv-02228-RM-STV, 2022 WL 103374 (D. Colo. Jan. 11, 2022).

from mandatory vaccination" service members "actively participating in COVID-19 clinical trials." His order warned that "failure to comply is punishable as a violation of a lawful order" and "may result in punitive or adverse administrative action or both." It also authorized the Chief of Naval Operations and Commandant of the Marine Corps "to exercise the full range of administrative and disciplinary actions to hold non-exempt Service Members appropriately accountable." Such actions "include, but [are] not limited to, removal of qualification for advancement, promotions, reenlistment, or continuation, consistent with existing regulations, or otherwise considering vaccination status in personnel actions as appropriate."

The next day, consistent with Secretary Del Toro's order, the Navy issued "NAVADMIN 190/21," which "provides guidance" on implementing the vaccine mandate within the Navy. NAVADMIN 190/21 states that "COVID-19 vaccination is mandatory for all DoD service members who are not medically or administratively exempt." Religious accommodations fall under administrative exemptions. Again, "service members who are actively participating in COVID-19 clinical trials are exempt from mandatory vaccination against COVID-19." NAVADMIN 190/21 also specifies that the "COVID Consolidated Disposition Authority (CCDA)" will determine "ultimate disposition" of Navy service members who remain unvaccinated. The CCDA "serve[s] as the central authority for adjudication and will have at his or her disposal the full range of administrative and disciplinary actions."

The Navy, moreover, mandated FDA-approved COVID-19 vaccinations under its Manual of the Medical Department ("MANMED"). MANMED § 15-105, covering special operations service members, provides: "[special operations] designated personnel refusing to receive recommended vaccines . . . based solely on personal or religious beliefs are disqualified.

No. 22-10077

This provision does not pertain to medical contraindications or allergies to vaccine administration." Service members who are "disqualified" under the MANMED have been rendered "non-deployable."

The Commander of Naval Special Warfare Command later issued "Trident Order #12." The order set a deadline of October 17, 2021, for unvaccinated service members to receive their first jab or submit an exemption request. And it provides that "exemptions for medical and/or administrative (including religious) reasons will be adjudicated via service policies." Further, "special operations designated personnel (SEAL and SWCC) refusing to receive recommended vaccines based solely on personal or religious beliefs will still be medically disqualified." But, like MANMED § 15-105(3)(n)(9), Trident Order #12 "does not pertain to medical contraindications or allergies to vaccine administration." Any "waiver from medical requirements for special operations qualification requires a separate waiver that is in addition to waiver of the COVID-19 vaccine requirement for all service members."

The Navy subsequently issued "NAVADMIN 225/21," designating the Chief of Naval Personnel as the CCDA and providing procedural guidance for administrative disposition of unvaccinated Navy service members. NAVADMIN 225/21 mandates "administrative separation" of all "Navy service members refusing the COVID-19 vaccination, absent a pending or approved exemption." It also authorizes commanding officers to "to temporarily reassign Navy service members who refuse the COVID-19 vaccine, regardless of exemption status, based on operational readiness or mission requirements." In addition, "Commands shall not allow those refusing the vaccine to promote/advance, reenlist, or execute orders, with the exception of separation orders, until the CCDA has completed disposition of their case." Commanders "shall delay the promotion of any officer" and "withhold the advancement of any enlisted member" who

refuses the vaccine. Service members separated for refusing the vaccine "will not be eligible for involuntary separation pay and will be subject to recoupment of any unearned special or incentive pays." The CCDA may also "seek recoupment of applicable bonuses, special and incentive pays, and the cost of training and education for service members refusing the vaccine."

The Navy finally issued "NAVADMIN 256/21" to specify that "service members with approved or pending COVID-19 vaccination exemption requests shall not be processed for separation or be subject to . . . other administrative actions . . . due solely to their lack of COVID-19 vaccination." Unvaccinated service members, however, "regardless of exemption status, may be temporarily reassigned . . . based on operational readiness and mission requirements." NAVADMIN 256/21 further requires service members whose COVID-19 vaccination exemption requests are denied to receive the vaccine within five days of the denial, or else they "will be processed for separation and be subject to . . . other administrative actions."

## B.

Plaintiffs are 35 Navy service members assigned to Naval Special Warfare Command units. They comprise over two dozen SEALs, plus Special Warfare Combatant Craft Crewmen (SWCC), an Ordnance Disposal Technician (EOD), and three Divers (collectively, "Plaintiffs"). In November 2021, they sued President Biden, Secretary Austin, Secretary Del Toro, and the DoD (collectively, "Defendants"), challenging the Navy's COVID-19 vaccine policies, on their face and as applied, under the Religious

No. 22-10077

Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb *et seq.*, and the free exercise clause of the First Amendment.[2]

Shortly thereafter, Plaintiffs moved for a preliminary injunction. The district court held a hearing at which Plaintiffs presented live testimony and other evidence. We describe in detail the relevant evidence in the record and the district court's factual findings.

**i.**

As of November 2021, 99.4% of active-duty Navy service members had been fully vaccinated against COVID-19. Before and after vaccines became available, several Plaintiffs deployed overseas and completed missions, while others served as instructors in training commands. Operations continued without issue, as many Plaintiffs practiced mitigation techniques—social distancing, testing, quarantining, etc. Defendants identify no instance where a Plaintiff's vaccination status—or any service member's vaccination status—compromised a special warfare mission.

The Navy follows a six-phase, 50-step process to adjudicate religious accommodation requests.[3] During the first 13 steps, staff members verify the required documents submitted with the request. At steps 14 and 15, staff members add the requesting service member's personal information to a "disapproval template" form. There apparently is no approval template. At

---

[2] Plaintiffs initially brought their claims against Secretaries Austin and Del Toro in both their individual and official capacities. And they also asserted claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06. They have, however, since filed an amended complaint against the remaining individual Defendants in their official capacities alone without bringing any APA claims. President Biden is not named in the amended complaint.

[3] *See* Deputy Chief of Naval Operations Standard Operating Procedure for Religious Accommodations (dated Nov. 2021).

step 33, staff members transmit an internal memorandum to Vice Admiral John B. Nowell, requesting that he "sign . . . letters disapproving immunization waiver requests based on sincerely held religious beliefs." At steps 35 to 38, staff members review the accommodation request and list details in a spreadsheet with other requests for Vice Admiral Nowell to review. But by then, the disapproval is fully teed-up: the disapproval letter has been written; the disapproval and religious accommodation request has been packaged with similar requests, and the internal memorandum to Vice Admiral Nowell requesting disapproval has been drafted.

In December 2021, the Navy reported receiving 2,844 requests for religious accommodations. A more recent report suggests that more than 4,000 active duty and Navy Reserve sailors have submitted such requests. The Navy has denied them all. Indeed, during the last seven years, the Navy has not granted a single religious exemption from any vaccination. Yet, with respect to the COVID-19 vaccine, it has approved at least "10 permanent medical exemptions, 259 temporary medical exemptions, and 59 administrative exemptions for active duty sailors, along with seven temporary medical exemptions and 24 administrative exemptions for Navy Reserve sailors." At least 17 of the 259 temporary medical exemptions were granted to service members assigned to Naval Special Warfare.

### ii.

Plaintiffs represent various Christian denominations within the Catholic, Eastern Orthodox, and Protestant Churches. They "each object to

receiving a COVID-19 vaccination based on their sincerely held religious beliefs."[4]

Plaintiffs each filed a request for a religious accommodation, which describes his or her sincere religious beliefs and the substantial burden placed on them by the Navy's vaccine mandate. Many are supported by chaplains' memoranda confirming the basis and sincerity of Plaintiffs' beliefs and positions with respect to the COVID-19 vaccine.

For purposes of this litigation, Plaintiffs also filed declarations, confirming their religious beliefs and emphasizing that they do not object to undertaking COVID-19 mitigation measures such as masking, social distancing, and regular testing. and their experiences during the accommodation-request process.

The declarations also describe their experiences during the religious accommodation process. Various commanders told several Plaintiffs that they risked losing their special warfare device, the SEAL Trident, if they requested a religious accommodation. Many were also declared "medically disqualified," or "non-deployable," simply as a result of submitting their requests. Many Plaintiffs have also become ineligible for travel, transfer to other posts including trainings, and advancement in leadership simply because they are unvaccinated and have requested religious accommodations. For example, U.S. Navy SEAL 13 was removed from his leadership position, setting him back at least two years in progressing to the next rank. And U.S. Navy Special Warfare Combatant Craft Crewman 1 was denied training and told by a commander that "the Navy does not want to

---

[4] Their objections include, *inter alia*, the vaccines' ties to aborted fetal cell lines, divine instruction not to receive the vaccine, and the mRNA vaccines' altering the divine creation of their body by unnaturally inducing production of spike proteins.

spend additional money training someone it is going to lose." Plaintiffs suggest that if the Navy discharges them and seeks recoupment of their training and education costs, those expenses could exceed one million dollars each.

Plaintiffs claim their accommodation requests are futile because denial is a predetermined outcome. U.S. Navy SEAL 2's chain of command advised him that "all religious accommodation requests will be denied," because "senior leadership . . . has no patience or tolerance for service members who refuse COVID-19 vaccination for religious reasons and want them out of the SEAL community," and that "even if a legal challenge is somehow successful, the senior leadership of Naval Special Warfare will remove [his] special warfare designation." U.S. Navy SEAL 5 averred that "[n]umerous comments from [his] chain of command indicate[d] . . . that there [would] be a blanket denial of all religious accommodation requests regarding COVID-19 vaccination." US Navy SEAL 8 averred that his "chain of command . . . made it clear that [his] request [would] not be approved and . . . provided [him] with information on how to prepared for separation from the U.S. Navy." U.S. Navy SEAL 11 declared that during a chief's meeting, his command master chief told him that "anyone not receiving the COVID-19 vaccine is an 'acceptable loss' to the Naval Special Warfare (NSW) community" and the "legal department used language such as 'when they get denied,' not 'if they get denied.'"

### iii.

Three Plaintiffs testified at the preliminary injunction hearing. *First*, U.S. Navy SEAL 3 is stationed as an instructor for a medical training course in Mississippi. His missions and duties have been accomplished successfully since 2020 notwithstanding COVID-19. His chaplain supported his request for religious accommodation, and his commanding officer recommended

No. 22-10077

approval. In doing so, his commanding officer explained that "[t]he training environment [of the command] often requires close quarters contact for prolonged periods of time, however, successful mitigation measures have been implemented since the onset of COVID-19 to ensure the safety of the staff and students." Further, "[t]he cumulative impact of repeated accommodations of religious practices of a similar nature would mean my command *is still able* to safely accomplish its mission and protect the health and safety of its members" (emphasis added). While his request was pending, U.S. Navy SEAL 3 was removed from his duty as an instructor to prepare for separation.

As U.S. Navy SEAL 3's request moved up the chain of command, the Commander of Naval Special Warfare recommended disapproval without explanation. The Deputy Chief of Naval Operations then formally disapproved his request. He explained in generic terms that U.S. Navy SEAL 3 would "inevitably be expected to live and work in close proximity with [his] shipmates," and disapproval was "the least restrictive means available to preserve the [DoD's] compelling interest in military readiness, mission accomplishment and the health and safety of military Service Members." The disapproval offered no explanation specific to U.S. Navy SEAL 3's request.

*Second*, U.S. Navy SEAL 2 is also stationed as an instructor for a special operations tactical program in Mississippi. He explained that teams around the country have deployed and were "able to successfully accomplish their mission on those deployments through other mitigation tactics with respect to COVID-19 before the vaccine." And his specific training command has successfully accomplished its missions notwithstanding COVID-19.

No. 22-10077

U.S. Navy SEAL 2's chaplain and two Catholic bishops supported his accommodation request. His commanding officer also recommended approval, for the same reasons stated in U.S. Navy SEAL 3's recommended approval. But the Commander of Naval Special Warfare recommended disapproval without explanation—as he did for U.S. Navy SEAL 3. The Deputy Chief of Naval Operations subsequently disapproved U.S. Navy SEAL 2's request using the same boilerplate disapproval form with no information specific to his request. U.S. Navy SEAL 2 testified that he had "seen a number of these denial letters" and "[e]very one of them [he has] seen [is] identical." His appeal remains pending.

U.S. Navy SEAL 2 testified to adverse actions taken against unvaccinated service members requesting religious accommodations. He explained that "personnel from different commands have been relieved of their milestone positions that, you know, essentially railroad their careers." Further, service members "have been pulled from their commands," which can set their careers back two or three years, and "been made to do menial labor tasks, cleaners, sweeping clean grounds, in a temporary assigned duty from their actual parent command."

*Third*, U.S. Navy EOD Technician 1 testified that he deployed to South Korea in support of a special operations command in early 2020 during a significant COVID-19 outbreak. His team completed 76 joint service engagements with 21 different U.S. and Korean partner forces, all while maintaining effective COVID-19 mitigation tactics in compliance with CDC guidelines. He even received a deployment joint service accommodation medal from the special operations command in Korea for COVID-19 mitigation.

U.S. Navy EOD Technician 1 met with his superiors to discuss his religious accommodation request and his commanding officer's position,

which was to deny it. They told him that if he received an accommodation, "they probably could not find a place for [him] within the community as a senior enlisted member." He believes he "was being coerced into receiving the vaccine." They asked, "with [his] religious beliefs, if [he] thought that martyrs would be remembered."

The Commanding Officer of the Naval School EOD recommended disapproval of U.S. Navy EOD Technician 1's request, explaining that his "reluctance to obtain vaccination has the potential to create total force health ramifications" due to his "close quarters, hands-on training that cannot be mitigated with COVID-19 protocols." Without a fully vaccinated staff and student population, the recommendation explained, the unit "risk[ed] not being able to fully execute its mission." The Deputy Chief of Naval Operations subsequently disapproved the accommodation request on the same boilerplate form used to disapprove the requests of U.S. Navy SEALs 2 and 3.

### iv.

Following the hearing, the district court preliminarily enjoined Secretary Austin, Secretary Del Toro, and the DoD from "applying MANMED § 15-105(3)(n)(9); NAVADMIN 225/21; Trident Order #12; and NAVADMIN 256/21 to Plaintiffs."[5] *U.S. Navy Seals 1–26 v. Biden*, No. 4:21-cv-01236-O, 2022 WL 34443, *14 (N.D. Tex. Jan. 3, 2022) (O'Connor, J.). It further enjoined those Defendants "from taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation." *Id.* The court excused Plaintiffs' failure to exhaust military remedies as futile, finding the Navy's religious accommodation process is "an empty formality" because "the denial of each request is

---

[5] The district court also dismissed President Biden from the suit.

No. 22-10077

predetermined." *Id.* at *4; *see also id.* at *1 (describing process as "theater" and finding the Navy "rubber stamps each denial"); *id.* at *5 ("[T]he Plaintiffs' requests are denied the moment they begin."). As to Plaintiffs' likelihood of success on their RFRA claims,[6] the court found that Defendants could not show a compelling interest in vaccinating Plaintiffs because the religious accommodation process lacks "individualized assessment" and is underinclusive, "includ[ing] carveouts for those participating in clinical trials and those with medical contraindications and allergies to vaccines," but not those with religious objections. *Id.* at *10. Defendants filed a timely interlocutory appeal.

After the preliminary injunction took effect, the Navy formally denied U.S. Navy SEAL 16's appeal of his initially rejected religious accommodation request. The denial appears to be a boilerplate letter, mentioning nothing specific about SEAL 16's request. Plaintiffs submit that "SEAL 24 has yet to receive his denial, but his command informed him that his appeal was denied on February 11."

## v.

Defendants moved the district court to stay the preliminary injunction "to the extent the order precludes Defendants from making the assignment and reassignment decisions that the military deems appropriate, taking into account Plaintiffs' vaccination status, including with respect to deployment and training." The court denied the motion, but it clarified that the preliminary injunction:

---

[6] The district court also concluded that the Defendants' actions violated the Plaintiffs' First Amendment right to free exercise of religion. We need not review that portion of the district court's ruling.

[does] not require[] Defendants to make any particular personnel assignments. All strategic decisions remain in the hands of the Navy. Rather, the preliminary injunction simply prohibits adverse action against Plaintiffs based on their requests for religious accommodation. This Court will not—and cannot—require the Navy to place a particular SEAL in a particular training program. But it can—and must—prevent the Navy from taking punitive action against that SEAL by blocking him from the training program he would otherwise attend.

Defendants subsequently moved this court to partially stay the preliminary injunction pending appeal "insofar as it precludes the Navy from considering plaintiffs' vaccination status in making deployment, assignment, and other operational decisions."[7] They maintain that "[f]orcing the Navy to deploy plaintiffs while they are unvaccinated threatens the success of critical missions and needlessly endangers the health and safety of other service members."

## II. Discussion

"Before addressing the merits, we must be sure that this is a justiciable case or controversy under Article III." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15, 130 S. Ct. 2705, 2717 (2010). If it is not, our inquiry will end. If it is, then we must consider whether Defendants have satisfied the four factors required to grant a stay pending appeal. *See Nken v. Holder*, 556 U.S. 418, 426, 129 S. Ct. 1749, 1756 (2009) (quoting *Hilton v. Braunskill*, 481 U.S.

---

[7] While the interlocutory appeal and emergency motion have been pending in this court, proceedings in the district court continue. Plaintiffs sought class certification and moved for a class-wide preliminary injunction. They also sought a show cause order, arguing that "Defendants are disregarding and willfully violating [the preliminary injunction] by continuing to apply the same policies and continuing to impose the same injuries on Plaintiffs that initially warranted injunctive relief[.]" Defendants have meanwhile moved to dismiss or, alternatively, transfer venue.

770, 776, 107 S. Ct. 2113, 2119 (1987)). This dispute is justiciable. But Defendants have not carried their burden to warrant the issuance of a stay.

## A.

Congress rendered justiciable Plaintiffs' claims under RFRA, which applies to every "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States[.]" 42 U.S.C. § 2000bb-2(1). RFRA, in turn, sets the standards binding every department of the United States to recognize and accommodate sincerely held religious beliefs. It undoubtedly "applies in the military context." *United States v. Sterling*, 75 M.J. 407, 410 (C.A.A.F. 2016), *cert. denied*, 137 S. Ct. 2212 (2017). This makes sense because service members "experience increased needs for religion as the result of being uprooted from their home environments, transported often thousands of miles to territories entirely strange to them, and confronted there with new stresses that would not otherwise have been encountered if they had remained at home." *Katcoff v. Marsh*, 755 F.2d 223, 227 (2nd Cir. 1985). Federal courts are therefore empowered to adjudicate RFRA's application to these Plaintiffs.

Notwithstanding RFRA's broad scope, the district court below, as well as other courts, have believed themselves bound by a judicial abstention doctrine created in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). In that case, the court sought to identify situations in which federal courts, faced with claims implicating internal military affairs, must withhold adjudication in favor of military decision-making. *Mindes* abstention is rooted in the federal common law principle of "comity." *Mindes*, 453 F.2d at 199. But it is likely that, following RFRA's enactment, abstention based on the *Mindes*

No. 22-10077

test is no longer permissible.[8] RFRA "operates as a kind of super statute, displacing the normal operation of other federal laws[.]" *Bostock v. Clayton County*, 140 S. Ct. 1731, 1754 (2020). It would not be a stretch to conclude that RFRA must also displace a judge-created abstention doctrine. "[W]hen Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." *City of Milwaukee v. Illinois*, 451 U.S. 304, 314, 101 S. Ct. 1784, 1791 (1981).

In an abundance of caution and deferring to circuit precedent, however, we consider whether *Mindes* abstention ought to apply here. *Mindes* requires courts to "examine the substance of [a plaintiff's] allegation [implicating internal military affairs] in light of the policy reasons behind nonreview of military matters."[9] 453 F.2d at 201. In doing so, courts must first determine whether "[t]he plaintiff has alleged a deprivation of constitutional rights or that the military violated statutes or its own regulations[.]" *Meister v. Tex. Adjutant Gen.'s Dep't*, 233 F.3d 332, 339 (5th Cir. 2000) (citing *Mindes*, 453 F.2d at 201). Courts must next assess whether the plaintiff has exhausted all available intra-service corrective measures. *Mindes*, 453 F.2d at 201. If the plaintiff satisfies both criteria, then the court considers a series of factors, which amount to a synopsis of pre-*Mindes* case

---

[8] A respected treatise disagrees with *Mindes* on other grounds, stating that "[t]here is nothing in the power of Congress to make rules for the government and regulation of the land and naval forces, nor in the powers of the President as commander in chief, that ousts the power of courts to protect the constitutional rights of individuals against improper military actions." 13C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2942 n.80 (3d ed. Apr. 2021 update).

[9] Among a number of reasons for imposing an exhaustion requirement, the court stated that "the greatest reluctance to accord judicial review [of internal military affairs] has stemmed from the proper concern that such review might stultify the military in the performance of its vital mission." *Id*. at 199.

No. 22-10077

law that had adjudicated claims arising from military service: (1) "[t]he nature and strength of the plaintiff's challenge to the military determination[;]" (2) "[t]he potential injury to the plaintiff if review is refused[;]" (3) "[t]he type and degree of anticipated interference with the military function[;]" and (4) "[t]he extent to which the exercise of military expertise or discretion is involved." *Id*. at 201-02.

### i.

Plaintiffs satisfy the first threshold *Mindes* inquiry because they allege constitutional violations of the First Amendment and RFRA, which "secures Congress' view of the right to free exercise under the First Amendment[.]" *Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020).

With respect to the second inquiry, this court has held that "[i]n the military context, the exhaustion requirement promotes the efficient operation of the military's judicial and administrative systems, allowing the military an opportunity to fully exercise its own expertise and discretion prior to any civilian court review." *Von Hoffburg v. Alexander*, 615 F.2d 633, 637-38 (5th Cir. 1980) (citing *Hodges v. Callaway*, 499 F.2d 417 (5th Cir. 1974)). Nonetheless, exhaustion is unnecessary if, *inter alia*, the administrative remedy is futile and plaintiffs raise substantial constitutional claims. *Id*. at 638 (citations omitted).

Plaintiffs are exempted from exhausting their administrative remedies for both of these reasons.[10] The Navy has not accommodated any religious request to abstain from any vaccination in seven years, and to date it has denied all religiously based claims for exemption from COVID-19

---

[10] The two Plaintiffs whose appeals have been finally adjudicated require no such exemption, so this analysis only pertains to the 33 who have not received any final determinations.

vaccination. It is true that futility is not a function of the likely ultimate success of administrative exhaustion. But evidence, recited previously and not meaningfully challenged here, suggests that the Navy has effectively stacked the deck against even those exemptions supported by Plaintiffs' immediate commanding officers and military chaplains. This is sufficiently probative of futility.[11] Further, as explained more fully below, Plaintiffs raise substantial, legally clear-cut questions under RFRA. Courts are specifically equipped to address RFRA claims and, by the same token, the issues are less suitable for administrative adjudication. Plaintiffs have thus satisfied the threshold criteria required by *Mindes*. But a final justiciability determination depends on considering the four additional *Mindes* points.

## ii.

The district court determined that each of the four additional *Mindes* considerations favors justiciability. We agree.

The constitutional underpinnings and merit of Plaintiffs' claims weigh in favor of granting judicial review. Constitutional claims are "normally more important than those having only a statutory or regulatory base[.]" *Mindes*, 453 F.2d at 201. Indeed, this court has favorably cited the Ninth Circuit's determination that "[r]esolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board." *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973); *see Von Hoffburg*, 615 F.2d at 638 (citing *Downen*,

---

[11] Unlike in this case, the Marines in *Church v. Biden* "advanced no argument or evidence demonstrating that obtaining review of any future discipline or removal pursuant to ordinary military review procedures would be futile or inadequate." 2021 WL 5179215, at *11. Similarly, the court in *Robert v. Austin*, found that "Plaintiffs' contention that they may be subject to discipline for refusing to take a vaccine appear[ed] to be based on nothing more than speculation." 2022 WL 103374, at *3. Plaintiffs here have done the exact opposite.

No. 22-10077

481 F.2d at 643). This is especially so when a plaintiff's claims are "founded on infringement of specific constitutional rights[.]" *NeSmith v. Fulton*, 615 F.2d 196, 201-02 (5th Cir. 1980) (citations omitted). Plaintiffs allege specific, and far from frivolous, violations of their free exercise rights under both the First Amendment and RFRA. Thus, the nature and strength of Plaintiffs' claims weigh in favor of judicial resolution.

Plaintiffs also face irreparable harm if judicial review is denied. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citation omitted). "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976) (plurality opinion)). "This principle applies with equal force to the violation of [RFRA] rights because [RFRA] enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise."[12] *Id.* (citations omitted). At base, Plaintiffs are staring down even more than "a choice between their job(s) and their jab(s)." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). By pitting their consciences against their livelihoods, the vaccine requirements would crush Plaintiffs' free exercise of religion.

---

[12] *Opulent Life Church* involved claims under Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc, *et seq.*, but "[b]oth RFRA and RLUIPA impose essentially the same requirements as *Sherbert* [*v. Verner*, 374 U.S. 398, 83 S. Ct. 1790 (1963)]" *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1922 (2021) (Barrett, J., concurring); *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 695, 134 S. Ct. 2751, 2761 (2014) (citation omitted) (RLUIPA "imposes the same general test as RFRA but on a more limited category of governmental actions.").

No. 22-10077

The most problematic of the *Mindes* considerations is whether judicial review of Plaintiffs' claims would seriously impede the Navy's performance of its vital duties. Because "there will always be some interference when review is granted," courts ought to abstain only where "the interference would be such as to seriously impede the military in the performance of vital duties[.]" *Mindes,* 453 F.2d at 201. We are aware of the Navy's general objection that federal court resolution of these claims "cause[s] direct and immediate impact to mission execution."[13] But the Navy acknowledges that it has granted hundreds of medical exemptions from the COVID-19 vaccine, at least 17 of which were temporary medical exemptions for those in Naval Special Warfare.[14] Only 35 Plaintiffs seek religious accommodations here. And "5,035 active component and 2,960 Ready Reserve sailors" remained unvaccinated as of January 27, 2022. It is therefore "illogical . . . that Plaintiff[s'] religious-based refusal to take a COVID-19 vaccine would 'seriously impede' military function when the [Navy] has [over 5,000] service members still on duty who are just as unvaccinated as [the Plaintiffs]."[15] *Air Force Officer*, 2022 WL 468799, at *7. In fact, Vice Admiral

---

[13] The commanding officer of two Plaintiffs, however, averred that "the cumulative impact of repeated accommodations of religious practices . . . would mean [his] command is still able to safely accomplish its mission and protect the health and safety of its members."

[14] The Navy's willingness to grant hundreds of medical exemptions undermines its reliance on decisions like *Goldman v. Weinberger*, 475 U.S. 503, 106 S. Ct. 1310 (1986), *abrogated by* 10 U.S.C. § 774(a)-(b). The *Goldman* court held that "the First Amendment does not require the military to accommodate [wearing a yarmulke] in the face of its view that they would detract from the uniformity sought by the dress regulations." *Id.* at 475 U.S. at 509-10, 106 S. Ct. at 1314. The Navy is currently 99.4% uniform in its COVID-19 vaccination status. To the extent that the remaining 0.6% are not uniform, the exemptions granted by the Navy belie its insistence on uniformity in this case.

[15] The Navy had formally discharged 45 sailors for refusing the COVID-19 vaccine as of January 27, 2022.

No. 22-10077

William Merz recently observed that during operations conducted with fully vaccinated personnel, the Omicron variant in particular is "coming and going all the time, [in] very small numbers, and [with] really no operational impact[.]"[16] Significantly, the Navy recently aligned its testing and isolation guidelines with updated, looser CDC protocols, which recommend isolation for those who test positive only "for five days or until symptoms have cleared, depending on which is longer." Such individuals then only have to "wear a mask for an additional five days." Thus, "Navy teams are [] very, very attuned to watching their indications and reacting to [the virus]."[17]

Finally, the extent to which military expertise or discretion is involved does not militate against judicial review. "Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions." *Mindes*, 453 F.2d at 201-02. To be sure, "[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments[.]" *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S. Ct. 2440, 2446 (1973) The Navy may permissibly classify any number of Plaintiffs as deployable or non-deployable for a wide variety of reasons. But if the Navy's plan is to ignore RFRA's protections, as it seems to be on the record before us, courts must intervene because

---

[16] Defendants insist that this quotation is taken out of context. But the "context" they emphasize is based on the article's summary of Admiral Merz's sentiments, not the words of Admiral Merz himself. We rely on the admiral's quoted words.

[17] Also noteworthy concerning the comparative efficacy of vaccination is that the USS Milwaukee was "sidelined" in December 2021 by a COVID-19 outbreak despite having a fully vaccinated crew; and over 15 members of one Plaintiff's entirely vaccinated detachment contracted, or were exposed to, COVID-19 during a training exercise.

No. 22-10077

"[g]enerals don't make good judges—especially when it comes to nuanced constitutional issues."[18] *Air Force Officer*, 2022 WL 468799, at *8.

Accordingly, even under *Mindes*, Plaintiffs' claims are justiciable.

## B.

When considering whether to grant a stay pending appeal, a court must consider:

- *First*, whether the stay applicants have made a strong showing that they are likely to succeed on the merits;

- *Second*, whether the applicants will be irreparably harmed absent a stay;

- *Third*, whether issuance of the stay will substantially injure the other parties; and

- *Fourth*, where the public interest lies.

*Nken*, 556 U.S. at 426, 129 S. Ct. 1756 (quoting *Hilton*, 481 U.S. at 776, 107 S. Ct. at 2119). The first two factors "are the most critical." *Id.* at 434.

### i.

Defendants argue that they are likely to prevail because Plaintiffs' claims are non-justiciable and otherwise lack merit. But we reject non-justiciability, and the district court painstakingly explained why, at a minimum, their RFRA claims are meritorious. We elaborate on the district court's reasoning.

As the Supreme Court has noted, RFRA affords even "greater protection for religious exercise than is available under the First Amendment[]" and provides that the:

---

[18] Judge Tilman E. Self III is a former Army artillery officer. *Id.* at *5.

No. 22-10077

> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

*Holt v. Hobbs*, 574 U.S. 352, 357, 135 S. Ct. 853, 859-60 (2015); 42 U.S.C. § 2000bb-1. "[T]he 'exercise of religion' often involves not only belief and profession but the performance of (or abstention from) physical acts[.]" *Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S. Ct. 1595, 1599 (1990). And "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) (involving RLUIPA). Once a plaintiff demonstrates a substantial burden on his exercise of religion, "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-431, 126 S. Ct. 1211, 1220 (2006) (quoting 42 U.S.C. § 2000bb-1(b)). This is a "high bar." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2392 (2020) (Alito, J., concurring). This already high bar is raised even higher "[w]here a regulation already provides an exception from the law for a particular group[.]" *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 472 (5th Cir. 2014) (citations omitted); *see also Fulton*, 141 S. Ct. at 1878-83.

The Navy does not even dispute that its COVID-19 vaccination requirements substantially burden each Plaintiff's free exercise of religion, but the nature of the injury bears emphasis. Plaintiffs have thoughtfully articulated their sincere religious objections to taking the vaccine itself. Accepting the vaccine would directly burden their respective faiths by forcing

No. 22-10077

them to inject an unremovable substance at odds with their most profound convictions. This injury would outlast their military service, making the decision whether to acquiesce far more difficult than just choosing between "their job(s) and their jab(s)." *BST Holdings*, 17 F.4th at 618. The vaccine requirements principally compete against their faiths and secondarily against their livelihoods. These circumstances impose a substantial burden on Plaintiffs. *See Little Sisters of the Poor*, 140 S. Ct. at 2391 (contraceptive mandate imposed a substantial burden on employers that had religious objections to contraceptives and believed that complying would make them complicit in the provision of contraceptives); *see also Holt*, 574 U.S. at 361, 135 S. Ct. at 862 (RLUIPA context) (a grooming policy "substantially burden[ed] [a prisoner's] religious exercise[]" where he "face[d] serious disciplinary action[]" for contravening that policy).

In an attempt to subordinate Plaintiffs' protected interest, the Navy focuses instead on its institutional interests. Defendants' position is that:

> The Navy has an extraordinarily compelling interest in requiring that service members generally—and these plaintiffs in particular—be vaccinated against COVID-19, both (1) to reduce the risk that they become seriously ill and jeopardize the success of critical missions and (2) to protect the health of their fellow service members.

The Navy has been extraordinarily successful in vaccinating service members, as at least 99.4% of whom are vaccinated.[19] But that general interest is nevertheless insufficient under RFRA. The Navy must instead "scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants." *O Centro*, 546 U.S., at 431, 126 S. Ct. at 1220. "The

---

[19] As the district court explained in denying Defendants' stay motion, statistically speaking, "vaccinated servicemembers are far more likely to encounter other unvaccinated individuals off-base among the general public than among their ranks."

No. 22-10077

question, then, is not whether [the Navy has] a compelling interest in enforcing its [vaccination] policies generally, but whether it has such an interest in denying an exception to [each Plaintiff]." *Fulton*, 141 S. Ct. at 1881. And RFRA "demands much more[]" than deferring to "officials' mere say-so that they could not accommodate [a plaintiff's religious accommodation] request." *Holt*, 574 U.S. at 369, 135 S. Ct. at 866 (RLUIPA context). That is because "only the gravest abuses, endangering paramount interests, give occasion for permissible limitation[]" on the free exercise of religion. *Sherbert v. Verner*, 374 U.S. 398, 406, 83 S. Ct. 1790, 1795 (1963) (internal quotation marks and citations omitted).[20]

Defendants have not demonstrated "paramount interests" that justify vaccinating these 35 Plaintiffs against COVID-19 in violation of their religious beliefs. They insist that "given the small units and remote locations in which special-operations forces typically operate, military commanders have determined that unvaccinated service members are at significantly higher risk of becoming severely ill from COVID-19 and are therefore medically unqualified to deploy." But "[r]outine [Naval Special Warfare] mission risks include everything from gunshot wounds, blast injuries, parachute accidents, dive injuries, aircraft emergencies, and vehicle rollovers to animal bites, swimming or diving in polluted waters, and breathing toxic chemical fumes." There is no evidence that the Navy has evacuated anyone from such missions due to COVID-19 since it instituted the vaccine mandate, but Plaintiffs engage in life-threatening actions that may create risks of equal or greater magnitude than the virus.

---

[20] *Sherbert*, of course, formed the foundation for RFRA. *See Fulton*, 141 S. Ct. at 1922 (Barrett, J., concurring).

More specifically, multiple Plaintiffs successfully deployed overseas before and after the vaccine became available, and one even received a Joint Service Commendation Medal for "safely navigating restricted movement and distancing requirements" while deployed in South Korea between January and June 2020.[21] Plaintiffs also trained other SEALs preparing for deployments at various points during the pandemic while remaining unvaccinated.

The Navy's alleged compelling interest is further undermined by other salient facts. It has granted temporary medical exemptions to 17 Special Warfare members, yet no reason is given for differentiating those service members from Plaintiffs. That renders the vaccine requirements "underinclusive." *Navy Seals 1–26*, 2022 WL 34443, at *10. And "underinclusiveness . . . is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact 'compelling.' " *BST Holdings*, 17 F.4th at 616 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-46, 113 S. Ct. 2217, 2231-34(1993)); *See also Holt*, 574 U.S. at 367, 135 S. Ct. at 865 (RLUIPA context) (a policy was substantially underinclusive where a prison "denied petitioner's request to grow a 1/2-inch beard [for religious reasons] [while permitting] prisoners with a dermatological condition to grow 1/4-inch beards."). Moreover, in none of the letters denying religious accommodations to these Plaintiffs has the Navy articulated Plaintiff-specific reasons for its decisions.[22] Further evidencing that there is a pattern of

---

[21] During this deployment, Navy EOD Technician 1 completed 76 joint service engagements with 21 U.S. and Korean partner forces, all while maintaining effective COVID-19 mitigation tactics in compliance with CDC guidelines.

[22] On the contrary, some of the remarks uttered by superior officers to Plaintiffs could be regarded as outright hostile to their desire for religious accommodations. *See Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1732 (2018).

No. 22-10077

disregard for RFRA rights rather than individualized consideration of Plaintiffs' requests, the Navy admits it has not granted a single religious accommodation. Yet surely, had the Navy been conscientiously adhering to RFRA, it could have adopted least restrictive means to accommodate religious objections against forced vaccinations, for instance, to benefit personnel working from desks, warehouses, or remote locations.

Considering the record as a whole, we agree with the district court that Defendants have not shown a compelling interest to deny religious accommodations to each of these 35 Plaintiffs. Indeed, the "marginal interest" in vaccinating each Plaintiff appears to be negligible; consequently, Defendants lack a sufficiently compelling interest to vaccinate Plaintiffs. *Hobby Lobby*, 573 U.S. at 727, 134 S. Ct. at 2779 (citing *O Centro*, 546 U.S. at 431, 126 S. Ct.at 1220-21).

In the absence of a compelling interest, the first *Nken* factor weighs against granting the requested partial stay.

**ii.**

Defendants also contend that "[b]y requiring the Navy to disregard plaintiffs' unvaccinated status in making deployment, assignment, and other operational decisions, the preliminary injunction irreparably damages the Navy and the public." We disagree.

Despite their concerns, Defendants do not face irreparable harm in the absence of a stay. "[B]ecause the Government has requested a stay pending completion of appellate proceedings, the relevant question is whether the Government will be irreparably harmed *during the pendency of the appeal*." *State v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (emphasis in original). Defendants emphasize that the Navy "must deploy only service members who are at the least risk of becoming severely ill, leaving their units shorthanded and potentially unable to complete missions." In any event, the

No. 22-10077

district court clarified that the preliminary injunction "simply prohibits adverse action against Plaintiffs based on their requests for religious accommodation." Defendants therefore remain able to make decisions based on other neutral factors. And "[e]ven if [Defendants are] correct that long-term compliance with the district court's injunction would cause irreparable harm, [they] present[] no reason to think that [they] cannot comply with the district court's [injunction] while the appeal proceeds."[23] *Biden*, 10 F.4th at 559.

### iii.

Partially staying the preliminary injunction pending appeal would substantially harm Plaintiffs. As we noted, Plaintiffs' First Amendment freedoms are seriously infringed by the Navy's vaccine requirements. *See BST Holdings*, 17 F.4th at 618; *see also Holt*, 574 U.S. at 361, 135 S. Ct. at 862; *Little Sisters of the Poor*, 140 S. Ct. at 2391. These infringements "unquestionably constitute[] irreparable injur[ies]." *Opulent Life Church*, 697 F.3d at 295 (quoting *Elrod*, 427 U.S. at 373, 96 S. Ct. at 2690). No further showing is necessary for Plaintiffs to demonstrate that even partially staying the injunction would irreparably harm them.

### iv.

The issuance of Defendants' requested stay would also disserve the public interest. Defendants contend that "[i]n cases involving the government, the harm to the government and the public interest merge."

---

[23] Any injury to Defendants is also "outweighed by [Plaintiffs'] strong likelihood of success on the merits." *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021) (collecting cases). Relatedly, if the vaccine requirements violate Plaintiffs' First Amendment rights—as they have demonstrated is likely at least under RFRA—then the Navy's claimed harm "is really 'no harm at all.'" *McDonald v. Longley*, 4 F.4th 229, 254 (5th Cir. 2021) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006)).

That is mistaken. Those factors merge "when the Government is the opposing party[,]" *i.e.*, when the government is not the party applying for a stay. *Nken*, 556 U.S. at 435, 129 S. Ct. 1762. Here the government Defendants are applying for a stay and Plaintiffs are the opposing party. The public interest factor is therefore distinct. At any rate, "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (quoting *Christian Legal Soc'y*, 453 F.3d at 859).

### III. Conclusion

The motion by Defendants for a partial stay of the preliminary injunction pending appeal is DENIED.